**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.** 24-cv-60984-Augustin-Birch

[*Consent Case*]

MELINDA MICHAELS,

      Plaintiff,

v.

SEAWATER PRO LLC, and
MICHAEL SPANOS A/K/A MIKE SPANOS,

      Defendants.

_____/

<u>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>
<u>**AND INCORPORATED MEMORANDUM OF LAW**</u>

     Plaintiff MELINDA MICHAELS ("Michaels"), through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully moves for partial summary judgment that: (a) enterprise and individual coverage under the Fair Labor Standards Act ("FLSA") applies to Defendant SEAWATER PRO LLC ("SW"); (b) Plaintiff Michaels was an employee of SW under the FSLA; (c) Michaels' as Defendant Michael Spanos' ("Spanos") girlfriend, is not a defense to nonpayment of wages under the FLSA; (d) offsets are not allowed under *Brennan*; (e) Defendants SW and Spanos are liable to Michaels for nonpayment of minimum wages and overtime wages under the FLSA; and in support Plaintiff states the following:

Michaels uses the following abbreviations in support of this motion:

| DOCUMENT | CITATION | ABBREVIATION |
|---|---|---|
| Plaintiff's Motion for Summary Judgment | ECF No. 56 | PMSJ |
| Plaintiff's Statement of Material Facts | ECF No. 57 | PSF |
| Michaels Declaration | Exhibit A | MD |
| Santhagens Declaration | Exhibit B | SD |
| Tubbert Declaration | Exhibit C | TD |
| Eisenberg Declaration | Exhibit D | ED |
| Defendants SeaWater Pro LLC's Response to Plaintiff's Requests for Admissions | Exhibit E | SWA |
| Defendant SeaWater Pro LLC's Response to Melinda Michaels' First Set of Interrogatories | Exhibit F | SWI |
| SeaWater Pro LLC's Corporate Filings with the State of Florida 2018-2023 | Exhibit G | Sunbiz |

| DEFINITION | ABBREVIATION |
|---|---|
| *Michaels v. Seawater Pro LLC, et al,* Case No. 24-cv-60984-Augustin-Birch Amended Complaint [ECF No. 28] | Lawsuit |
| Defendants' Answer to the Amended Complaint (ECF No. 28) [ECF No. 29] | Answer |
| Fair Labor Standards Act | FLSA |
| Melinda Michaels ("Mindy"), Plaintiff | Michaels |
| SeaWater Pro LLC, Defendant | SW |
| Michael Spanos, Defendant | Spanos |
| Approximately September 27, 2019, through June 28, 2022 | Claim Period |
| SeaWater's Office | SW's Office |

## I.    SUMMARY

### A.  COVERAGE

Under the FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage. For individual coverage to apply under the FLSA, the employee must have provided evidence at trial that he was (1) engaged in commerce or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

To establish enterprise coverage under the FLSA, unless the enterprise has $500,000 or more in gross annual revenue, the enterprise is not subject to the Act. 29 U.S.C. § 203(s)(1)(A)(iii).

2

Stating that "an enterprise whose annual gross volume of sales or business done is not less than $500,000" is subject to the Act's provisions.

To establish individual coverage under the FLSA, an employee must be "engaged in commerce", where he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g. regular and recurrent use of interstate telephone, telegraph, mails, or travel. 29 C.F.R. §§ 776.23(d)(2), 776.24(2005).

Employees whose work is closely related and directly essential to the production of goods for commerce are individually covered under the FLSA. 29 C.F.R. 776.18 (2005). Congress has inacted that individual coverage under the FLSA includes even maintenance employees of an independent employer who performs work directly essential to producers of commerce. 29 C.F.R. § 776.18(b).

Plaintiff, therefore, is entitled to summary judgment that FLSA's enterprise and individual coverage applies to SW.

## B.  EMPLOYEE UNDER THE FLSA

To receive minimum wage and overtime payments under the FLSA, a plaintiff must show that she is an employee within the meaning of the statute, 29 U.S.C.S. §§ 206(a), 207(a)(1). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee". 29 U.S.C. § 203(d). The FLSA defines an employee as an individual employed by an employer, 29 U.S.C.S. § 203(e)(1). To employ is defined as to suffer or permit to work under § 203(g).

To determine an individual's employment status under the FLSA, the courts in the Eleventh Circuit look to the "economic realities" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrated dependence. *Scantland v. Knight*, 721 F.3d 1308 (11th Cir. 2013). *Scantland* introduced six non-exhaustive factors to guide the economic reality inquiry:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a specific skill;

(5) the degree of permanency and duration of the work relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business;

*Scantland*, 721 F.3d at 1312.

While these factors serve as guides, the overarching focus of the inquiry is economic dependence:

No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence. The . . . tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is <u>dependence</u> that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the

business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

*Usery v. Pilgrim Equip. Co.*, 527 F.2d at 1311-12 (5th Cir. 1976).  Ultimately, in considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." Mednick v. Albert Enters., Inc., 508 F.2d 297, 301-02 (5th Cir. 1975).

Plaintiff, therefore, is entitled to summary judgment that she is was an employee entitled to receive minimum wage and overtime payments covered under the FLSA.

## C.  NO "GIRLFRIEND" EXEMPTION UNDER THE FLSA

There is no exemption under the FLSA for a girlfriend of a business owner. Romantic partners who go into business together are generally referred to as business partners, when they perform many of the same duties in a small business and live off its proceeds, with each free to incur substantial personal expenses paid by the business. *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. App. Jan. 10, 2007). However, this necessitates extensive access to company funds as a privilege that employees cannot enjoy with respect to their employer's revenue, and the ability to exceed financial control of those proceeds typical of an employer/employee relationship. *Id.* Instead of aligning with the Fourth Circuit, however, the Eleventh Circuit, takes the romantic aspect out of the business relationship and solely evaluates the partnership versus employee aspect under the FLSA. *Escobar v. GCI Media, Inc.* 2009 U.S. Dist. LEXIS 52719 (S.D. Fla. Jun. 22, 2009). The Eleventh Circuit uses a modified *Wheeler* test from the Tenth Circuit in an analysis of employee v. partner for FLSA compensation actions. The court stated:

> Status as a general partner carries important economic realities as well.
> Employees do not assume the risks of loss and liabilities of their employers;
> partners do… Other common characteristics of partnerships are profit sharing;
> contributions to capital; part ownership of partnership assets, including share of

assets in dissolution of the enterprise; and the right to share in management subject to an agreement among the partners. These are economic realities, and no definition of employee is co-extensive…When individuals combine to carry on a business as partners all these factors introduce complexities and economic realities which are not consonant with employee status.

*Escobar* at *11. (Citing *Wheeler v. Hurdman,* 825 F.2d 257, 254-75 (10th Cir. 1987).

However, the Court must look at the surrounding circumstances of the whole activity and not on isolated factors. *Id. citing: Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947); *Amiable v. Long & Scott Farms,* 20 F.3d 434, 439 (11th Cir. 1994(; *Santelices v. Cable Wiring,* 147 F. Supp. 2d 1313, 1318 (S.D. Fla. 2001).

Furthermore, "that the appellants may not have had the intention to create an employment relationship is irrelevant; 'it is sufficient that one person suffer or permit another to work.'" *Donovan v. New Floridian Hotel, Inc.* 676 F.2d 468, at 471 (11th Cir. App. May 17, 1982)(quoting *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974).

Plaintiff, therefore, is entitled to summary judgment that she is was an employee, not a partner, entitled to receive minimum wage and overtime payments covered under the FLSA.

## D.  OFFSETS NOT ALLOWED UNER *BRENNAN*

In FLSA cases, set offs may not result in sub-minimum wage payments to an employee. *McLaughlin v. Richaland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1998). In *Brennan v. Heard*, the Court stated that the " FLSA decrees a minimum unconditional payment, and the commands of the Act are not to be vitiated by an employer, neither acting alone or through the agency of a federal court. (…) Set offs against back pay awards deprive the employee of the 'cash in hand'  contemplated by the Act and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions." *Brennan*, 491 F.2d at 4.

6

Where a Plaintiff claims that he was not paid for overtime hours worked, _Brennan_ applies, and any set off applied to a recovery by Plaintiff would result in Plaintiff further failing to receive his "cash in hand" _Id_. _See also: Perez v. Fla Landscape Maint., Inc._ 2014 U.S. Dist. LEXIS 9549, at *10 (January 22, 2014). _See also: Nicopior_, where leave was denied to file counterclaim against an employee-plaintiff because "any such recovery would directly cut into the 'cash in hand' Plaintiff would receive should he prevail on his FLSA claim" and concluding that the counterclaim was an improper set-off under _Brennan_ and its progeny. _Nicopior v. Moshi Moshi Palm Grove, LLC,_ No. 18-24909-CIV, 375 F. Supp. 3d 1278, 2019 U.S. Dist. LEXIS 48149 (S.D. Fla. April 5, 2019); _Backo v. History Flight, Inc.,_ 2019 U.S. Dist. LEXIS 99414, at *13 (S.D. Fla. June 12, 2019)("any recovery under the counterclaims will necessarily reduce Plaintiff's FLSA overtime recovery and are inappropriate.

Plaintiff, therefore, is entitled to summary judgment that under the FLSA, Defendants' offsets are not allowed consistent with _Brennan_.

### E.  DEFENDANTS LIABILITY

Any employer who fails to pay its covered employees overtime compensation or less than minimum wage "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages." 29 U.S.C. § 216(b). Because of the FLSA's clear mandates, the Eleventh Circuit has found that "the elements are quite straightforward…the elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees…" _Sec'y of Labor v. Labbe_, 319 F. App'x 761, 763 (11th Cir. 2008).

Individual liability exists in the Eleventh Circuit where an individual is an FLSA employer as defined in 29 U.S.C. § 203 (d), is an owner and/or manager of a business, ran the day-to-day

operations and hand operational control over the business, and was directly involved in decisions affecting duties, employee compensation, and hours worked by employees. *See Gagnon v. Florida 595 Travel Center Corp. et al*, No. 15-CV-62380-COHN (S.D. Fla. June 24, 2016); *Heald v. Diagnostic Medical Imaging, LLC et al*, No. 16-CV-60503-WILLIAMS (S.D. Fla. May 11, 2016); *Gonzalez v. Miami-Dade Area Health Education Center, Inc. et al*, No. 13-CV-22240-UNGARO (S.D. Fla. August 28, 2013).

Plaintiff, therefore, is entitled to summary judgment that under the FSLA, the Defendants are liable to Plaintiff for the nonpayment of minimum and overtime wages.

## II.    <u>SUMMARY JUDGMENT STANDARD</u>

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.1999). The movant bears the initial responsibility of informing the court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In response to a properly supported motion for summary judgment, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the court must enter summary judgment for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The court, however, must view the evidence and factual

inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir. 1999).

A court is not to resolve factual issues but may only determine whether factual issues exist. A material fact is one which "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, the appropriate inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III.   FACTS

Michaels was never paid properly for the hours Defendants required her to work, the duties Defendants required her to perform, or the wages that she was owed by Defendants. PSF ¶ 44. SW operates a business engaged in sales of watermakers for boats. PSF ¶ 1. At all times material hereto, SW was a Florida Corporation that regularly transacted business in Broward County. PSF ¶ 2.

For the years 2019-2024, SW generated more than $500,000 in gross revenue. PSF ¶ 3. Michaels was an employee of the Defendants during the Claim Period of approximately 27, 2019 through June 28, 2022. PSF ¶ 4.  At all times material hereto SW was an enterprise engaged in commerce or the production of goods for commerce and is covered by the FLSA at all times material hereto. PSF ¶ 5. At all times material hereto, SW and Spanos engaged in interstate commerce on a daily basis, used tools and materials in their manufacturing of watermakers from outside the United States, and employed Michaels to engage in interstate commerce by manufacturing watermakers, marketing watermakers, and selling watermakers to customers all over the world. PSF ¶ 6.

Spanos directly supervised Michaels. PSF ¶ 7. Michaels was not paid an hourly rate, or any other metric or method of compensation while working for Defendants. PSF ¶ 8.

Defendants required Michaels to perform the following duties: fulfill all customer orders including, gathering parts, ordering, stocking, creating labels, packing boxes, and shipping units to customers, speak with and engage customers, complete customer support and service, set up and manage Defendants' social media, build watermaker units, handle Defendant Spanos' schedule, maintain each order checklist from receiving the order to the order leaving the business, fulfil dealer's orders and handle accounting with the dealers. PSF ¶ 9.

Additionally, Defendants required Michaels' consulting on HR issues with Defendants and other employees, handling deals with customers, negotiating rates with UPS, maintaining the facilities, machining, cleaning the computer CNC, handling of lost shipments, confirming shipment locations, deal with customs for orders outside of the United States, attending trade shows on behalf of Defendants, and representing the Defendants' brand in commercials and any other advertising. PSF ¶ 10.

Michaels worked from approximately 9:00 a.m. through 6:00 p.m. in the office seven days per week during the period of September 27, 2019 through on or about February 28, 2021. [MD ¶ 40; TD ¶ 4; SD ¶ 19, 20, 21]. And then, was required by Defendants to continue working late into the night outside of the office. PSF ¶ 11. Michaels worked from approximately 8:00 p.m. through 2:00 a.m. seven days per week during the period of March 2, 2021, through on or about June 28, 2022. PSF ¶ 12. Michaels was only ever out from work for approximately two weeks during her claim period and is not claiming any compensation for those weeks. PSF ¶ 13.

Michaels was required by Defendants to facilitate partnerships with online personalities, YouTubers, Instagrammers, and social media influencers, and other cruisers (sailors), to market

10

and brand Defendants' business. PSF ¶ 14. Michaels was required by Defendants to make, produce, market, be featured in, and promote videos on social media for the Defendants throughout her claim period. PSF ¶ 15.

Spanos could not lift any objects over 20 lbs as a result of his chronic heart failure (CHF). PSF ¶ 16. Spanos directed Michaels to complete all tasks that he could not do himself as a result of his CHF. PSF ¶ 17. Spanos required Michaels to lift all the motors for the watermakers herself to fulfill individual customer orders (for example placing the motor into a shipping box). As a result, Spanos required Michaels to fulfill all customer orders including, gathering parts, ordering, stocking, creating labels, packing boxes, and shipping units to customers). PSF ¶ 18. Defendants used the slip (where the boat they lived upon was situated) to store tools, supplies, and receive packages and orders for customers and the Defendants' business. PSF ¶ 32. Michaels was required to carry those packages, tools, supplies, and orders for customers and the business to the shop from the boat slip multiple times per week because the majority of the time they were over 20 lbs, and Spanos was not allowed to lift them. PSF ¶ 33.

Michaels was required by Defendants to be on their business banking accounts. She was also required by Defendants to write checks to pay vendors and suppliers and was also required to generate and pay the other employees. PSF ¶ 20. Michaels was also required by Defendants to purchase tools and supplies for Defendants' business. PSF ¶ 19. Michaels was also given by Defendants a Wells Fargo Business Banking Card in her name, to utilize for payment to vendors and suppliers when it was unnecessary to pay via check. PSF ¶ 22.

Michaels was given a SeaWater Pro email account by Defendants and was required by Defendants to transact business with customers, vendors and banks with that email address. PSF ¶ 21.

Michaels was in a romantic relationship with Spanos throughout the claim period. PSF ¶ 29. Michaels and Spanos had a joint banking account, however, all control over that account was exercised by Spanos. PSF ¶ 37. At all times material hereto, Defendants instructed Michaels that she was not allowed to pay herself any wages. PSF ¶ 23. Spanos directed Michaels to only make certain purchases out of that joint account for things related to the business, and required she pay nothing to herself. PSF ¶ 40. Spanos did not allow Michaels to take or move money from the joint personal account without Spanos' express approval. PSF ¶ 42. Spanos did not allow Michaels to exercise any discretion over the funds in the joint personal account. PSF ¶ 43.

Michaels provided the boat that she and Spanos lived in from approximately October 2016 through on or about November 2020. PSF ¶ 30. Michaels was required to pay monthly rent for the slip for the boat where she and Spanos resided from the infancy of SW, and then intermittently throughout, from her own alimony payments and savings. PSF ¶ 31. Defendants used the slip to store tools, supplies, and receive packages and orders for customers and the Defendants' business. PSF ¶ 32.

Defendants required Michaels to leave the boat and move to three different locations including two condominiums and one house from approximately November 2020 through on or about June 2022. PSF ¶ 34. The first condominium was partially used to house another employee named Bailey Frederes in the master bedroom, and the dock on site was also used to allow YouTubers, boaters, customers, and influencers to come and go from the condo in furtherance of promoting the Defendants' business. PSF ¶ 35. The house was partially used to house other employees including Bailey Frederes and Dylan Tubbert. PSF ¶ 36. Spanos required Michaels to pay the rent on the slip, condos, and house and would indicate "pay out of this account". PSF ¶ 38 (referring to their personal joint account). Whenever there wasn't enough money in that joint

account to pay rent, Michaels was required to use her own money from her alimony payments or savings, as Spanos required. PSF ¶ 39.

Michaels complained to Defendants about not being properly compensated, and Defendants thereafter initiated Michaels into signing up on the Quickbooks payroll platform via email, but Defendants did not follow through and never put her on payroll. PSF ¶ 24. Defendants paid Michaels two $3,000.00 cash payments after she left Defendants' business. PSF ¶ 25. Defendants paid Michaels one additional $3,000.00 payment via her son, Dylan Tubbert, after the two previously made cash payments. PSF ¶ 26. Defendants have made no additional payments to Michaels since. PSF ¶ 27.

Defendants did not maintain any employment records for Michaels, did not require Michaels to clock in/out or keep track of her time, and dispute she was an employee. PSF ¶ 28.

On June 7, 2024, Michaels filed her Lawsuit against Defendants for Violations of the FLSA. [ECF No. 1].

**IV.    <u>ANALYSIS</u>**

**A.  COVERAGE**

To establish enterprise coverage under the FLSA, unless the enterprise has $500,000 or more in gross annual revenue, the enterprise is not subject to the Act. 29 U.S.C. § 203(s)(1)(A)(iii). Defendants have stipulated to enterprise coverage. [Lawsuit ¶ 3, Answer ¶ 3].

To establish individual coverage under the FLSA, an employee must be "engaged in commerce", where he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g. regular and recurrent use of interstate

telephone, telegraph, mails, or travel. 29 C.F.R. §§ 776.23(d)(2), 776.24(2005). Defendants have stipulated that at all times material hereto SW was an enterprise engaged in commerce or the production of goods for commerce and is covered by the FLSA at all time material hereto. [Lawsuit ¶ 6; Answer ¶ 6].

Additionally, SW and Spanos engaged in interstate commerce on a daily basis, used tools and materials in their manufacturing of watermakers from outside the United States, and employed Michaels to engage in interstate commerce by manufacturing watermakers, marketing watermakers, and selling watermakers to customers all over the world. [Lawsuit ¶ 5-9, MD ¶ 5, 6, 7, 8, 9, 19].

Given that Defendants stipulate to enterprise and individual coverage under the FLSA, Plaintiff is entitled to Summary Judgment that FLSA's enterprise and individual coverage applies to SW.

## B.  EMPLOYEE UNDER THE FLSA

The FLSA states to employ is defined as to suffer or permit to work under § 203(g).

Under the economic realities test, the court must weigh: the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; the alleged employee's opportunity for profit or loss depending upon his managerial skill; the alleged employee's investment in equipment or materials required for his task, or his employment of workers; whether the service rendered requires a specific skill; the degree of permanency and duration of the work relationship; and the extent to which the service rendered is an integral part of the alleged employer's business. *Scantland*, 721 F.3d at 1312.

As the facts state above, Michaels was completely economically dependent upon Defendants and was required to work approximately 91 hours per week for the majority of her

claim period. [MD ¶ 45, 46, TD ¶ 13, 14; ED ¶ 6, 8, 9]. [MD ¶ 41; ED ¶ 8]. Defendants required Michaels perform a plethora of duties for them, such as: fulfill all customer orders including, gathering parts, ordering, stocking, creating labels, packing boxes, and shipping units to customers, speak with and engage customers, complete customer support and service, set up and manage Defendants' social media, build watermaker units, handle Defendant Spanos' schedule, maintain each order checklist from receiving the order to the order leaving the business, fulfil dealer's orders and handle accounting with the dealers. [MD ¶ 14, 15, 16, 17, 18, 19, 20, 21; TD ¶ 9, 10; SD ¶ 17, 18]. She was also required for consulting on HR issues with Defendants and other employees, handling deals with customers, negotiating rates with UPS, maintaining the facilities, machining, cleaning the computer CNC, handling of lost shipments, confirming shipment locations, deal with customs for orders outside of the United States, attending trade shows on behalf of Defendants, and representing the Defendants' brand in commercials and any other advertising. [MD ¶ 14, 24, 25, 26, 27, 28, 29, 30, 31, 32; TD ¶ 9, 10; SD ¶ 17, 18. SD ¶ 22]. *See photos from* MD ¶ 19, 28, 31,

Spanos directly supervised Michaels. [MD ¶ 10; SD ¶ 14, 15; TD ¶ 16]. Spanos directly controlled Michaels and gave her no discretion over any matters of independent significance, including matters of money. [MD ¶ 73]. Spanos did not allow Michaels to exercise any discretion over the funds in their personal joint account. [MD ¶ 73]. Spanos did not allow Michaels to take or move money from the joint personal account without his express approval. [MD ¶ 68]. The Defendants' controlled who was allowed to use Michael's own personal vehicle. [MD ¶ 71, 72]. Michaels was instructed by Spanos what bills were to be paid. [MD ¶ 70]. Michaels was required to lift anything over 20 lbs, rendering her essential to the business (especially when she and Spanos were the only two employees). [MD ¶ 58, ED ¶ 6, 7]. Michaels was required by Defendants to be

on their business banking accounts, write checks to and pay vendors and suppliers, pay other employees (except herself), and was even given a Wells Fargo Business Banking Card by Defendants in her own name to utilize for efficiency of the Defendants Business. [MD ¶ 48, 49, 50; TD ¶ 18]. [MD ¶ 52, 53]. *See photos from* MD ¶ 53.

Michaels was given a SeaWater Pro email account and was required to utilize it in generating business with customers, working with venors and banks, and managing all social media. [MD ¶ 50, 11, 16, 18]. *See photos from* MD ¶ 16, 18, and 25.

Defendants enrolled Plaintiff on the Quickbooks payroll platform yet never followed through with placing her on payroll. [MD ¶ 35, TD ¶ 19], *see photos from* MD ¶ 35.

Yet, Defendants misclassified Michaels as a non-employee, and would not allow Michaels to receive any compensation, did not assign her a pay rate, would not allow her to pay herself any amount from the business or personal accounts, and never provided her a paycheck along with the other employees of Defendants. [MD ¶33; SWI ¶ 13(b); TD ¶ 18].

Under the *Scantland* analysis: the Defendants' control over Michaels was exercised daily by Spanos as to the manner in which the work was to be performed and what was expressly required of Michaels; Michaels had no opportunity for profit or loss from how the business did, as she was not given any ability to derive a profit from anything the Defendants' were putting out; Michaels was required to surrender her personal vehicle by the Defendants to provide transportation for other employees, influencers, and business related shipments, and she was required in the beginning of her employment to cover rent for she and Spanos; Michaels was required to learn the skill of manufacturing the watermakers, customs, shipments, negotiating rates, from her working for Defendants, however, she did not come to the Defendants with those immediately necessary skills; the degree of permanency was present, as she was for a number of

months the only other employee, and the only employee who could lift over 20 lbs., additionally, she was responsible for maintaining the social media aspects of the business which was integral to their survival. Michaels has shown through the facts stated above that she was an economically dependent employee of Defendants under the FLSA.

Plaintiff is entitled to Summary Judgment that she was an employee of Defendants SW and Spanos based on the economic realities under *Scantlland.*

### C.  NO "GIRLFRIEND" EXEMPTION UNDER THE FLSA

The Eleventh Circuit uses a modified *Wheeler* test from the Tenth Circuit in an analysis of employee versus a partner for FLSA compensation actions, instead of 'getting caught up in the weeds of analyzing a romantic relationship within the business. *Wheeler* expressly provides that employees do not assume the risks of loss and liabilities of their employers. 825 F.2d 257 (10th Cir. 1987). Here, Michaels did not assume any risk of the Defendants' business as she was not ever legally named on the business (*See Sunbiz*), legally tied to the business, never had a line of credit for the business, nor did she have any financial ties whatsoever to the Defendants' business. Michaels was a merely a signer on the Defendants Business Accounts as Defendants required, however had no ability to make any decision related to the business organization, finances, or certainly profit or losses. [MD ¶ 48, 49, 50; TD ¶ 18] . Also under *Wheeler*, profit sharing, contributions to capital, part ownership of partnership assets, including share of assets in dissolution of the enterprise, and the right to share in management subject to an agreement among the partners are all indicative of a partnership versus an employee relationship. As previously discussed, Michaels had no ability to share in the profits of the business as she was directed by Spanos "you can write out checks, but not to yourself". [MD ¶ 51]. And Spanos never allowed Michaels to take money for herself at her own discretion at any time. [MD ¶ 73]. Michaels had no

ownership of partnership assets as everything was in Spanos and SW's name (*Sunbiz*). Michaels had no ability to share in management, and there was no such agreement, where she was directly supervised and controlled by Spanos on all matters on a daily basis. [MD ¶ 10; SD ¶ 14, 15; TD ¶ 16].

Under *Donovan*, the Defendants may have had the intention to not create an employment relationship, but that is irrelevant; "it is sufficient that one person suffer or permit another to work." *Donovan v. New Floridian Hotel, Inc.* 676 F.2d 468, at 471 (11th Cir. App. May 17, 1982)(quoting *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974).

It is clear that under *Donovan,* Defendants not only permitted, but in fact required Michaels to work to her detriment. Under *Wheeler,* Michaels, Spanos and SW's relationship was strictly employee/employer under the Tenth Circuit's partnership analysis, as none of the partnership cornerstones have been met.

Plaintiff is entitled to Summary Judgment that she was an employee of Defendants SW and Spanos under the Eleventh Circuit's partnership analysis through *Wheeler*.

### D.  OFFSETS NOT ALLOWED UNER *BRENNAN*

Set offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions." *Brennan*, 491 F.2d at 4. Defendants assert set-off's as their Ninth Affirmative Defense (*See* Answer p. 4). Any setoff would be inappropriate here, under *Brennan*, where Plaintiff received no compensation whatsoever for the hours she was required to work and duties she was required to perform by the Defendants. [MD ¶33, 74; SWI ¶ 13(b); TD ¶ 18].  There was no bargain for exchange that Plaintiff would receive lodging in exchange for her work for Defendants. She was required by Defendants to move from the boat she purchased and

18

owned (and that Defendant Spanos resided with Plaintiff) more than three times over a two year period (MD ¶ 59, 62, 66), share those spaces away from her own boat with other employees (MD ¶ 61 and 65) was paid no compensation at all (MD ¶ 74), and actually had to pay rent out of her own alimony and savings when Defendant Spanos did not have the money to pay (MD ¶ 55, 56).

Any assertion for setoffs under *Spears vs. Bay Inn & Suites Foley, LLC*, 105 F. 4th 1315 (11th Cir. 2024), where lodging credits were allowed in an FLSA action only where the amount would not bring the *paid employee's* effectively hourly rate underneath the minimum wage rate, would not apply here. Michaels was paid nothing whatsoever while working for Defendants, and therefore, where there was no cash in hand to begin with, any set-off against back pay would even further deprive Michaels of the 'cash in hand' contemplated by the Act. Any defense for a set-off would therefore be nonsensical and inappropriate where Michaels is seeking to enforce the FLSA minimum wage and overtime provisions under *Brennan*. 491 F.2d at 4.

Plaintiff, therefore, is entitled to summary judgment that under the FLSA, Defendants' offsets are not allowed consistent with *Brennan*.

### E.  LIABILITY

As stated above, Defendants paid Michaels nothing while she was employed during her claim period. MD ¶¶33, 74; SWI ¶ 13(b); TD ¶ 18.  Under the FLSA, 29 U.S.C. § 216(b), and the Eleventh Circuit in *Sec'y of Labor v. Labbe*, Plaintiff has shown that she was not paid minimum wages and overtime wages as required. 319 F. App'x 761, 763 (11th Cir. 2008). Defendants stipulate to the fact that Michaels was never given a pay rate. SWI ¶ 13(b). Nor was Michaels ever paid any other metric or method of compensation while working for Defendants. MD ¶ 33; TD ¶ 18].

Individual liability exists in the Eleventh Circuit where an individual is an FLSA employer as defined in 29 U.S.C. § 203 (d), is an owner and/or manager of a business, ran the day-to-day operations and hand operational control over the business, and was directly involved in decisions affecting duties, employee compensation, and hours worked by employees. *Gagnon*, No. 15-CV-62380-COHN (S.D. Fla. June 24, 2016). Spanos was owner of SW (*Sunbiz*), ran the day-to-day operations and had control over the business and was directly involved in Michaels' duties (MD ¶ 10; SD ¶ 14, 15; TD ¶ 16). Spanos chose to pay Michaels no compensation for the hours she was required to work and duties she was required to perform (MD ¶33, 74; SWI ¶ 13(b); TD ¶ 18), and required her to work approximately 91 hours for the majority of her employment (MD ¶ 45, 46, TD ¶ 13, 14; ED ¶ 6, 8, 9). Therefore, Spanos is individually liable.

Plaintiff, therefore, is entitled to summary judgment that SW and Spanos are liable under the FLSA for nonpayment of Michaels' minimum and overtime wages.

## V. <u>CONCLUSION</u>

Plaintiff Melinda Michaels, is entitled to summary judgment on: (a) FLSA enterprise and individual coverage; (b) Michaels was an employee of the Defendants under the economic realities of *Scantland*; (c) Michaels was an employee of the Defendants under the economic realities of partnerships under *Wheeler*; (d) set-offs are allowed under *Brennnan*; and (e) Defendants are liable under the FLSA for their nonpayment of minimum and overtime wages.

WHEREFORE, Plaintiff respectfully requests the Court GRANT Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

Koz Law, P.A.
800 East Cypress Creek Road Suite 421
Fort Lauderdale, Florida 33334
Tel:     (786) 924-9929
Fax:     (786) 358-6071
Email: dc@kozlawfirm.com

_____

Dillon S. Cuthbertson, Esq.
Florida Bar No. 1056382