UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

    Plaintiff,
v.

SEAWATER PRO LLC, AND
MICHAEL SPANOS,

    Defendants.
_____/

### DEFENDANTS' STATEMENT OF FACTS SUPPORTING THIR MOTION FOR SUMMARY JUDGMENT

Defendants, SeaWater Pro LLC and Michael Spanos, pursuant to Local Rule 7.1 and Fed. R. Civ. P. 56, offer the following statement of undisputed material facts:

### About SeaWater Pro, LLC

1. SeaWater Pro, LLC, is a company incorporated in the State of Florida. (Depo. Spanos, p. 9: 6-15.)

2. Michael Spanos is the sole proprietor of the LLC. (*Id.*, p. 9: 6-15.) (Exhibit "A" at ¶ 5).

3. SeaWater Pro operates a business engaged in the manufacture and sale of portable watermakers. (ECF No. 28 ¶10; ECF No. 29 ¶ 10.)

4. Michael Spanos was responsible for hiring and firing personnel, including employees and independent contractor laborers, at Seawater Pro, LLC. (Exhibit 1 at ¶6).

5. For the first year, the only ones working at SeaWater Pro were Mr. Spanos and Trevor Fletcher. (Depo. Spanos p. 15: 9-20.)

1

6. SeaWater Pro then hired additional employees to do the work during its second year of operation. (*Id.*, pp. 16-17: 21-2.)

7. During COVID, he hired three or four people that did not include Ms. Michaels. (*Id.*, p. 17: 18-23.)

8. As the owner of the business, Mr. Spanos worked relaxed hours, arriving around 11:00 a.m., either leave for lunch or buy lunch for everyone, and then leave anywhere from 3:00 p.m. to 7:00 p.m., depending on the work. (*Id.*, p. 19: 1-5.)

9. Mr. Spanos rarely worked at night or outside of the SeaWater Pro location. (*Id.*, at 7-17.)

10. No one worked weekends other than Mr. Spanos, and on the rare occasions he would work, it was from 10:00 a.m. to 3:00 p.m. (*Id.*, p. 25: 5-15.)

### Michael Spanos and Melinda Michaels

11. The Plaintiff and Mr. Spanos were in a romantic relationship from 2014 to June 28, 2022 (Exhibit "1" at ¶ 8).

12. They lived together in various locations in South Florida, each of which paid for by the Defendants. (Depo. Michaels, p. 77: 2-5; 76: 21-23).

13. The Defendants paid all rents, utilities, moving expenses, and security deposits for each location at which the Plaintiff and Mr. Spanos lived. This included the following payments:

   a. $850 per month for the rental slip for a boat in which they resided for 11 months:
   b. $2,400 per month for a house located at 405 Hendricks Isle, Fort Lauderdale, FL 33301 for 7months;
   c. $4,000 per month for a condo located at 2049 Tropical Isle, Fort Lauderdale, FL 3330 12 months ;
   a. $5,000 per month for their ocean front apartment for 3 months.

2

(Depo. Michaels, pp. 71: 1-11; 77: 2-5; 76: 21-23); (Exhibit "1" at ¶ 31-35).

14. The Defendants also paid $3,000.00 to pay off the Plaintiff's car and paid her monthly car insurance of $168.00. (Depo. Michaels, p. 69: 9-17).

15. Defendant paid for Michaels' other expenses such as Amazon. (Depo. Michaels; 112-9).

16. Plaintiff accepted the parties' agreement that Mr. Spanos would pay all living and other expenses based on their agreement because "that was a relationship." (Depo. Michaels; 207-8: 24-6) ); Exhibit "1" at ¶ 19).

17. Plaintiff conceded that she would have had to pay for her own living expenses if Mr. Spanos had not. (Depo. Michaels, p. 194: 12-15.)

18. Mr. Spanos trusted the Plaintiff and, as a result, gave her complete access to the bank account he and SeaWater Pro shared. (Depo. Spanos, p. 26: 1-25; 27: 1-25).

19. The Plaintiff could spend or use the money in their shared account however she pleased, as she also had a bank debit to access the funds therein. (Depo. Spanos, p. 26-7: 18-12.) (Depo. Michaels; 201-2: 16-7).

20. Because they shared a care and enjoyed each other's company as couple, the Plaintiff would often accompany Mr. Spanos to work. (Depo. Spanos, p. 111: 10-19); (Exhibit "1" at ¶13).

21. Since she spent the day with him, the Plaintiff accompanied Mr. Spanos to his doctor's appointments and on other errands as a passenger his in car. (Depo. Michaels, p. 122: 1-25).

22. As his girlfriend, she would call to get his medication refilled and run other personal errands for Mr. Spanos. (*Id.*, p. 123: 2-25).

23. Plaintiff ceased accompanying Mr. Spanos to SeaWater Pro around March of 2021.

3

24. The relationship ended on June 28, 2022. (Exhibit "1" at ¶ 8).

25. Plaintiff did not ask Mr. Spanos for money for unpaid wages until December of 2022, months after they broke up and months after she claims to have stopped working for the Defendants. (Depo. Michaels; 115: 7-23.)

**Alleged 91 hours Per Week at the Warehouse from September 27, 2019 to February 27, 2021**

26. Plaintiff contends anytime she was at the control and will of her boyfriend, Mike Spanos, consisted of "work" for which was compensable, including refilling her boyfriend's medication, was "work" in her role as "manager." (Depo. Michaels p. 124: 19-25).

27. The Plaintiff claims that starting from September 27, 2019, to February 26, 2021, she "worked" every day because she was at Mr. Spanos' disposal. (Depo. Michaels p. 124: 19-25).

28. Defendants deny that Plaintiff refilling Spanos, her boyfriend at the time's, medication was directed by Spanos in his capacity as owner and employer, likewise with attending his doctor's appointments. (Exhibit "1").

29. Defendants assert this was "personal" or "volunteer" time. (Depo. Spanos, p. 92:3-6).

30. Plaintiff seeks compensation for activities such as writing down notes for Mr. Spanos and look up inventory while remaining "available" to Mr. Spanos. (Depo. Spanos, p. 34: 9-25).

31. Plaintiff seeks compensation for Plaintiff testifies her work hours during this time period were from 9:00 a.m. to 7 p.m. and one day on the weekend. (Depo. Michaels p. 127: 15-25; 128: 1-8).

4

32. At deposition, Plaintiff admitted she may have erroneously accounted for a week of work when she was in fact admitted at the hospital for 3 days of that week. (Depo. Michaels p. 130: 8-13).

33. Plaintiff additionally stated she may not have worked 91 hours per week for the week where she was admitted in the hospital for 3 days. (Depo. Michaels, p. 111: 4-7).

**Alleged 6 Hours Per Evening on Social Media from March 21, 2021 to June 28, 2022**

34. Plaintiff alleges she worked from 8:00 p.m. to 2:00 a.m. seven days per week (Depo. Michaels, p. 114: 16-23).

35. The Plaintiff seeks to recover minimum wages for the time she spent with Mr. Spanos at their home and for the time she spent online on her cell phone six hours per night. (Depo. Michaels; 97-8: 6-25.)

36. Plaintiff claims she performed worked on social media each night researching reviews about the business, engaging with and responding to online watermaker discussion groups and other activities on social media. (Depo. Michaels, p. 251: 7-17).

37. All social media related work activities were performed on Plaintiff's personal phone and personal Facebook account (Depo. Michaels p. 247: 18-22; 249: 13-16).

38. Plaintiff testified at deposition that she could not "draw the line" between what she did online for personal consumption as opposed to work. (Depo. Michaels, p. 207-7: 25-13.)]

39. Plaintiff stated that the time she claims to have worked at night was "Always" on her phone and that Mr. Spanos didn't necessarily know what she was doing on her phone at night. (Depo. Michaels; 249: 13-25.)]

40. During the time Plaintiff alleges to have worked on social media, Mr. Spanos wasn't looking over Plaintiff's shoulder to see what she was doing on her cellphone. [Depo. Michaels; 252: 21-23.)

41. The Plaintiff did not always tell Mr. Spanos she was researching on her phone, what she found, or that she was working at night while consuming social media on her phone. (Depo. Michaels; 250: 9-12: "That's true.")]

42. Mr. Spanos did not instruct the Plaintiff in any of her online social media activities. (Depo. Michaels; 119: 8-24)

43. Michaels stated that Mr. Spanos may have had no idea how much time she claims she was "working" versus consuming social media for entertainment. (Depo. Michaels; 251: 18-24.)

44. Plaintiff stated that while she performed work for the company on social media in the evening, she also used the time for personal use. (Depo. Michaels 252: 5-7).

45. When asked how Mr. Spanos would be able to distinguish evening time spent on for her personal use versus for the business, Plaintiff responded that Mr. Spanos had knowledge of her nightly work for the business on social media when she would notify him or send him reviews. (Depo. Michaels, p. 251: 7-17).

46. Plaintiff admitted that "[Spanos] may not have known] how much time she spent in the evenings on social media for business vs. personal use." (Depo. Michaels p. 254: 2-7)

47. When asked if there were a lot of times where Mr. Spanos did not know Ms. Michaels was conducting work on social media, Ms. Michaels responded "I said it's possible." (Depo. Michaels p. 250:13-23.)

**Payments Plaintiff Received from Defendant Spanos**

6

48. Defendant Michael Spanos directly paid Melinda Michaels via bank transfer a total of $7,600.00 during the time period for which Plaintiff seeks compensation. (Exhibit "1" ¶ 31-35).

49. On November 20, 2020, Mr. Spanos transferred $750.00 to Ms. Michaels as payment. (Exhibit "1" at ¶ 31).

50. On July 12, 2021, Mr. Spanos transferred $850.00 to Ms. Spanos. (Exhibit "1" at ¶ 32).

51. On August 30, 2021, Mr. Spanos transferred $2,000.00 to the Plaintiff for payment. (Exhibit "1" at ¶ 33).

52. Additionally, Mr. Spanos paid the Plaintiff $1,000.00 in July of 2022. (Exhibit "1" at ¶34).

53. Mr. Spanos then made a payment of $3,000 to Michaels sent to her son Dillon Tubbert. (Exhibit "1" at ¶ 35).

54. The Plaintiff acknowledged the $3,000.00 paid to her via transfer to her son's account. (Depo. Michaels p. 85: 9-17).

**Food and Lodging Paid on Behalf of Michaels**

55. Plaintiff confirms that from 2019 on SeaWater Pro paid for the slips of the boat in which the parties resided. (Depo. Michaels p. 69: 1-2).

56. SeaWater Pro paid $850 to $880 per month for a boat slip in which the parties resided together. (Depo. Michaels p. 77: 6-9). ( Exhibit 1 at ¶ 20).

57. When the parties then moved into a condo, SeaWater Propaid the monthly rent including the slip for her boat at $2,400.00 per month. (Depo. Michaels p. 77: 2-5). (Exhibit 1 at ¶ 22).

7

58. The parties then moved into a house, which again, SeaWater Propaid $4,000 or $4,000.00 in rent for Michaels and Spano.  (Exhibit 1 at ¶ 24).

59. The parties then moved to Briny Apartment, whose rent SeaWater Pro continued to pay at a monthly amount of $5,000.00. (Depo. Michaels p. 76L 21-23). (Exhibit 1 at ¶ 26).

60. In addition to rent, SeaWater Pro paid for the Plaintiff's groceries. (Depo. Michaels p. 74: 2-3).

61. The Plaintiff testified that she and Mr. Spanos ate most of their meals at restauurants, and again, Mr. Spanos paid every time they ate at a restaurant. (Depo. Michaels, p. 82: 10-13). (Exhibit 1 at ¶ 29).

62. The Plaintiff filed the lawsuit against Mr. Spanos and his company without crediting the amounts they paid for and to her. (Depo. Michaels; 202: 8-18).

## Work Time v. Personal Time

63. The Plaintiff explained that the time for which she seeks payment was she was "available" to work while accompanying Mr. Spanos as his romantic companion, but could not identify the work she claims to have performed. [ Depo. Michaels, p. 115: 2-18.)]

64. Plaintiff states to her time working at the company: "I was there for him… I would spend that time with Mike.")]( Depo. Michaels; 115: 6-23).

## Statute of Limitations

8

65. During her deposition, Plaintiff agreed her claim should be limited to no more than three years before her lawsuit was filed. (Depo. Michaels; 112-13: 4-6.)