# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

     Plaintiff,

v.

SEAWATER PRO LLC, AND
MICHAEL SPANOS,

     Defendants.

_____/

## **DECLARATION OF MICHAEL SPANOS**

I, Michael Spanos, make the following declaration pursuant to 28 U.S.C. §1746 and declare as follows:

1. My name is Michael Spanos.

2. I make this Declaration based upon my personal knowledge.

3. I am over the age of 18, *sui juris*, and competent to testify as to the matters contained in this Declaration.

4. SeaWater Pro, LLC, is a company that I started, own, and operate.

5. I am the sole proprietor of the business.

6. SeaWater Pro, LLC, manufactures and sells portable water-making units.

7. I was responsible for hiring and firing personnel, including employees and independent contractor laborers, at Seawater Pro, LLC.

8. I was involved in a romantic relationship with Melinda Michaels from 2014 to June 28, 2022.

1

9.      While we were involved in our relationship, Ms. Michaels lived with me at our various residences.

10.      Besides living with me, Ms. Michaels would visit me at work so she could spend more time with me.

11.      I did not hire, request, or know of any work or tasks that Ms. Michaels performed for my business.

12.      Ms. Michaels was not an employee on my company's payroll and did not receive a W-2 for any of the payments she received.

13.      Ms. Michaels would stay with me while I was at work, not because I had asked or required her to be there, but because she did not have many friends and preferred to spend her time with me.

14.      Ms. Michaels would, as my girlfriend and someone who cared for me, go with me to doctor's appointments.

15.      She would run personal errands with and for me.

16.      I never asked Ms. Michaels to accompany me to my doctor's appointments as part of any business-related job, work, or task.

17.      And although Ms. Michaels would call and assist in refilling my prescription medications, these actions were unrelated to business-related job, work, or task.

18.      The business paid all of mine and Melinda's expenses during our relationship.

19.      Melinda accepted that I or the business would be paying for all of our expenses.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

20.     Seawater Pro, LLC, as an entity, paid $850 to $880 per month for the 11 months to rent a boat slip located at Hendricks Isle, Fort Lauderdale, FL, for the period from September 27, 2019, to August 31, 2019, while we lived on a boat at that slip.

21.     The total paid for Ms. Michaels' half of the rent for this property was $4,675.00.

22.     Seawater Pro, LLC, as an entity, paid $2,400 a month from September 1, 2020, to April 7, 2021, to rent 405 Hendricks Isle, Fort Lauderdale, FL 33301. (Copy of Hendricks Isle Lease appended hereto as Exhibit "A".)

23.     The total paid for Ms. Michaels' half of the rent for this property was $8,400.00.

24.     Seawater Pro, LLC, as an entity, paid $4,000 per month to rent 2049 Tropical Isle, Fort Lauderdale, FL, from April 8, 2021, to April 1, 2022. (Copy of Tropical Isle Lease appended hereto as Exhibit "B".)

25.     The total rent paid for Ms. Michaels' half of the rent at this property was $24,000.00.

26.     Seawater Pro, LLC, as an entity, $5,000 a month from April 1, 2022 to June 28, 2022, to rent 212 Briny Ave A4. (Copy of Briny Ave Lease appended hereto as Exhibit "C".)

27.     The total rent paid for Ms. Michaels' half of the rent at this property was $7,500.00.

28.     The total rent paid for Melinda Michaels' share of the rent (alone) for these properties was $44,575.00.

29.     Seawater Pro, LLC, as an entity, paid for all meals for Ms. Michaels and me from September 27, 2019, to June 28, 2022. We spent at least $2,000 per month over these 2 years, 9 months, and 1 day.

30.     Seawater Pro, LLC, paid $33,000.00 for meals for Ms. Michaels.

3

31.     On November 20, 2020, I sent $750.00. to Melinda Michaels via bank transfer.

32.     On July 12, 2021, I sent $850.00 to Melinda Michaels via bank transfer.

33.     On August 30, 2021, I sent $2,000.00 to Melinda Michaels via bank transfer.

34.     After July 5, 2022, I sent a payment of $1,000.00 directly to Melinda Michaels.

35.     I then sent a payment of $3,000.00 to Melinda Michaels via her son, Dillon Tubbert, as reflected by the text messages with him and transaction details appended hereto as Exhibit "D."

36.     None of the money sent to, paid to, or paid on behalf of Ms. Michaels was for a loan.

37.     I have attached as Exhibit "E" true and correct copies of the bank statements identifying the payments made to and on behalf of Ms. Michaels.

38.     I fully understand and aver the facts contained within this Declaration are true and correct.

## **DECLARATION**

By my signature below, I execute this declaration in Broward County, Florida, and declare under penalty of perjury that the foregoing is true and correct.

**Signature:**  _____

**Email:**  mike85233@gmail.com

Michael Spanos
_____
Michael Spanos

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

# EXHIBIT A

## RESIDENTIAL LEASE AGREEMENT

### 1. Premises Leased & Term

This lease made this **Wednesday, August 19, 2020** between **Parsun, LLC** (hereinafter called Lessor) and **Michael Spanos** (hereinafter called Lessee)

WITNESSES that the Parties hereto covenant and agree as follows. Lessor does hereby rent and lease to the Lessee

### 405 Hendricks Isle , Fort Lauderdale, FL 33301

hereinafter referred to as "premises", for a term of 1 year

### commencing:  September 1st, 2020 and ending August 31st, 2021

**2. Rent:**  Lessee shall pay to Lessor, or Lessor's representatives or assigns, the sum of $26,400.00 which shall be payable in monthly installments of  **$2,400.00**   and due on the **FIRST DAY OF EACH MONTH** in advance during the term of this Lease without demand or notice. **IF PAYMENT IS NOT MADE TO THE LESSOR ON OR BEFORE THE 3RD (THIRD) DAY OF THE MONTH ADDITIONAL RENT IN THE AMOUNT OF $50.00 ACCRUES AND IS DUE IMMEDIATELEY WITHOUT DEMAND OR NOTICE.** All payments must be made in negotiable bank funds or further payments will be made by Certified Bank Checks or Money Orders. A Service Charge of Twenty-five dollars ($25.00) will be assessed for any funds received that are returned for insufficient funds. Such Service Charge shall be considered additional rent and is due immediately upon notice.  All payments received will be applied to charges accruing first, regardless of memo or designation. Lessor reserves the right to require certified funds from Lessee for payment of rent. Lessee shall pay all amounts due to Landlord in certified funds upon written notice by Lessor of such requirements.

**3. Money Receipt & Security Deposit:**  In addition to the monthly rent provided for in this paragraph, it is acknowledged that Lessee has paid to Lessor **simultaneously with execution hereof**

|  |  |
|---|---|
| **$4,400.00** | **TO BE APPLIED AS FOLLOWS:** |
| **$2,200.00** | **First Month's Rent** |
| **$2,200.00** | **to be retained as SECURITY DEPOSIT** (Non-refundable portion $100.00) Security Deposit on file |

Said **SECURITY DEPOSIT** shall be held by the Lessor and shall be available as a fund from which Lessor may pay for repairs, damages, improper care or loss of keys to the premises caused by Lessee in violation of this Lease and shall also be available as security to Lessor in the event lessee shall fail to perform this lease in any way or shall abandon the premises prior to the expiration of the term hereof.  Said security deposit shall be refunded to the Lessee after termination of Lease and after Lessee has vacated the demised premises only on the conditions set forth above and that Lessee not be in default in above and all appliances, bathroom fixtures, kitchen fixtures and cabinets, floors, windows, sills and woodwork emptied and washed, all utility bills paid to the end of the lease term and keys returned forthwith upon termination of tenancy of Lessee in said premises, time being of the essence for the return of keys.  In the event Lessee does not leave the premises in the condition as called for herein, all charges for cleaning and repairing will be deducted from Lessee's security deposit.  A minimum maintenance fee will be charged to security deposit in the amount of $100.00.  Lessor shall not be limited to the amount of the security deposit as damages.  Lessee expressly agrees that such damage deposit shall not be regarded as trust funds and that the relationship between Lessor and the Lessee with regard to said deposit shall be that of debtor and creditor only, and that said funds may be paid to the Lessor by any managing agent of the Lessor.  Lessee shall not have the right to apply the security deposit to payment of the last month's rent.  Lessee understands that the security deposit on their apartment has been placed in a **non-interest bearing Florida Bank** account.

**4. Tax & Rent Escalation:**  The said rental is based on current fixed and operating costs including real estate taxes, sewer and garbage fee, utility rates, insurance rates and maintenance costs.  In the event Lessor experiences an increase in the amount of said costs during the original term or renewal of this lease, then the said rental shall be increased to reflect the pro rata share of such increase.  The increased rental shall be payable by the Lessee throughout the remaining term of the lease commencing with the first installment maturing thirty days after written notice to the Lessee of such increase.

**5.Possession:**  Lessor shall not be liable for the failure to deliver possession of the premises, other than to the extent of abatement of rent on per diem basis from the date of the commencement of this Lease to the day possession is delivered to Lessee.

**6.  Use of Premises:**  These premises shall not be used directly or indirectly for business purposes, but shall be used for residential purposes only.  The premises shall be occupied by **no more than those persons whose names appear on the lease,  persons who shall consist of  adults and   children.**  Said premises shall

_Initials_

# RESIDENTIAL LEASE AGREEMENT

not be used in violation of any restriction of zoning law or regulation of any governmental body, or for any purpose which will injure the reputation of the apartment project or which will annoy or disturb other tenants or constitute a nuisance. The Landlord may permit pets with prior approval if restrictions and special fees are complied with. Lessee shall have parking for **ONE CAR.**

**7.   Inspection of Premises:**  Lessee acknowledged that he/she has inspected the Premises prior to the entering of this Lease wherein Lessee has made written notations of the conditions of the premises which notations have been delivered to  Lessor to be attached to this Lease.  Lessee expressly agrees that it is his/her duty to make such said inspection and that failure to do so shall in no way constitute a waiver on the part of the Lessor of his right to insist that the Premises be put back into the condition they were in prior to the beginning of this lease. You must immediately notify us in writing of any needed maintenance or repair.

**8. Hazardous Materials:**  Lessee agrees that he/she will not possess or allow others to possess on the Premises any item of a dangerous, flammable, explosive or noxious character which may unreasonably increase the danger of fire or which may be considered hazardous or extra hazardous by any responsible insurance company.

OSHA standards require building owners to disclose that buildings constructed prior to 1975 are presumed to contain low levels of asbestos fibers in some building materials, such as ceiling surface materials.  As long as asbestos fibers are not disturbed and no fibers are released into the air, this will pose little or no hazard. However, no holes may be drilled or nails hammered into ceilings without prior written permission from Landlord.

(       )  **Lessee Initials**

**9. Application Information:**  The application executed by Lessee is a material part of this Lease, containing information, which induced Lessor to execute same. In the event of a change in the facts set forth in the application as to the marital status, employment of Lessee, or occupancy of the apartment, such change shall be immediately reported to Lessor in writing.  Any such change or any false statement originally set forth in the application shall, at the option of Lessor, constitute a default by Lessee hereunder and Lessor may terminate this Lease notwithstanding the fact that Lessee may be current on rental payments at such time.

**10. Utilities & Pest Control:**  Lessee shall pay for all utilities promptly when due. Lessee must provide for the extermination of rats, mice, roaches, ants, bedbugs, and other vermin. Landlord specifically is not responsible for the extermination of pests that may be brought into the apartment by animals or persons such as fleas and bedbugs.

**11. Signs:**  Lessee shall not place or display signs, placards or other advertisements of any character within or on the premises.  Lessor may advertise the premises "For Rent" at any time within thirty days before the termination of this Lease and during such thirty-day period may exhibit the premises to prospective tenants.

**12.Assignment & Subletting:**  Lessee shall not assign this Lease nor sublet the premises or any part thereof without written consent of Lessor.

**13.   Destruction by Casualty:**  If the Premises shall be rendered untenantable by reason of fire, explosion, windstorm or other casualty, Lessor shall repair the Premises to make same tenantable within 90 days thereafter or relocate Lessee to another unit.  During any such period of untenantability, rent shall abate corresponding with the time during which, and to the extent to which, the Premises are determined by Lessor to be untenantable.  In the event Lessor does not exercise one of the above options, then, at Lessor's option, this Lease shall be terminated and any of the monies which are retained under paragraph 3 herein but unused shall be returned to Lessee within seven (7) days of the date of termination.  In the event of termination hereunder, Lessor shall give Lessee written notice of said termination.  In the event that the Premises are damaged but not rendered untenantable, the rent shall not cease or be abated during the period of repair of such damage, and the Lessor will proceed with the repairs as expeditiously as possible under existing circumstances.  Lessor shall not be liable for injury or damage to person or property caused by casualty or repair thereof.

**14.   Repairs:**  Lessee accepts the premises in its present condition.  The Lessor shall not be required to make any repairs or improvements on the premises except that on written notice from the Lessee of any defect rendering the same unsafe or untenantable as defined in Section 83.51 of the Florida Statutes, the Lessor shall remedy such defective condition as expeditiously as possible.  Lessee shall pay the expense for replacing all broken glass and shall maintain the premises in such condition, order and repair as the same are in at the commencement of the term of this Lease, reasonable wear and tear and damage by fire or other casualty not the fault of Lessee excepted.  Lessee shall be responsible for damages caused by his negligence and that of his family, invitees or guests.  Lessee shall not paint, paper or otherwise redecorate or make alterations to the premises without the prior written consent of Lessor.  Tenant is responsible for repairs not exceeding $100.00 per occurance.

**15.   Injury to Premises: Lessee** shall be responsible and liable for any injury or damage done to the premises or to the buildings or to the grounds on which same are located whether such injury or damage is done by Lessee, his employees, guests or other persons whom Lessee permits to be in or about the premises.  Lessee shall be liable for and shall hold Lessor harmless on account of any damage or injury to the person or property of Lessee, Lessor's other tenants, or anyone else, if such damage or injury is caused or created by negligent or wrongful act or omission of the Lessee, a member of his family, or other person on the premises with his consent, or if such damage or injury is due to any failure of the Lessee to report in writing to the Lessor any defective condition which the Lessor would be required to repair under the terms of this Lease after notice from Lessee.

**16. Plumbing, Stoppage:**  Lessee shall pay the expense of plumbing repairs to any of the sink, shower or toilet drains when such stoppages are caused by the introduction of foreign objects not intended for sewer disposal, or other misuse of such facility by Lessee, occupants or guests and invitees on the Premises.

**17.   Replacing Keys & Locks:**  Lessee's shall be responsible for replacement or costs of replacement of all keys furnished to the Lessee and for costs of changing any locks on the premises which Lessor deems advisable.

**18.Release from Liability:**  It is expressly agreed and understood that Lessee releases Lessor and/or agents from any and all damage or injury to person or property of Lessee suffered upon the premises herein leased, and will hold the Lessor and/or agents harmless from all damages sustained during the term of this Lease. In addition, Lessor makes no covenants, representations or warranties as to the security of the leased premises or the real property of which the leased premises are a part, and any security service(s) provided at or about the leased premises and/or the real property of which the leased premises are a part shall not be construed as an undertaking on behalf of, or for the benefit of the protection of Lessee (or his or her family, agents, servants, employees, guests or invitees), Lessee (or his or her family, agents, servants, employees, guests or invitees) expressly assumes all risks occasioned by the use and/or occupancy of, or location upon the premises leased hereunder, and/or the real property of which the leased premises are a part.

 Initials

2

SeaWater 00267

# RESIDENTIAL LEASE AGREEMENT

**19.  Storage & Garage:** If the Lessor makes available to Lessee any storage space outside the premises, anything stored therein shall be wholly at the risk of Lessee and Lessor shall have no responsibility whatsoever with respect thereto.  If Lessor makes available to Lessee any space for use as garage or for parking cars, Lessor shall not be responsible for any damage to or loss of any vehicle stored or parked therein, nor for any part or accessory of such vehicle, nor for any property of any kind stored or left in said space or vehicle.

**20. Entering Premises:**  Lessor may enter the premises at reasonable hours (a) to make repairs, if any, which Lessor deems it desirable to make to the premises or repairs on the building in which the premises are located; (b) to inspect the premises to see that Lessee is complying with all of the terms and conditions hereof and with the rules and regulations hereof; and (c) to remove from the premises any articles or signs kept or exhibited therein in violation of the terms hereof and as permitted under Section 83.53 of the Florida Statutes.

**21. Automobiles & other Vehicles;** Lessee is required to register all vehicles with the office upon signing the Lease, and furthermore it is expressly understood and agreed that the parking lot at same premises is limited to private passenger cars and that Lessee shall have no right to store any vehicles, boats or trailers or other property on said parking lot without written consent of Lessor.  It is expressly understood and agreed by Lessee that, in any manner or fashion, the repairing of vehicles on the premises is prohibited.  Lessee hereby grants to Lessor the undisputed right, without notice or demand, to remove any vehicles from the parking lot which are inoperable in Lessor's opinion, and remain inoperable for seven (7) consecutive days or do not have current registration, licenses or identification, and Lessee agrees to reimburse Lessor for all costs incurred by the removal.  Lessee's failure to remove vehicle parts and debris from the parking lot and to keep the parking lot surface clear of all fluid spillage from their vehicle(s) may, at Lessor's sole option, be declared a breach of the Lease and, as a result of this breach, the Lessor may declare the Lease null and void.  Lessee agrees to reimburse Lessor for all costs incurred by the removal of such vehicle parts and debris and/or repair of damage to the parking lot surface. Lessor retains the right to treat any of the violations listed in this paragraph as a breach and subjects the Lessee to those provisions contained herein.

**22.  Regulations and Rules:** Lessor reserves the right to institute rules and regulations concerning the use of the building, public areas, parking lots, swimming pools, furnished facilities, premises and pets.  The breach by the Lessee of any of said rules and regulations shall, at the option of the Lessor, constitute a default by the Lessee of the terms of this Lease subjecting this Lease to termination as provided herein.  Lessor further reserves the right to deprive the Lessee of the use of any facilities which, in the opinion of Lessor, have been used by Lessee in a manner violating said rules and regulations and in said event there shall be no rent adjustments notwithstanding the deprivation by Lessor of the use of any of said facilities by lessee.

**23. Default and Repossession:**  Time is expressly made of the essence of this Lease.  If Lessee fails to pay rent when due, and the default continues for three (3) days after delivery to Lessee of written demand by the Lessor for payment of rent or possession of the premises by delivering to Lessee or posting the same on the outside of Lessee's door, Lessor may forthwith terminate this Lease and Lessee shall forthwith vacate and surrender the premises.  If Lessee fails to comply with any material provision of this Lease, the reasonable rules and regulations promulgated by lessor, or applicable statute, other than a failure to pay rent, within seven (7) days after delivery of written notice by the Lessor specifying non-compliance and indicating the intention of the Lessor to terminate this Lease by reason thereof, Lessor may forthwith terminate this Lease and Lessee shall forthwith vacate and surrender the premises.  In addition to the defaults specified above, Lessee shall be in violation of the Lease should Lessee abandon the premises or remove all of his furniture, personal property and effects from the leased premises, or if an execution or other process be levied upon the interest of Lessee or if a petition in bankruptcy be filed by or against Lessee.  Upon the occurrence of one or more of the defaults as set forth above or any other violation of this Lease, Lessor may declare the rent for the balance of the term to be immediately due and payable and may proceed by process of law to collect the rent for the entire term.  Lessor, whether terminating this Lease or not, may upon Lessee's breach of terms hereof enter upon and take possession of all personal property on said premises and sell the same at public or private sale to satisfy any indebtedness due Lessor, which action, however, shall not limit or affect Lessor's right to exercise all other remedies allowed by law.  Lessor shall be under no obligation to relet the premises nor to pay to or account to Lessee for any rents should it relet the premises.  Lessor, in addition to all other remedies herein reserved, shall be entitled to pursue any and all other landlord remedies available to landlords under the several laws of the State of Florida.

**24. Expenses & Attorney's Fees:**  If the Lessor shall incur any expense, including reasonable attorney's fees, in enforcing any of the terms of this Lease including, but not limited to, the eviction of Lessee by judicial process or the collection of rent due hereunder, then all such sums so paid by the Lessor with interest, costs and damages shall be paid by the Lessee to Lessor on demand.

**25. Unoccupied Apartment:**  By signing this rental agreement, you agree that upon surrender, abandonment, or recovery of possession of the dwelling unit due to the death of the last remaining tenant, as provided by chapter 83, Florida Statutes, the landlord shall not be liable or responsible for storage or disposition of the tenants personal property.

**26. Surrender of Premises:**  Whenever under the terms hereof Lessor is entitled to possession of premises, Lessee will at once surrender same to Lessor in as good condition as at present, natural and reasonable wear and tear excluded, and Lessee will remove all of Lessee's effects therefrom; and Lessor may forthwith re-enter premises and repossess himself thereof and remove all persons and effects therefrom, using such force as may be necessary without being guilty of forcible entry or detainer, trespass or other tort.  Lessee hereby waives any claim for damages suffered by Lessee as a result of such disposition or removal by Lessor or its agents.

**27. Mortgagee's Rights:**  Lessee's rights shall be subject and subordinate to any bonafide mortgage, mortgages, deed or deeds to secure debts which are now or may hereafter be placed upon the premises by Lessor, and Lessee shall, at Lessor's request, sign such document as a mortgagee may reasonably require to evidence such subordination and Lessee's refusal to sign shall be a default hereunder

**28.  Lease Renewal after Original Term:**  At the end of the original term of this Lease, it is automatically renewed for thirty (30) day periods at the rental rate determined by Lessor upon fifteen (15) days notice unless either party notifies the other in writing at least fifteen (15) days in advance (prior to the end of a month) of the expiration date of said lease.  In the event said notice is not tendered, this lease at the Lessor's option , is renewed for thirty (30) day extensions.  Any thirty (30) day notice to terminate such extension is effective only from the next rental payment date.  Oral notice of termination or oral discussion of same has no validity under this lease.

**29. Definitions:**  The covenants and agreements contained in this Lease shall apply to and inure to the benefit of and be binding upon the parties hereto and upon their respective heirs, successors in interest, legal representatives and assigns.  This Lease, the rules and regulations and the application contain the entire agreement of the parties and no other agreements, promises or inducements, oral or otherwise, not embodied herein, shall be of any force or effect.

 Initials

3

## RESIDENTIAL LEASE AGREEMENT

**30. Waiver:** In the event Lessor, at its option, agrees to a waiver of any breach of any of the terms and conditions recited herein, such waiver shall not for any purpose be construed as a waiver of any succeeding breach of the same or any other terms or conditions of said Lease; it being expressly understood and agreed that under any circumstances, the burden of proof of compliance with all of the terms and conditions of this Lease shall always be upon the Lessee.

**31. Condemnation:** If the whole or any part of the premises shall be taken or condemned by any competent authority for any public use or purposes, the entire award for such taking shall be paid to the Lessor. If the whole or such a substantial part of the premises be condemned or taken as to render said premises untenantable by the Lessee, when possession shall be taken there under this Lease shall terminate and rent shall be adjusted to the time of such termination and all rights of Lessee shall cease.

**32. Detrimental Conduct:** Without limiting in any manner the rules and regulations or any other provisions of this Lease, Lessor and Lessee understand that the premises is one apartment in an apartment complex comprised of many apartments and that the conduct of any one tenant can be detrimental to the well being of the Lessor and/or other tenants in the apartment complex. Accordingly Lessor shall have the right to give Lessee seven (7) days written notice of the fact that Lessee is engaged in specific conduct detrimental to the integrity of the apartment complex and its other tenants. In the event that lessee continues to act in this detrimental manner after delivery of such notice, Lessor may terminate this Lease in accordance with paragraph 23 herein. Without limiting the definition of such "detrimental conduct", it shall specifically include, loud, indecent, boisterous, rowdy, or immoral activities or activities suggestive of such detrimental conduct on the part of the Lessee, his guests, or his invitees.

**33. Conversion:** Lessor represents that the unit being rented may be converted to a condominium or other form of ownership in which case Lessor may terminate this lease upon giving sixty (60) days notice to Lessee. In the event that said unit is converted, Lessee shall have first option to purchase the unit.

**34. Disclaimer:** By signing this rental agreement the tenant agrees that upon surrender or abandonment, as defined by The Florida Statutes, the landlord shall not be responsible for storage or disposition of the tenant's personal property.

**35. Evicted Persons:** Upon final eviction, persons of said unit that were evicted shall be deemed as tresspassers if they attempt to return to the premises. Any tenant allowing an evicted person in their unit will be evicted immediately.

**36. Water Meters:** Notwithstanding anything to the contrary contained herein, Lessee agrees that Lessor may arrange to have a water meter installed to measure Lessees water usage and sewer charges or that water usage may be calculated by formula. Lessee further agrees to pay  for  such water usage and sewer charge separate from the rent payment owed to Lessor according to this lease and that the costs and billing for water usage and sewer charge shall not be considered a reduction or offset in the rental payment due to Lessor but shall be considered additional rent. It is understood and agreed between Lessor and Lessee that in the event such payments are not made when due, it shall be considered a substantial default under the lease and Lessee agrees that Lessor may bring summary proceedings for eviction as if the rent were not paid.

**37. Damage:** If Landlord determines that your apartment should not be occupied because of damage or risk to property, health, or safety we may, at our option, terminate this lease. If it is unoccupiable due to the fault of you, your family, or invitee, you will be liable for nay monetary loss to us including rent.

**38. Liability:** Landlord will not be liable for any damages, loss, or injury to persons or property within your apartment or upon the premises. You are responsible your own casualty and liability insurance. With respect to your family or invitees, you agree to hold Lessor harmless and indemnify us from liability. We strongly recommend that you secure insurance to protect yourself and your property. We do not provide and have no duty to provide security service to protect you, others, or property

IN TESTIMONY WHEREOF, THE PARTIES HERETO HAVE SET THEIR HANDS, THIS 18th DAY OF August, 2020.  THE SIGNATURE OF LESSEE ACKNOWLEDGES THAT LESSEE HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS OF SAID LEASE.

For: **Parsun, LLC**
Alexander Ludwig, Pres. of I&S Management Inc.

By: _____
   Manager as Agent for Lessor

LESSEE: _____       LESSEE: _____

_____ Initials

4

RESIDENTIAL LEASE AGREEMENT

# RULES AND REGULATIONS

## 1. LEASE
The lease is an agreement between Tenant and Landlord. The number of occupants in the leased apartment will be limited to those named in the lease. Any violations of the lease will be cause for termination of the lease.

## 2. Number of Tenants
   a)   Occupancy shall be limited to the number of individuals stated in the lease.
   b)   The number of occupants in a one-bedroom apartment shall be limited to two adults and one minor.
   c)   The number of occupants in a two-bedroom apartment shall be limited to two adults and two minors.

## 3. Tenants
Tenants must conduct themselves and require others on the premises with his/her consent to conduct themselves in a manner that does not unreasonably disturb his neighbors or constitute a breach of peace. Do not operate radios, televisions, musical instruments ere. in such a manner that will disturb others especially between the hours of 10:00 pm and 8:00 am.

## 4. Pets
Refer to PET RULES

## 5. Pool
Refer to POOL RULES

## 6. Laundry Rooms
Do not dispose of household garbage and baby diapers in laundry room trashcans. Landlord is not responsible for any lost or damaged clothing.

## 7. Garbage
   a)   Put garbage into dumpster containers which are located at each driveway.
   b)   Bag all garbage and fold or crush boxes.
   c)   No furniture or large debris are to be disposed of on premises or around dumpsters. Any removal costs from premises will be charged to responsible tenant.

## 8. Hallways
   a)   Garbage, mops, brooms, boxes, bicycles, motorbikes etc. are not permitted in the hallways.
   b)   Clothing, rugs, towels, etc. shall not be draped on railings and fences. Do not attach clotheslines between buildings and fences.
   c)   Barbecue grills must not be used in hallways or in apartments.
   d)   No skateboarding, bicycle riding, roller-skating, roller skating, ball playing on catwalks or grass.
   e)   Second floor residents are not allowed to place chairs, plants etc. on sidewalk. Sidewalk must be kept clear per Fire Department regulations.

## 9. Autos
   a)   Apartment has one parking space.
   b)   Vehicles parked in front of garbage dumpsters will be towed away.
   c)   Vehicles leaking fluids will be towed away.
   d)   Stored vehicles will be towed away and also boats and trailers.
   e)   No trucks, campers, trailers, boats or commercial vehicles are to be parked in the parking area.
   f)   No repairs or washing of vehicles in parking area.
   g)   No cars can be parked on grass area of the property.

## 10. Motorcycles
Motorcycles are not permitted in hallways, catwalks or apartments.

Initials

5

## 11. Locks
The landlord will retain a passkey for the premises for emergency repairs pursuant to Florida Statute 83.53 (Landlord access to dwelling unit). No tenant shall alter any lock or install new locks on any door without the written consent of the landlord.

## 12. Lockout
Landlord is not obligated to provide lockout service. However, if personnel is available, such service may be provided for a fee of $25.00 up to and no later than 9:00 pm. Payment must be made prior to rendering service.

## 13. Antennas & Satellite Dishes
No antenna or satellite dishes will be permitted on the exterior of the buildings, grounds and roofs.

## 14. Air conditioning unit
In order to maintain the maximum capacity of your air conditioning unit and to reduce your electric bill it is necessary that you **wash or replace your a/c filter once a month.**

## 15. Smoke detectors
The smoke detectors in the apartments are operating on a 9-volt transistor battery. It is the tenants responsibility ~to periodically test the detector by pressing the test button and if necessary to replace the battery. The detector may beep or make a chirping sound to let you know that the battery is beginning to fail. If the detector does not function with a fresh battery, the landlord has to be notified so that it may be repaired. Do not tamper with or remove the detector from the premises.

## 16. Apartment care
No tenant shall abuse, misuse, damage, alter or maintain a dwelling unit in an unsanitary condition.

## 17. Moving
Tenants are liable for damage to buildings and grounds caused during move-in or move-out.

## 18. Roofs
It is strictly prohibited to climb on the roofs.

## 19. Windows
Only proper window treatment is allowed. No towels, sheets, cardboard, tinfoil etc. are permitted.

# POOL AREA RULES

The following rules must be adhered to by all residents to insure maximum safety and enjoyment of the pools.

1. Hours : See pool area sign.   **All persons under 18 years of age must be out of the pool at 6:00 pm or must be accompanied by a parent until 8:00 pm. No persons under 18 years of age are allowed in the pools and pool area after 8:00 pm.**

**2. Persons under 12 years of age must be accompanied by a responsible adult.**

3. No animals are allowed in the pool area.

4. All long-haired persons must wear bathing caps. BOARD OF HEALTH REGULATIONS. Infants must wear waterproof garment over diapers.

5. Glasses, bottles, etc. are prohibited in and around the pool areas. No food, alcohol or picnicking and no barbecue grills are allowed in the pool areas.

6. No guests are permitted unless they are overnight guests of a resident. Resident is responsible for their conduct. Guests cannot go into the pool area alone. Pool use is restricted to residents and overnight guests. Guests under age 18 must be accompanied by their legal guardians.

7. Bicycles, tricycles, skateboards, roller blades toys and ball playing are prohibited in pool area.

Initials

## RESIDENTIAL LEASE AGREEMENT

8. The pool area will be used only for swimming, sunbathing and relaxing. There will be no games, roughhousing, ball playing or excessive noise around the pool area. Scuba tanks, floats, balls, surfboards or wet suits are prohibited in the pools.

9. Ash trays are to be used for discarding cigarettes.

10. Only proper bathing attire is permitted in the pools. No street clothes are allowed.

11. Throwing foreign objects into the pool is prohibited.

12. Persons wearing suntan oils will not be permitted in the pools. BOARD OF HEALTH REGULATIONS.

13. Do not remove pool furnishings from the pool area.

14. **RESIDENTS ARE RESPONSIBLE FOR THE ACTIONS OF THEIR CHILDREN AND GUESTS**.

# PET RULES

1) Pets are permitted with prior approval by the Landlord in addition to a $300.00 non-refundable pet fee for the 1st pet $50.00 for the 2nd pet (limit: two pets). Lessor may charge additional charges for pet damage.

2) Residents agree that the pet will not disturb the rights, comforts and convenience of other residents in the apartment complex. This applies whether the pet is inside or outside of resident's apartment.

3) When the pet is outside of the apartment, the pet shall be kept on a leash and under resident's supervision at all times and must be walked in the grass area at roadside. Do not walk pets in any common area around the buildings. Landlord shall have the right to pick up loose pets and/or report them to the proper authorities.

## LIABILITY

Residents shall be liable for the entire amount of all damages caused by such pet. This applies to carpets, doors, walls, windows, screen, appliances and any other part of the apartment or the apartment complex, including landscaping. If such items cannot be satisfactorily cleaned or repaired, resident must pay for complete replacement by owner. Payment for damages, repairs, cleaning, replacements, etc. shall be due immediately upon demand. Residents shall be strictly reliable for the entire amount of any injury to the person or property of others, caused by such pet; and resident shall indemnify Landlord for all costs of litigation and attorney's fees resulting from it.

If any rules are violated by residents, other occupants, guests and invitees, residents shall at Landlord's option immediately and permanently remove the pet from the premises upon written notice by Landlord. If the resident refuses to remove the pet, eviction procedures will begin at Landlord's option.

## RULES REVISION

The Landlord reserves the right to make such other and further reasonable rules and regulations as needed for the safety, care and cleanliness of the premises and for the preservation of good order therein, at any time and without giving prior notice.

Revision, June, 2002
Parsun, LLC

Lessee _____

Lessee _____                Date ___8/19/2020___

Page 7 of 15          Initials Tenant _____          Initials Landlord / Agent _____

SeaWater 00272

## RESIDENTIAL LEASE AGREEMENT

| Apartments_DRUG/CRIME FREE ADDENDUM |
| --- |

In consideration of the execution or renewal of the lease, Owner, Management and Resident agree as follows:

**1.      Resident, any member of the Resident's household, or a guest or other person under the Resident's control shall not engage in criminal activity, including drug-related criminal activity, on, near or within sight of the rental premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, transportation, storage, use, or possession with intent to manufacture, sell, distribute, store, transport or use a controlled substance including but not limited to marijuana or cocaine.**

2.      Resident, any member of the Resident's household, or a guest or other person under the Resident's control **shall not engage in any act intended to facilitate criminal activity**, including drug-related criminal activity, on, near or within sight of the premises.

3.      Resident or member of the household **will not permit the dwelling unit inside or out to be used for, or to facilitate criminal activity**, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4.      Resident or member of the household will not engage in the manufacture, sale, storage, transportation, use, possession or distribution of illegal drugs and/or drug paraphernalia at any location, whether on, near or within sight of the premises or otherwise.

**5.      Resident, any member of the Resident's household, or a guest or other person under Resident's control shall not engage in any illegal activity including but not limited to prostitution, public drunkenness, lewd behavior, trespass by your guests if they have previously received a trespass warning, dangerous operation of a motor vehicle in the premises, disorderly conduct, street gang activity, battery, assault, discharging weapons, acts of violence or threats of violence, sexual crimes on or off the premises, or any breach of the lease agreement that otherwise jeopardizes the safety or welfare or any persons.**

6.      **VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL AGREEMENT AND GOOD CAUSE FOR TERMINATION OF TENANCY**. A single violation of any of the provisions of this addendum shall be deemed a serious violation and material noncompliance with the Rental Agreement. It is understood and agreed that a single violation shall be good cause for termination of the Rental Agreement. Unless otherwise provided by law, **PROOF OF VIOLATION SHALL NOT REQUIRE CRIMINAL CONVICTION**, but shall be a preponderance of the evidence.

7.      In case of conflict between the provisions of this addendum and any other provisions of the Rental Agreement, the provisions of the addendum shall govern.

SeaWater 00273

RESIDENTIAL LEASE AGREEMENT

# DISCLOSURE OF INFORMATION
## ON LEAD-BASED PAINT & LEAD-BASED PAINT HAZARDS

**LEAD WARNING STATEMENT**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.

Tenant Acknowledges receiving the pamphlet
*Protect your Family From Lead In Your Home:*

_____     8/19/2020
Tenant                                          Date

**LESSOR'S DISCLOSURE**

The lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. The lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Lessor certifies that his disclosure is true and correct to the best of his knowledge:
For: Parsun, LLC
Alexander Ludwig, Pres. of I&S Management Inc.

_____     _____
Lessor's Agent                                  Date

SeaWater 00274

RESIDENTIAL LEASE AGREEMENT

**TENANT ACKNOWLEDGES RECEIPT OF THE FOLLOWING NOTICE AND AGREES TO THE TERMS STATED REGARDING SECURITY DEPOSIT.**

## Cleaning fees will be charged against security deposit:

| | | |
|---|---|---|
| 1. | Kitchen cabinets and drawers | starting at $ 40.00 |
| 2. | Refrigerator | starting at $ 40.00 |
| 3. | Oven | starting at $ 100.00 |
| 4. | Range top including drip pans | starting at $ 50.00 |
| 5. | General cleaning including windows | starting at $ 60.00 |
| 6. | Bathroom including cabinets | starting at $ 50.00 |
| 7. | Trash removal from premises | starting at $ 75.00 |
| 8. | Disposal of furniture | starting at $ 100.00 |
| 9. | Wall repairs (hourly rate) | starting at $ 85.00 |
| 10. | Grout cleaning on tile floors | starting at $ 150.00 |
| 9. | Door keys not returned | starting at $ 100.00 |
| 10. | Mail box keys not returned | starting at $ 25.00 |

LEAVE FREEZER AND REFRIGERATOR DOORS OPEN.

### SECURITY DEPOSIT POLICY

1. Lessee may not use security for payment of rent prior to vacating.
2. Full term of lease has expired.
3. A full calendar month's notice in writing was given prior to vacating.
4. No damage to the apartment beyond normal wear and tear.
5. Entire apartment (s. above) has to be clean including windows.
6. No delinquent rents, late fees, or payments outstanding.
7. All keys returned.
8. All debris, rubbish and discards placed in dumpster.
9. No extreme pet odor in carpet/apartment.
10. Forwarding address in writing left with manager.
11. The security deposit refund check will be mailed by certified mail to forwarding address within 30 days or as required by Florida law.

_____**Lessee**          Date _8/19/2020_

**Revised Feb. 2013**

SeaWater 00275

RESIDENTIAL LEASE AGREEMENT
# MOLD ADDENDUM TO LEASE

THIS ADDENDUM IS AGREED TO AND SHALL BE MADE PART OF THE LEASE AGREEMENT BETWEEN Parsun, LLC (OWNER OR AGENT) AND Michael Spanos (TENANT(S)) FOR THE PREMISES LOCATED AT: 405 Hendricks Isle , Fort Lauderdale, FL 33301("LEASED PREMISES").

**MOLD:** Mold consists of naturally occurring microscopic organisms which reproduce by spores. Mold breaks down and feeds on organic matter in the environment. The mold spores spread through the air and the combination of excessive moisture and organic matter allows for mold growth. Not all, but certain types and amounts of mold can lead to adverse health effects and/or allergic reactions. Not all mold is readily visible, but when it is, can often be seen in the form of discoloration, ranging from white to orange and from green to brown and black, and often there is a musty odor present. Reducing moisture and proper housekeeping significantly reduces the chance of mold and mold growth.

**CLIMATE CONTROL:** Tenant(s) agree to use and not obstruct or alter all air-conditioning, if provided, in a reasonable manner and use heating systems in moderation and to keep the premises properly ventilated by periodically opening windows to allow circulation of fresh air during dry weather only. OWNER OR AGENT RECOMMENDS THAT AIR CONDITIONING IS USED AT ALL TIMES IF UNIT HAS AIR CONDITIONING.

**TENANT(S) AGREE TO**
- KEEP THE PREMISES CLEAN AND REGULARLY DUST, VACUUM ANDMOP
- AVOID EXCESSIVE AMOUNTS OF INDOORPLANTS
- USE CEILING FANS IF PRESENT
- WATER ALL INDOOR PLANTSOUTDOORS
- WIPE DOWN ANY MOISTURE AND/ORSPILLAGE
- WIPE DOWN ANY VANITIES/FAUCETS/SINK TOPS, IF PRESENT IN THE LEASED PREMISES
- OPEN BLINDS/CURTAINS TO ALLOW LIGHT INTO PREMISES
- WIPE DOWN FLOORS IF ANY WATER SPILLAGE
- USE HOUSEHOLD CLEANERS ON ANY HARDSURFACES
- REMOVE ANY MOLDY OR ROTTING FOOD
- REMOVE GARBAGE REGULARLY
- WIPE DOWN ANY AND ALL VISIBLEMOISTURE
- WIPE DOWN WINDOWS AND SILLS IF MOISTUREPRESENT
- INSPECT FOR LEAKS UNDER SINKS AND FAUCETS, IF PRESENT IN THE LEASED PREMISES
- CHECK ALL WASHER HOSES IFAPPLICABLE
- REGULARLY EMPTY DEHUMIDIFIER IFUSED

**TENANT (S) SHALL REPORT IN WRITING**
- VISIBLE OR SUSPECTEDMOLD
- ALL A/C OR HEATING PROBLEMS ORSPILLAGE
- PLANT WATERING OVERFLOWS
- MUSTY ODORS, SINK AND/OR WATER FIXTURE OVERFLOWS
- LEAKY FAUCETS, PLUMBING
- DISCOLORATION OF WALLS, BASEBOARDS, DOORS, WINDOW FRAMES, CEILING
- MOLDY CLOTHING AND/OR REFRIGERATOR OVERFLOWS
- MOISTURE DRIPPING FROM OR AROUND ANY VENTS, A/C CONDENSERLINES
- LOOSE, MISSING OR FAILING GROUT OR CAULK, SINKS, FAUCETS, COUNTERTOPS, IF APPLICABLE
- ANY AND ALL MOISTURE

**SMALL AREAS OF MOLD:** If mold has occurred on a small non-porous surface such as ceramic tile, formica, vinyl flooring, metal or plastic and the mold is not due to an ongoing leak or moisture problem. Tenant(s) agree to clean the areas with soap (or detergent) and a small amount of water, let the surface dry, and then within 24 hours apply a non-staining cleaner such as Lysol Disinfectant, Pine-Sol Disinfectant (original pine-scented), Tilex Mildew Remover, or Clorox Cleanup.

**TERMINATION OF TENANCY:** Owner or agent reserves the right to terminate the tenancy and TENANT(S) agree to vacate the premises in the event Owner or Agent in its sole judgment feels that either there is mold or mildew present in the dwelling unit which may pose a safety or health hazard to TENANT(S) or other persons and/or TENANT(S) actions or inactions are causing a condition which is conducive to mold growth.

**INSPECTIONS:** TENANT(S) agree that Owner or Agent may conduct inspections of the unit at any time with reasonable notice.

Initials Tenant_____        Initials Landlord / Agent _____

SeaWater 00276

## RESIDENTIAL LEASE AGREEMENT

**VIOLATION OF ADDENDUM: IF TENANT(S) FAIL TO COMPLY WITH THIS ADDENDUM, Tenant(s) will be held responsible** for property damage to the dwelling and any health problems that may result. Noncompliance includes but is not limited to Tenant(s) failure to notify Owner or Agent of any mold, mildew or moisture problems immediately IN WRITING. Violation shall be deemed a material violation under the terms of the Lease, and Owner or Agent shall be entitled to exercise all rights and remedies it possesses against TENANT(S) at law or in equity and TENANT(S) shall be liable to Owner for damages sustained to the Leased Premises. TENANT(S) shall hold Owner and Agent harmless for damage or injury to person or property as a result of TENANT(S) failure to comply with the terms of this addendum.

**HOLD HARMLESS:** If the Leased Premises is or was managed by an Agent of the Owner, TENANT(S) agree to hold Owner as well as its Agent(s) and its employees harmless in the event of any litigation or claims concerning injury, damage or harm suffered due to mold or mildew.

**PARTIES: THIS ADDENDUM IS BETWEEN THE TENANT(S) AND OWNER AND OR AGENT MANAGING THE PREMISES. THIS ADDENDUM IS IN ADDITION TO AND MADE PART OF THE LEASE AGREEMENT AND IN THE EVENT THERE IS ANY CONFLICT BETWEEN THE LEASE AND THIS ADDENDUM, THE PROVISIONS OF THIS ADDENDUM SHALL GOVERN.**

For: Parsun, LLC

| | |
|---|---|
| Tenant                          Date | Alexander Ludwig, Pres. of I&S Management, Inc.      Date |
| 8/19/2020 | |

Tenant                          Date

---

Initials Tenant _____     Initials Landlord / Agent _____

SeaWater 00277

# SMOKE DETECTOR & FIRE EXTINGUISHER AGREEMENT

I (we) do hereby acknowledge receipt of 3 smoke detection devices and 0 fire extinguisher(s) in good working condition and properly installed.

**REPAIR.** I (We) agree that it is our duty to regularly test the smoke detector(s) and/or fire extinguisher(s) and agree to notify owner or agent immediately in writing of any problem, defect, malfunction or failure of the smoke detector(s) and/or fire extinguisher(s).  Owner shall repair or replace the smoke detector(s) and/or fire extinguisher(s), assuming the availability of labor and materials in the event we notify owner or agent of any defect in writing.

**MAINTENANCE.** I (We) agree to replace the smoke detector(s) battery; if any, at any time the existing battery becomes unserviceable.

**REPLACEMENT.** I (We) agree to reimburse owner or agent upon request, for the cost of a new smoke detector(s) and/or fire extinguisher(s) and the installation thereof in the event the existing smoke detector(s) and/or fire extinguisher(s)  becomes damaged by me, my  guests or invitees.

**DISCLAIMER.**
 I (We) acknowledge and agree that owner or agent is not the operator, manufacturer, distributor, retailer or supplier of the smoke detector(s) and/or fire extinguisher(s)
I (We) assume full and complete responsibility for all risk and hazards attributable to, connected with or in any way related to the operation, malfunction or failure of the smoke detector(s) and/or fire extinguisher(s), regardless of whether such malfunction or failure is attributable to connected with, or in any way related to the use, operation, manufacture distribution, repair, servicing or installation of said smoke detector(s) and/or fire extinguisher(s).

No representation, warranties, undertakings or promises, whether oral or  implied, or otherwise, have been made by owner, its agents or employees to me regarding said smoke detector(s) and/or fire extinguisher(s), or the alleged performance of the same, owner or agent neither makes nor adopts any warranty of any nature regarding said smoke detector(s) and/or fire extinguisher(s) and expressly disclaims all warranties of fitness for a particular purpose, of habitability, or any and all other expressed or implied property caused by
(1) My failure to regularly test the smoke detector(s) and/or fire extinguisher(s):
(2) My failure to notify owner or agent of any problem, defect, malfunction, or failure of
the smoke detector(s) and/or fire extinguisher(s): (3) theft of the smoke detector(s) and/or fire extinguisher(s) or its serviceable battery; and/or (4) false alarms produced by the smoke detector(s).

_____

TENANT

_____

DATE

TENANT

DATE 8/19/2020

Initials

SeaWater 00278

RESIDENTIAL LEASE AGREEMENT

# STORM REGULATIONS ADDENDUM

Tenant agrees Landlord has no obligation to install storm shutters and/or take measures to prevent wind, rain and/or other objects or projectiles from entering the premises in the course or event of a windstorm, flood, hurricane, hailstorm, tropical storm, or any other act of nature (hereinafter "Storm") that may strike in the area of or affect the premises rented by Tenant from Landlord. Tenant agrees Landlord has no duty to advise Tenant as to evacuation orders, potential or current storms, safety measures, storm-preparedness procedures, or storm recovery resources. Tenant agrees to use due diligence in keeping informed of the current and future weather.

TENANT'S OBLIGATIONS REGARDING PERSONAL PROPERTY:
Tenant agrees the rental premises are located in an area that may be subject to storms, and as a result, it is necessary to take steps to protect one's personal property, including but not limited to securing objects that may become projectiles, keeping important documents in a location safe from damage, providing for the safekeeping of keepsakes, and obtaining appropriate insurance. Tenant understands that, even with precautions, damage to personal property, including vehicles, may occur.

RENTER'S INSURANCE:
Tenant understands and agrees Landlord's insurance if any DOES NOT cover injury or death to Tenant's person or loss of any kind to Tenant's personal property or expenses incurred by Tenant due to a storm, including but not limited to, loss of perishables, interruption of water, electric, cable or other utility service, relocation expenses and/or temporary or permanent housing. Tenant agrees he or she has an affirmative obligation to obtain renter's insurance to cover losses in the event loss should occur to Tenant's person and/or personal property due to a storm. Failure by Tenant to obtain renter's insurance is done at the complete and total risk of the Tenant.

LIABILITY OF LANDLORD :
Tenant waives any liability or duty on the part of the Landlord for any damage to person or property should any occur due to a storm. Tenant agrees to indemnify Landlord should any third party institute an action for damages against Landlord due to damages caused to person or property by Tenant's personal property and/or Tenant's actions or inactions relating to such personal property. Such indemnity shall include attorney's fees and costs of Landlord incurred in any actions for damages by a third party.

STORM PREPARATION :
Once a tropical storm, hurricane, flood watch or warning is issued for a particular area and/or at the request of Landlord, Tenant agrees to take storm preparedness actions. Any injury to Tenant arising from storm preparation is the sole responsibility of the Tenant and not of Landlord. In the event of damage to Landlord's property due to Tenant's storm preparations, that damage will be the responsibility of Tenant. Tenants shall remove all authorized and unauthorized objects from the immediate premises that may become projectiles in a storm, such as deck chairs, potted plants, patio benches and any items on a balcony, lanai, patios and/or breezeways of the rental premises. These items should be placed inside the apartment and returned to the outside only when it is safe to do so. In no event, shall any motorcycle, scooter, gas grill, or other item containing gasoline or other fuel, be stored inside in the rental premises. These items must be removed completely from the premises.

SeaWater 00279

## RESIDENTIAL LEASE AGREEMENT

MODIFICATIONS TO THE PREMISES:
Tenant agrees no modification shall be made to the premises including but not limited to attaching storm shutters, plywood or other items over doors or windows, taping duct tape or any other type of tape to windows or screens or making any other modifications or attaching any item to the premises. If Tenant fails to abide by this provision, Tenant shall be in breach of the lease agreement, shall be responsible for any damages to the premises and subject to eviction by Landlord.

STORM SHUTTERS:
If the premises are not equipped with storm shutters, Tenant understands that no storms shutters will be provided and/or no measures shall be taken by Landlord to secure doors and or windows unless Landlord, in its sole discretion, decides to perform these tasks. Tenant agrees to hold Landlord harmless for any damage to person and or property due to the lack of storm shutters or Landlord's decisions to secure or not secure doors and/or windows. If storm shutters have been installed at the premises, or if Landlord secures door and/or windows, this shall not relieve the Tenant of the obligation of looking to his or her renter's insurance for coverage of any damages to property or person. Tenant agrees that installation of storm shutters or other means of securing doors and windows are not guarantees in any way that damage to the premises due to a storm will be minimized or will not occur.

GENERATORS AND FLAMMABLE LIQUIDS :
Tenant agrees that NO GENERATOR(s) WHATSOEVER shall be permitted to be used by Tenant on, in or near the premises. Severe hazards are associated with storing and operating a generator at the property, including injury and death to persons and damage to property. Tenant agrees that NO FLAMMABLE LIQUIDS shall be permitted to be stored on, in or about the premises including but not limited to gasoline, kerosene or propane.

REMOVAL OF OR DISABLING OF GENERATORS BY LANDLORD:
In the event Landlord is made aware that Tenant is in possession of or using a generator on, in or near the premises, Tenant by this document gives Landlord absolute permission to disable the generator and/or remove the generator from the premises without notice or further permission of the Tenant. Tenant agrees to hold Landlord, its agents, employees and assigns harmless for any damages suffered as a result of Landlord disabling and/or removing the generator from the premises. This includes damages to Tenant's personal property due to lack of electricity and /or damages to or loss of the generator itself.

EVACUATION OF PREMISES:
In the event a governmental entity orders an evacuation of the area, Tenant agrees to follow such evacuation orders. In the event Tenant fails to follow the evacuation orders, Tenant agrees that Landlord shall not be liable in any way for injury or death of Tenant or damage or destruction of Tenant's personal property, including vehicles.

_____
TENANT

_____
DATE

_____
TENANT
8/19/2020
_____
DATE

SeaWater 00280

# LEASE AGREEMENT

In consideration of the agreements of the Tenant(s), known as **RENTER**, the Owner, **FORTUNE PROPERTIES**, hereby rents them the dwelling located at **2049 Tropical Isle, Lauderdale By The Sea, FL 33062** for the period commencing on the 15th, day of APRIL, 2021, and monthly thereafter until the 30th day of APRIL, 2022, at which time this agreement is terminated. Tenant(s), in consideration of Owner's permitting them to occupy the above premises, hereby agree(s) to the following terms: The sum of **$48,000.00/ 12Mo = $4000.00** Tenant move in date APRIL 15th, 2021 to APRIL 30th, 2021 is a prorated amount of **$2,104.16 (16 days x $131.51)** = Total sum of **$50.104.16**. Evidenced by **$8,504.16**, as a deposit receipt, which upon acceptance of this rental agreement, the Owner/Agent of said premises hereinafter referred to as Owner, shall apply said deposit as follows:

|  | Amount Received | Balance Due |
|---|---|---|
| Rent for FIRST MONTH, the Period from APR15th, 2021 to APR 30th, 2021 | $ 2,104.16 | |
| Rent for LAST MONTH, the Period from APR 1st, 2022 to APR 30th, 2022 | $ 4,000.00 | $ 0.00 |
| Security Deposit | $ 2,400.00 | $ 0.00 |
| The Security Deposit $2,400.00 will be held in escrow until tenants vacate.  Cleaning Charge (see # 37) | | |
| Pet fee $ n/a no pets per pet. (waived additional) n/a collected for pet fee of $ n/a "no pets" | | $ 0.00 |
| **RECEIVED $ 8,504.16** | | $ 0.00 |

In the event that this agreement is not accepted by the Owner or his authorized agent, within **60** days, the total deposit received shall be refunded. Tenant hereby offers to rent from the Owner the premises situated in the city of Lauderdale By The Sea, County of Broward, State of Florida, described as 2049 Tropical Isle, Lauderdale By The Sea, FL 33062, upon the following terms and conditions:

**1. TERM**   The term hereof shall commence on **APRIL 15TH, 2021.**

In the event the tenant needs to terminate the lease a 60 days written notice delivered by text or email but must be followed up in writing and sent certified mail for our records.  Tenant agrees to cooperate with Owner in the showing of the premises for sale or re-rental and agrees to make premises accessible and in "show condition" once notice is given to vacate.

**2. RENT**   Rent shall be **$ 4000.00** per month, payable in advance, to be received upon the 1st day of each calendar month to Owner or his authorized agent, "MAILED" until Direct Deposit form is completed and setup with Tenants Banking Institution. Make checks Payable to Fortune Properties and Mail Payments to address:

## **Fortune Properties, 440 Store Rd, Harleysville, PA 19438**

Or at such other places Owner may designate. In the event that Owner provides self addressed envelopes and/or payment booklet, it shall be for tenant's convenience only. Prompt payment of rent shall be tenant's responsibility regardless of whether tenant has a supply of envelopes or payment booklet. Rent must be paid in full and no amount subtracted from it.

The first month's rent is to be paid when the Tenant signs this lease (or prior to move in date) Tenant may be required to pay other charges to Owner under the terms of this lease. They are to be called "additional rent." Added rent charges can result when Owner or his agent must pay for any expenses which are the tenant's responsibilities under the terms of the lease. Late charges, attorney's fees and any expenses related to the enforcement of this lease shall be classified as "additional rent." This additional rent is payable as rent, together with the next monthly rent due. If tenant fails to pay additional rent on time, Owner shall have the same rights against tenant as if it were a failure to pay rent. Lease violation penalty fees shall be classified as additional rent. The whole amount of rent is due and payable when this lease is effective.  Payment of rent in monthly installments is for tenant's convenience only. If tenant defaults, Owner may give notice to tenant that rent may no longer be paid in installments, and the entire rent for the remaining part of the term will be due and payable. The last day of the lease shall be three (3) days prior to the end of the last month. The amount of the yearly rent has been adjusted to reflect said termination date.

PG 1 of 7

SeaWater 00392

**3.   LATE FEES**   In the event rent is not received by the **7th; 6 DAYS after due date,** Tenant agrees to pay a late charge of **$25.00**.  Additional late charges of $1.00 will be incurred for each day rent is late beyond the **7th; the (8th) day** of the month. Tenant agrees to further pay $35.00 for each dishonored bank check. After the tenth day that rent has not been paid, further legal action will be taken at Tenant's expense. Tenant acknowledges that untimely payments may adversely affect credit rating. Unpaid late charges and/or attorney's fees shall be classified as "additional rent." Additional rent that remains unpaid after 30 days from the date incurred shall constitute a breach of this lease. Tenant also understands that late fees shall be applicable if a dishonored bank check, bank error and/or out of state/non-local check prevents Owner from receiving rent money on time.

**4.   USE**   The premises shall be used as a residence by the undersigned tenants with no more than **4** occupants, and for no other purpose, without written consent of the Owner. Occupancy by guests staying over **7** days will be a violation of this provision. In the event any other people occupy and live in this rental, in any capacity, without Owner's written consent, it will constitute a breach of this lease, and the Owner at his sole option may terminate this lease.

**5.   UTILITIES**   Tenant shall be responsible for the payment of all utilities and services for the entire premises.

**6.   HOUSE RULES**   In the event that the premises are a portion of a building containing more than one unit, or a single family dwelling, Tenant agrees to abide by any and all house rules, whether promulgated before or after the execution hereof, including but not limited to rules with respect to noise, odors, disposal of refuse, pets, parking and use of common areas. Tenants agree to use carpeting or area rugs on any bare wood floors above another dwelling. Tenants agree to provide their own trash cans and to bring them in after collection.

**7.   MAINTENANCE, REPAIRS OR ALTERATIONS**   Tenant acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Tenant shall at his own expense, and at all times, maintain the premises in a clean and sanitary manner including all equipment, appliances, furniture and furnishings therein and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. Once notice is given to vacate, Tenant agrees to keep the premises in "show condition". "Show condition" means as clean, orderly and undamaged as when received. Upon vacating, Tenant shall deliver premises vacant and clean. In the event the premises are returned in condition poor enough to prevent Owner from re-renting to a qualified new tenant, Tenant shall be responsible for rent lost as well as the cost of restoration of the rental  to the condition it was at the commencement of this lease.  Tenant shall be responsible for damages caused by his negligence and that of his family, invitees or guests.

**8.   ORDINANCES & STATUTES**   Tenant shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, of which may hereafter be in force pertaining to the use of the premises.

>        **PAINT**   Tenant shall not paint, paper or otherwise redecorate without the prior written consent of the Owner. All paints, materials and work plans must be approved in writing by Owner or his authorized agent. Tenant shall be responsible for paint spills/clean-ups or damages as a result of paint related work.

>        **GROUNDS**   Tenant shall be required to irrigate and maintain any surrounding grounds, including the trimming of trees, shrubbery and keep same clear of leaves, rubbish and weeds.

>        **LEADERS AND GUTTERS**   Tenant is responsible for keeping leaders and gutters, if any, free of leaves, sticks and any accumulations that may occur. If the property is heavily treed, leaders and gutters may need clearing several times a year.

>        **BASEMENTS AND GARAGES**   In the event the dwelling has a basement or garage, use of the basement or garage is not included in the rent, nor shall it be considered living space. Any use of the basement or garage shall be at Tenant's own risk. Tenant agrees to be responsible for maintaining these areas properly, including using a dehumidifier in the basement to minimize moisture.

>        **WINDOWS**   Tenant is responsible for the cleaning and maintenance of the windows on the premises. If any window(s) or screen(s) become damaged or broken as a result or during the term of this tenancy, the Tenant will be responsible for repair(s). Tenant agrees to observe care and caution when installing and removing any window unit air conditioners.

>        **ADDITIONAL ITEMS**   Storm doors are not included in the rental. Light bulbs shall have a wattage of no higher than 60 watts. Should Tenant attach any fixtures, blinds or any other objects to the real property by nails, screws or glue, it is agreed that these objects will remain with the premises and be may be subject to cost of removal at Owner's discretion. Tenant shall not install or authorize installation of any wiring on the premises which requires the drilling of holes into the dwelling, without Owner's written consent. In the event a requested serviceman is unable to gain access to premises for agreed repairs, Tenant shall be responsible for a service charge of $35.00 payable as "added rent". Tenant is responsible for minor repairs such as light switches, replacing light bulbs, doorknobs, broken windows, leaking faucets, minor toilet problems, etc. Repairs resulting less than $175.00 shall be deemed minor repairs. Should Tenant neglect maintenance responsibilities, Owner or agent may assume them on Tenant's behalf and any expenses incurred by Owner in connection therewith shall be additional rent (added rent), payable to Owner on demand.

SeaWater 00393

**9.   SPACE "AS IS"**   Tenant has inspected the premises. Tenant states that they are in good order and repair and takes premises "as is".

**10.   ASSIGNMENT AND SUBLETTING**   Tenant shall not assign this agreement or sublet any portion of the premises.

**11.   PETS**   No pets shall be brought on the premises without prior written consent of the Owner.

**12.   PESTS**   Tenant agrees to be responsible for the extermination of any insect or wildlife pest infestation during or as a result of the tenant's occupancy. Tenant shall be responsible to immediately remedy any such infestations as soon as any pest problem is observed.

**13.   APPLIANCES**   The dwelling may contain various appliances, such as stoves, microwave ovens, refrigerators, dishwashers, laundry machines, garbage disposals and compactors, central or individual air conditioners, dehumidifiers, automatic garage door opener, etc.  These appliances are not included in the rent, but the use of them may be allowed for the tenant's convenience only.  If Tenant wishes to use these appliances, Tenant shall assume responsibility for care, repairs and maintenance. If appliances are equipped with manuals and/or warrantee papers, Tenant shall not lose or discard these documents, and will be responsible for their return. The appliances provided in the dwelling by the Owner are as follows: Stove, Refrigerator, Dishwasher, Garbage Disposal, Microwave, Water Softener, Washer, Dryer.

Tenant agrees to replace all water supply hoses to washing machine that show any signs of wear every year. Tenant also agrees to turn off water supply to washing machine when it is not in use. Tenant agrees to add Salt to Water Softener Tank; Owner will supply salt.  Tenant will monitor the Smoke Detector for working Batteries.

**14.   PLUMBING STOPPAGES**   Tenant is responsible for all plumbing stoppages and cesspool fill ups. Tenant is responsible for the cleanup of waste spills as a result of any plumbing stoppages. As a preventative measure, it is recommended that Tenant have waste lines cleaned annually.

**15.   HEATING AND COOLING SYSTEMS**   If the dwelling is equipped with central air conditioning or individual units, the air conditioning equipment care and maintenance shall be the Owner responsibility, unless otherwise specified herein, Tenant will monitor and replace the Air Handler Filter.

**16.   FUEL OIL ADJUSTMENT**   (N/A doesn't apply to this property named in this agreement) the fuel tank on the premises will be filled prior to Tenants occupancy. Tenant will set up their oil delivery and will fill the tank upon vacating.

**17.   RIGHT OF ENTRY FOR PERIODIC INSPECTION**   The Owner or his agent may enter the premises with prior consent of the tenant or with 24 hours written notice to any tenant on the premises to be entered. The Owner may enter during reasonable hours and for the purpose of inspecting the premises, making necessary or agreed repairs, decorations, alterations or improvements, supplying necessary or agreed services, or exhibiting the dwelling unit to prospective or actual purchasers, mortgagees, prospective tenants, workmen, contractors, or insurance inspectors. The Owner shall be deemed to have given 24 hours written notice by posting a notice in a noticeable place stating such intent to enter, at least 24 hours before the intended entry, or in the event notice to vacate has been given by the tenant, the Owner shall have tenant's authorization to show the premises at any and all reasonable times, regardless of whether the tenant is present or not. However, in the event of an emergency constituting a danger to life, health or property, the Owner or his agent may enter the property at any given time without the consent of or notice to the tenant. The Owner shall have the right to enter the property at any given time upon the request for repairs.

**18.   INDEMNIFICATION**   Owner / landlord shall not be liable for any damage or injury to the tenant, or any other person or to any property, occurring on the premises or any part thereof, or in common areas thereof, unless such damage or injury is the proximate result of the negligence of the Owner, his agents or employees. Tenant agrees to hold Owner/Landlord harmless from any claims of bodily injury or property damages made against the Owner/ landlord and caused in whole or in part by the tenant or the tenants guests or, no matter how caused. Tenant acknowledges receipt of HUD lead paint disclosure information and/or pamphlet.

SeaWater 00394

**19. POSSESSION**  If Owner is unable to deliver possession of the premises at the commencement hereof, Owner shall not be liable for any damages caused thereby, nor shall this agreement be void or voidable, but Tenant shall not be liable for any rent until possession is delivered. Tenant may terminate this agreement if possession is not delivered within 30 days of the commencement of the term hereof. In the event this agreement is terminated by the tenant and/or the owner, any monies or realty commissions paid by tenant and/or owner shall be deemed damages against the party in default, not the real estate broker.

**20. SECURITY**  The security deposit set forth, shall secure the performance of the tenant's obligations herein. Owner may, but shall not be obligated to apply all or portions of said deposit on account of Tenant's obligations herein, including, but not limited to, if Tenant is in default of this lease, attorneys' fees, unpaid rent, any other outstanding charges. Any balance remaining upon termination shall be returned to the tenant. Tenant shall not have the right to apply Security Deposit in payment of any rent. Security deposits must be raised proportionately with rent increases.

**21. DEPOSIT REFUNDS**  The balance of all deposit refunds shall be refunded within 60 days from the date possession is delivered to Owner or his authorized agent together with a statement showing any changes made against such deposit by owner. Tenant agrees to provide Owner/Agent with the address of his new residence and include it in the Notice of Intention to Vacate form. Tenant also agrees that endorsement of a security refund settlement check shall constitute full acceptance of settlement, agreement and waiver of any claims against owner/agent.

**22. WAIVER**  No failure of Owner to enforce any term hereof shall be deemed a waiver, nor shall any acceptance of partial payment be deemed a waiver of Owner's right to the full amount thereof. This lease supersedes any other lease on the premises during the term stated herein. No terms in this lease shall be deemed waived, regardless of any conflicting terms or rules in any governmental rent assistance programs.

**23. REAL ESTATE COMMISSION**  In the event a commission was earned by a real estate broker, Tenant shall not take possession of the premises unless all fees due broker are paid in full as agreed. Commission is payable when this lease is signed by the Tenant(s). It is solely for locating the rental for the Tenant and is not refundable under any circumstances regardless of any disputes or conditions between Owner and Tenant before, after, or whether or not occupancy is taken.

**24. DEFAULT**  If Tenant shall fail to pay rent when due, or perform any term hereof, after not less than three (3) days written notice of such default given in a manner required by law, the Owner, at his option, may terminate all rights of the tenant herein, unless Tenant within said time shall cure such default. If Tenant abandons or vacates the premises while in default of the payment of rent, Owner may consider any property left on the premises to be abandoned and may dispose of the same in any manner allowed by law. If the lease is canceled or rent or added rent is not paid on time, or Tenant vacates the premises, Owner may in addition to other remedies take any of the following steps: Enter the premises and remove the tenant and any person or property; Use dispossess, eviction or other lawsuit method to take back the premises. If the lease is ended or Owner takes back the premises, rent and added rent for the unexpired term becomes due and payable. Owner may re-rent the premises and anything in it for any term. Owner may re-rent for a lower rent and give allowance to the new tenant. Tenant shall be responsible for Owner's cost of re-renting. Owner's cost shall include the cost of repairs, decorations, broker's fees, attorney's fees, advertising and preparation for renting. Tenant shall continue to be responsible for rent, expenses, damages and losses. Any rent received from the re-renting shall be applied to the reduction of money the tenant owes. In a proceeding to get possession of the premises, Tenant agrees to make no motions to the court concerning issues such as habitability or delaying the legal process with requests for additional time. Tenant waives all rights to return to the premises after possession is returned to Owner by a court. Tenant agrees to waive rights to trial by a jury in any matter which comes up between the parties under or because of this lease. Tenant shall not have the right to make a counterclaim or set off.

**25. DAILY RENTAL**  This lease provides for rent to be paid monthly, but in the event of a default on the tenant's part in paying the rent, Tenant agrees that this will become a Daily Rental until such time rent is brought current. After proper notices are given by the Owner, the tenant agrees that a Daily Rental term would begin immediately following the tenant's failure to cure the default. Tenant agrees to have any arrears up to date by the tenth (10th) day from failure to cure default or Tenant will vacate the premises immediately or be subject to arrest for theft of services and/or trespassing.

**26. ATTORNEY'S FEES**  In any legal action to enforce the terms hereof or relating to the premises, regardless of the outcome, the Owner or agent shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee. Tenant acknowledges all attorney's fees shall be classified and billed to tenant as "added rent."

PG 4 of 7

**27. NOTICES**   Any notice which either party may or is required to give, may be given by mailing the same, by certified mail, to Tenant at the premises, or to Owner at the address shown below or at such other places as may be designated by the parties from time to time. This includes notification or requests for repairs. Tenant is required to notify Owner in writing of Intention to Vacate or Intention to Re-new at least 60 days before the expiration of this lease. Tenant agrees to follow instructions provided in the Intention to Vacate form and the Intention to Re-new form.
Tenant agrees to immediately notify Owner or Agent in writing by certified mail of any dangerous or hazardous conditions existing on the premises.

**28. HOLDING OVER**   Any holding over after expiration hereof, with the consent of the Owner, shall be construed as a month to month tenancy in accordance with the terms hereof, as applicable. The terms and conditions of this lease will continue to apply.

**29. TIME**   Time is of the essence of this agreement.

**30. INSURANCE**   Tenant is responsible for liability/fire insurance coverage on premises. Tenant agrees to obtain and maintain a mandatory "Renter's Insurance" policy and to provide Owner or agent with a copy of policy within seven (7) days of lease execution. In the event Tenant fails to provide Owner with a copy of a valid "Renter's Insurance" policy as agreed, Owner may issue a Notice of Lease Violation to the tenant and may obtain insurance on the tenant's behalf at the tenant's expense. In the event a written Notice of Lease Violation is issued to the tenant, the tenant shall correct the violation within five (5) days. If tenant fails to correct the item(s) in violation, he will be responsible to pay a Lease Violation Penalty Fee no less than $100.00 payable as added rent.

**31. SUCCESSORS**   This lease is binding on all parties who lawfully succeed to the rights or take the place of the Owner or Tenant.

**32. TENANCY & SERVICE OF PROCESS**   Every tenant who signs this agreement agrees to be fully responsible jointly and severally for all items agreed herein, and furthermore agrees to be the agent of the other tenants and occupants of the premises and is both authorized and required to accept on behalf of the other tenants and occupants, service of summons and other notices relative to the tenancy.

**33. TELEPHONE**   Tenant agrees to maintain a telephone in the dwelling during the term of this lease, and to furnish Owner or agent with the telephone number within five (5) days from taking occupancy. Tenant shall be responsible for any telephone company installation charges, if applicable. Cell Phone Number is sufficient.

**34. FENCES**   (N/A doesn't apply to this property named in this agreement) Fences that currently exist are not included in the rental, and are a separate lease space from the house. In the event that the Back Fenced Lot contains a horse that area would be strictly off limits.

**35. LOCKOUTS**   Should Tenants lock themselves out of their dwelling and be unable to gain access through their own resources, they may call a professional locksmith or the Owner to let them in, and will be responsible for damages if any. Tenant shall be responsible for the cost of the locksmith and also to provide the Owner with new keys if the locks are changed. If Owner is called upon to let Tenants in, there will be a $50. charge.

**36. CLEANING FEE**   In the event the premises are returned in condition poor enough to require a cleaning service, or in the case of an authorized or unauthorized pet residing at the premises during the term of this lease, a cleaning fee of $575.00 is to be paid by Tenant. This fee represents the usual cost of preparation for re-occupancy. Owner will waive this fee until premises are returned and if returned in as good condition as received at commencement of this lease.

**37. BANKRUPTCY**   If (1) Tenant assigns property for the benefit of creditors, (2) Tenant files a voluntary petition or an involuntary petition is filed against Tenant under any bankruptcy or insolvency law, or (3) a trustee or receiver of Tenant or Tenant's property is appointed, Owner may give Tenant 30 days written notice of the cancellation of the term of this lease. If any of the above is not fully dismissed within the 30 days, the term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset.

**38. WITHHOLDING RENT**   Under no circumstances may any rent be withheld in full or in part, regardless of any expenses incurred by Tenant, regardless of the financial status of the premises, or the legality of the premises. Rent must be paid to Owner or Owner's agent only. Non-payment or payment to any other party is a violation of this Lease Agreement and cause for immediate eviction.

**39. SMOKE DETECTOR(S), FIRE EXTINGUISHER**   Tenant(s) acknowledge that the dwelling is equipped with smoke detector(s) and fire extinguisher(s). Tenant(s) agree to test the smoke detector(s) on a regular basis (2-3 times per  month), and to report any problem with them immediately to owner in writing. Tenant agrees to replace the battery for the smoke detector as necessary with a new alkaline battery.

**40. VEHICLES**   Tenants agree to keep no more than 5 vehicles at the premises. Vehicles without valid parking permit issued by the Owner are prohibited on the premises. These vehicles must be both operable and currently registered. Tenants agree to park vehicles in designated areas only and keep area free of oil drippings. Parking on the lawn of the premises constitutes a breach of this lease. Tenants agree not to park boats, recreational vehicles , trailers, campers, or any type of truck on the premises without owner's written permission. Tenants agree not to repair their vehicles on the premises if such repairs will take longer than a single day, unless vehicle is kept in an enclosed garage. Tenant is responsible for damages to the premises caused by Tenants' vehicles or those of invitees or guests. Designated parking for this rental is: 2 Driveway Spaces  # Parking permits required  N/A. A violation of this provision will result in vehicle(s) being towed away at Tenant's expense, and may be construed as a breach of the lease agreement.          PG 5 of 7

SeaWater 00396

**41. FIREPLACE**  If premises have a fireplace, Tenant agrees to exercise safety measures when it is in use. Tenants agree to assume responsibility for keeping the chimney clear of any buildup or obstructions during their tenancy.

**42. NO SMOKING**  Tenant acknowledges that smoking is prohibited in this rental.

**43. WATERBEDS**  Tenant shall not have a water-bed on the premises without the written consent of the Owner. This will be an amended section of the contract.

**44. ILLEGALITY**  If any part of this lease is not legal according to local laws, the rest of the lease will be unaffected. Illegal activity of Tenant(s), invitees or guests on premises constitutes a breach of this lease.

**45. LEAD PAINT DISCLOSURE**  Lead Warning Statement: Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling.

**46. RADON GAS DISCLOSURE**  In many states, **State Law** requires the landlord to make the following disclosure: Radon Gas is a naturally occurring radioactive gas that, when it has accumulated in a house or building in significant quantities, may present health risks to persons exposed to it over time.

**47. OPTION TO RE-NEW LEASE**  Tenant has the option, providing the terms and conditions of this lease have been complied with and satisfied, to re-new this agreement for a period of **12 months**, at an annual increase of **$0.00**, subject to Owner's approval.

**48. BREACH OF LEASE**  If rent is over seven (7) days late, Owner will construe non-payment as a breach of this lease, constituting Tenant's 30 days Notice to Vacate. Also, in the event agreements made in this lease are broken by tenant, the security deposit will be forfeit at Owner's option. Owner may continue the lease or terminate any or all of the tenant's rights herein. In the event a written notice advising the tenant of a default or Notice of Lease Violation is issued to the tenant, the tenant shall correct the violation within five (5) days. If tenant fails to correct the item(s) in violation, he will be responsible to pay a Lease Violation Penalty Fee of $500.00 per violation per month, or $25.00 per violation per day whichever is less payable as added rent.

**49. FORMS AND NOTICES**  Tenant acknowledges receiving the following forms, understands and agrees to follow instructions therein:

**50. ENTIRE AGREEMENT** The foregoing constitutes the entire agreement between the parties and may be modified only by an official change of terms notice issued by the owner/agent in writing, or a writing signed by both parties.

**51. ACKNOWLEDGMENT**  Tenants hereby acknowledge that they have read, understand and agree to all parts of this document, and have received a copy.

____ Notice of Intention to Re-new   ____ Lead Paint Disclosure   ____ Move-In  Inventory & Condition Form   ___ Smoke Detector

**\*\*Mail Rent to Fortune Properties, 440 Store Road, Harleysville, PA 19438\*\***

ONLY UNTIL: The tenant completes the direct deposit setup with their Banking Institution. The Owner will provide tenant with the direct deposit form to complete and set up with their bank account.

PLEASE SEE THE FOLLOWING PAGE FOR THE SIGNATURES FOR THIS AGREEMENT

PG 6 of 7

SeaWater 00397

# WELLS FARGO

## Manage Payee

Back to Bill Pay

### 2049 TROPICAL ISLES
XXXX3840

 Display payee on Bill Pay Home ?

| **Payee Details** | Reminders & Alerts | Recurring Payments |
|---|---|---|

Payee name
**Fortune Properties LLC**

Payee nickname
**2049 Tropical Isles**

Payee address
**4095 Commerce Dr**

City
**Green Lane**

State
**PA**

ZIP code
**18054**

Phone number
█████████████

Account number
█████████

Name on bill
**MICHAEL SPANOS**

Default payment account
**BUSINESS CHECKING** ██████
This account will be used for future payments to this payee.

Payment category
**None**

Delete Payee

Edit

SeaWater 00398

INFORMATION THAT THEY NEED TO SET UP A DIRECT DEPOSIT OF YOUR
MONTLY RENT PAYMENT- INTO THE LEASORS BANK

# DIRECT DEPOSIT AUTHORIZATION FORM

**There are two types of Direct Deposit enrollment available: 1. Federal Government Benefit Compensation, and 2. Payroll Compensation**

---

**1. FEDERAL GOVERNMENT BENEFIT COMPENSATION:**

To sign up for direct deposit of your federal benefit payments such as Social Security, SSI or VA Compensation and Pension Payment
- Go to the U.S. Department of the Treasury website: **www.godirect.org**, or
- Enroll by phone by calling the U. S. Department of the Treasury toll free at: **1-800-333-1795**

You'll need your:
- Social Security Number or claim number
- 12-digit federal benefit check number
- Amount of most recent federal benefit check
- TD Bank's routing transit number
- TD Bank Account number and type of account – checking or savings

---

**2. PAYROLL COMPENSATION:**

Complete and sign this direct deposit form and give it to your employer's payroll representative – it's that easy!

| EMPLOYEE NAME AND ADDRESS: | FORTUNE PROPERTIES LLC<br>4095 COMMERCE DR<br>GREEN LANE, PA 18054 |
|---|---|
| EMPLOYEE PHONE NUMBER: | ▮▮▮▮▮ |
| EMPLOYEE ID:<br>(if applicable) | |
| EMPLOYEE SOCIAL SECURITY NUMBER: | ▮▮▮▮▮ |

Please begin directly depositing my payroll and/or dividend or annuity check into my account at TD Bank.

DIRECT DEPOSIT THE FOLLOWING:
☒ Total net check amount
☐ The set amount of $_____ of my net check each period

| BANK NAME: | TD Bank, N.A. |
|---|---|
| ADDRESS: | 32 Chestnut St.<br>PO Box 1377<br>Lewiston, ME 04243-1377 |
| TD BANK ROUTING NUMBER: | ▮▮▮▮▮ |
| TD BANK ACCOUNT NUMBER: | ▮▮▮▮▮ |
| TYPE OF ACCOUNT: | Checking |

| | 04/06/2021 |
|---|---|
| Employee Signature | Date |



## TD Bank

**America's Most Convenient Bank®**

---

SeaWater 00399

EXHIBIT C

# Residential Lease Agreement

## 212 Briny Ave A4

## Pompano Beach, Florida 33062

Zillow drafted this lease to comply with the legal requirements of the State of **Florida**. This lease may not include requirements specific to your city or county. If you are reading this lease outside of the Zillow platform, please review the document for any changes. Zillow disclaims all liability resulting from any changes, including any changes that violate applicable law.

SeaWater 00289

# Table of Contents

Basic Terms & Additional Terms

Parking Addendum

Rules Addendum

Lead Based Paint Hazard Disclosure

Protect Your Family from Lead in Your Home Pamphlet

Radon Hazard Disclosure

Security Deposit Addendum



SeaWater 00290

This Residential Lease (**Lease**) is entered into on the date of the last signature below (the Effective Date) between **Mendy Ringer** (**Landlord**) and

**Michael Spanos** and **Melinda Michaels** (together and separately, **Tenant**)

for **212 Briny Ave A4 Pompano Beach, FL 33062 (Property).**

Landlord hereby leases the Property to Tenant, and Tenant leases the Property from Landlord, subject to the terms and conditions of this Lease:

# 1. Basic Terms

## 1.1. AMOUNT DUE UPFRONT

The following items will be paid by Tenant to Landlord under this Lease:

### 1.1.1. REFUNDABLE DEPOSIT

$**5,000.00** Security Deposit due at Start Date (Section 1.6 below)

### 1.1.2. RENT FOR FIRST MONTH

$**0.00** Prorated Monthly Rent for partial first month of the Term due at Start Date (See Section 1.4 below)

$**5,000.00** Monthly Rent for full first month of the Term due at Start Date (See Section 1.4 below)

### 1.1.3. RENT FOR LAST MONTH

$**5,000.00** Monthly Rent for full last month of the Term due at Start Date (**Last Month's Rent**)

### 1.1.4. TOTAL DUE UPFRONT

$**0.00** due at signing.

$**15,000.00** due at Start Date.

## 1.2. PROPERTY

| Property Location |
|---|
| **212 Briny Ave A4 Pompano Beach, FL 33062** |

The Property is a unit in a multifamily residence (for example, an apartment, condominium, in-law suite, duplex, or multiplex) (**Building**) located at **212 Briny Ave A$ Pompano Beach,FL 33062**.

The Property includes all appliances, fixtures, and equipment installed on the Property as of the Start Date (as defined below), including the following:

**Refrigerator; Oven/Range; Microwave; Dishwasher; Clothes washer; Clothes dryer**.

## 1.3. TERM

Fixed Term. The term of this Lease (**Term**) will begin on **April 1, 2022** (**Start Date**) and end on **March 31, 2023** (**Expiration Date**).

## 1.4. RENT



### 1.4.1. BASE RENT; MONTHLY RENT

Tenant is responsible for paying monthly rent for the use and occupancy of the Property (**Base Rent**) and all other fixed rent and fixed charges described in this Lease (collectively, **Monthly Rent**) on the **1st** day of each month (**Monthly Rent Due Date**). The Monthly Rent is $**5,325.00**. First month's Monthly Rent is due on the Start Date.

### 1.4.2. ADDITIONAL RENT

Any amount Tenant may be required to pay Landlord or any other party under this Lease in addition to Monthly Rent will be additional rent (**Additional Rent**). The Monthly Rent and any Additional Rent are collectively referred to as "**Rent**". Additional Rent includes, without limitation:

- Any applicable charges for utilities and/or other services to the Property, in amounts that vary by month (**Variable Charges**), payable to Landlord within **15** days of billing.
- The cost of utilities required to be arranged for and paid by Tenant directly to the service provider.
- The Insufficient Funds Fee is variable.
- The Late Fee is $**150.00**.

### 1.4.3. MANNER OF PAYMENT

All Rent hereunder must be paid by one of the following:

Check or money order made payable to the following recipient and delivered to the following address: **Ringer Real Estate, LLC**

**8195 Keller Rd.**
**Cincinnati, OH 45243**.

Electronically by online payment service: **Venmo; Zelle**. Landlord will provide Tenant with Landlord's account information.

ACH/direct deposit. Landlord will provide ACH/direct deposit payment information to Tenant directly.

SeaWater 00292

### 1.4.4. RENT SUMMARY

Tenant is responsible for paying the Rent described in this Lease. The chart below summarizes the Monthly Rent and Variable Charges - additional charges stated as Additional Rent may apply:

| | Monthly Rent |
|---|---|
| **Base Rent** | **$5,000.00** |
| **Parking Rent** Section 1.8 | N/A |
| **Storage Rent** Section 1.9 | N/A |
| **Pet Rent** Section 1.10 | N/A |
| **Electricity** Section 1.5.1 | $250.00 |
| **Natural Gas** | N/A |
| **Heating Oil** | N/A |
| **Heat** Section 1.5.2 | N/A |
| **Water/Sewer** Section 1.5.3 | Included in Base rent |
| **Trash Removal** Section 1.5.4 | Included in Base rent |
| **Landscaping** Section 1.5.6 | Included in Base rent |
| **Telephone** | N/A |
| **Cable TV** Section 1.5.7 | Tenant pays |
| **Internet** Section 1.5.8 | $75.00 |
| **Homeowner/Condominium Assessment** Section 1.5.9 | Included in Base rent |
| **TOTAL** | **$5,325.00** |

SeaWater 00293

## 1.5. UTILITIES AND SERVICES

Landlord and Tenant agree that utilities and other services will be provided and paid for as outlined below:

### 1.5.1. ELECTRICITY

Landlord will provide electrical service for the Property, but Tenant will pay Landlord a monthly charge (**Electrical Charge**) to reimburse Landlord for the cost of electrical service. The Electrical Charge is a fixed monthly charge of $**250.00**. The Electrical Charge is based upon Landlord's reasonable and good faith estimate of the amount that will reimburse Landlord for the cost of electrical service to the Property.

### 1.5.2. HEAT

Heat is not provided separately from other utilities. The cost of heat is included in the utility costs (natural gas, electricity, or heating oil, as provided) necessary to run the heating system, and will be paid by the party responsible for the applicable utility.

### 1.5.3. WATER/SEWER

Water/Sewer is the responsibility of Landlord and the cost is included in Base Rent.

### 1.5.4. TRASH REMOVAL

Regular trash removal services will be provided by Landlord and the cost is included in Base Rent. Receptacle(s) for collecting trash are provided by Landlord. Tenant is responsible for depositing trash in the receptacles provided.

### 1.5.5. SNOW REMOVAL

Snow removal is not normally required for the Property and will be reasonably handled by the parties in the event snowfall occurs.

### 1.5.6. LANDSCAPING

Landlord will provide the following landscaping services: **Lawn and landscape maintenance**. The cost of landscaping services is included in Base Rent.

### 1.5.7. CABLE TELEVISION

Tenant will arrange and pay for the cost of cable or other premium television services.

### 1.5.8. INTERNET

Landlord will provide for internet service but Tenant will pay to Landlord a monthly charge (**Internet Charge**) to reimburse Landlord for the cost of internet service. The Internet Charge is a fixed monthly charge of $**75.00**. The Internet Charge is based upon Landlord's reasonable and good faith estimate of the amount that will reimburse Landlord for the cost of providing internet service to the Property.

### 1.5.9. HOMEOWNER OR CONDOMINIUM ASSOCIATION

The Property is located within a homeowner association or condominium association. Any assessments imposed by the association related to the Property are included in the Base Rent.

## 1.6. SECURITY DEPOSIT

Tenant is required to pay a security deposit to Landlord on the Start Date. The security deposit is $**5,000.00** (**Security Deposit**). Section 2.4 of this Lease contains terms relating to the Security Deposit.



SeaWater 00294

## 1.7. TENANT INSURANCE

Tenant is not required to maintain renter's insurance during the Term.

## 1.8. PARKING

Tenant may park in areas designated by Landlord on Building grounds (**Parking Area**) and the cost of parking is included in the Base Rent. An addendum (**Parking Addendum**) is attached to this Lease which sets forth the specific terms of, and limitations on, Tenant's parking rights. Except as expressly permitted in the Parking Addendum, neither Tenant nor any other Occupants is allowed to park, or permit any of their guests or invitees to park, on the Building grounds.

## 1.9. STORAGE SPACE

No storage room/storage locker (including any common areas) or other area exterior to the Property is provided for in this Lease.

## 1.10. PETS

Except as required by law, no pets or animals of any kind are permitted in the Property or, if applicable, common areas of the Building or on Building grounds. Landlord will, however, review any requests from Occupants with disability-related needs for reasonable accommodations for service and assistance animals at the Property as required by applicable law.

## 1.11. ADDITIONAL RULES

Tenant's use and occupancy of the Property is subject to all policies, rules, regulations, covenants, restrictions and other matters of record, attached to this Lease or provided to Tenant by Landlord prior to the execution of this Lease.

The Declaration of Condominium.

The rules and regulations of the homeowners association or condominium applicable to the Property.

## 1.12. SMOKING POLICY

Smoking means: (i) inhaling, exhaling, breathing, carrying, or possessing any lighted cigar, cigarette, pipe, or any other lighted or heated tobacco or plant (including marijuana) product intended for inhalation including hookahs or any similar product, whether natural or synthetic, in any manner or in any form; or (ii) use of an electronic smoking device which creates an aerosol or vapor, in any manner or in any form.

Smoking is not allowed in the Property and, if applicable, all common areas of the Building and on Building grounds.

Landlord may charge Tenant a fee of up to $250 for a second and subsequent violations if Tenant smokes in a clearly designated nonsmoking Property or area of the Building or Building grounds.

Tenant will not engage in or permit the sale, distribution, dispensing, storage, processing, cultivation, or use of marijuana or products containing marijuana or THC.

SeaWater 00295

# 2. Additional Terms

## 2.1. PROPERTY CONDITION

Tenant has examined the Property prior to signing this Lease and, as of the date of this Lease, is satisfied with its condition and appearance (**Existing Condition**). Landlord will deliver possession of the Property to Tenant on the Start Date in the same or better condition as the Existing Condition, except for ordinary wear and tear.

## 2.2. POSSESSION

In the event Landlord cannot deliver possession of the Property to Tenant by the Start Date, through no fault of Landlord, this Lease will continue in full force but Tenant, as Tenant's sole remedy, will not be obligated to pay the Monthly Rent (prorated based upon a 30-day month) for the period that Tenant is unable to take possession. If Landlord fails to deliver possession of the Property by the 30th day following the Start Date, either Landlord or Tenant may terminate this Lease at any point before actual possession of the Property is delivered to Tenant, in which event all amounts paid to Landlord by Tenant will be returned and Landlord will be released from all obligations and liability under this Lease.

## 2.3. RENT

### 2.3.1. PAYMENT

Tenant will pay the Monthly Rent for the first month of the Lease Term as described in the Basic Terms; provided that if the Start Date is not the Monthly Rent Due Date or the Rent is not to be paid on the first Monthly Rent Due Date after the Start Date, then the amount will be prorated based upon the number of days from the Start Date to the next Monthly Rent Due Date. After the first month, Tenant will pay the Monthly Rent to Landlord, (or Landlord's Managing Agent, if specified above), in advance, on the Monthly Rent Due Date of each month during the Term according to the payment details specified in the Basic Terms. Variable Charges, if any, will be payable according to the timeframe specified in the Basic Terms. Rent will be payable in the method specified in the Basic Terms.

### 2.3.2. LATE PAYMENT

If Tenant fails to pay the Monthly Rent or any other Rent in full by the end of the day **5** days after it is due, a fee (**Late Fee**) in the amount specified in the Basic Terms to this Lease will be immediately assessed. The Late Fee is due by the end of the day after it is assessed. Acceptance of late payment does not waive Landlord's right to require payment of Monthly Rent in full on the date it is due.

### 2.3.3. RETURNED CHECKS / DISHONORED PAYMENTS

If any payment of any Rent or other charges under this Lease is returned for insufficient funds or otherwise fails, Landlord will have the right to require the dishonored payment be replaced by a cashier's check, certified check, or money order and require Tenant to pay any fee associated with the failed payment. Should more than two of Tenant's payments to Landlord during the Term be returned for insufficient funds, Landlord may require that all future payments of Rent and other obligations be paid by cashier's check, certified check, or money order.

### 2.3.4. LAST MONTH'S RENT

Tenant is required to pay Last Month's Rent at the Start Date of this Lease and Landlord will apply that payment to the Monthly Rent for the last month of the Term when due or Tenant's last month residing in the Property. The amount of Last Month's Rent paid by Tenant will not be used for any other purpose, including as a Security Deposit.

SeaWater 00296

## 2.4. SECURITY DEPOSIT

### 2.4.1. USE OF SECURITY DEPOSIT / RESERVED FUNDS

Landlord will hold the Security Deposit in a segregated account if required by applicable law. Interest on the Security Deposit will be retained by Landlord, unless required to be paid to Tenant under applicable law. Subject to any requirements of and any limitations under applicable law, Landlord may use the Security Deposit to: (i) remedy Tenant Defaults (as defined in Section 2.9.1 below) under this Lease, including past due Rent; (ii) pay for costs incurred by Landlord to repair damages to the Property caused by Occupants beyond ordinary wear and tear; and/or (iii) pay cleaning costs incurred by Landlord to return the Property to the same level of cleanliness it was in at the Start Date (collectively, **Deposit Claims**). The Security Deposit will not relieve Tenant of any obligation to pay any Rent due under this Lease prior to termination. If a Pet Damage Deposit is required, it will be considered a Security Deposit and subject to the terms of this Section.

### 2.4.2. RETURN OF SECURITY DEPOSIT

The Security Deposit, less any Deposit Claims, will be returned to Tenant within 15 days (or shorter period as required by local ordinance) after Tenant vacates the Property upon expiration or earlier termination of this Lease. The returned portion of the deposit will be sent as a single check payable to Tenant(s) listed in the Basic Terms, or as otherwise agreed to by Landlord and Tenant. Any Deposit Claims will be described in an itemized statement provided with the returned portion of the deposit. Tenant will provide a forwarding address to Landlord where the Security Deposit, less Deposit Claims, and the itemized statement will be mailed. In the event Tenant fails to provide a forwarding address, the Security Deposit and statement will be sent to Tenant's last known address, which may be the Property, and Landlord will not be liable for Tenant's delayed receipt of, or failure to receive, the Security Deposit and itemized statement.

## 2.5. TENANT'S OBLIGATIONS

### 2.5.1. RESIDENCE USE ONLY

Tenant will use and occupy the Property for residential purposes only. Tenant will not use or permit the use of the Property for any non-residential, illegal, or otherwise inappropriate purpose, including for any commercial purpose.

### 2.5.2. PERMITTED OCCUPANTS

Except as prohibited by applicable law, the Property will not be occupied by anyone other than the following: (i) Tenants; (ii) Occupants identified in the Basic Terms; and (iii) children under the age of majority of any Tenant (and Tenant will notify Landlord promptly after any such children take occupancy).

### 2.5.3. NO DISTURBANCE OR NUISANCE PERMITTED

Tenant will not permit any Occupants or any guests to: (i) make any unreasonably loud or otherwise unreasonable use of the Property; (ii) allow any condition on the Property or, if applicable, common areas of the Building that poses threat of injury to persons or property; or (iii) otherwise interfere with the rights, comfort, safety, or enjoyment of the other tenants or occupants of the Building (if applicable) or neighboring properties.

### 2.5.4. UTILITIES

Prior to the Start Date, Tenant will open accounts (including making any required deposits for service) in Tenant's name for all utilities specified as Tenant's responsibility under the Basic Terms. Tenant will maintain and/or pay for all utilities without interruption during the Term. Tenant will provide Landlord with evidence that any applicable utilities, assessments, or charges have been paid by Tenant, upon request.

### 2.5.5. MAINTENANCE



SeaWater 00297

Tenant will: (i) keep and maintain the Property in a clean, safe, and sanitary condition; (ii) regularly dispose of all garbage and other waste in a clean and safe manner, not overload any trash receptacles, and separate and dispose of recyclable and compostable materials in any provided separate receptacles; (iii) use all appliances, fixtures, and equipment located in the Property in a safe and reasonable manner in keeping with their intended function and, if provided to Tenant, the applicable operating instructions; (iv) not obstruct access to doors and windows; and (v) maintain the Property in the same condition as it was delivered to Tenant, except for ordinary wear and tear. If the Property is equipped with smoke detectors or carbon monoxide detectors, Tenant will regularly (not less often than once per month) test the detectors and, if the devices are battery operated, Tenant will replace batteries every six months, or more often as needed. Tenant will pay to repair any damage to the Property caused by Occupants or any guest of Occupants, except for ordinary wear and tear.

### 2.5.6. NO TRANSFER

Tenant will not sublease or assign all or any portion of the Property without the prior written consent of Landlord, in Landlord's sole discretion. Any attempted sublease or assignment of the Property or this Lease without the prior written consent of Landlord will be void and cause for termination by Landlord. No sublease of the Property will release Tenant from any obligation under this Lease, and Tenant will be liable for any violations of this Lease caused by a subtenant. Tenant will not rent the Property, or any portion of the Property, including any rental program such as "Airbnb," "VRBO," or similar program, and Tenant's entry into any short-term rental agreement will be cause for termination of this Lease by Landlord.

### 2.5.7. NO ALTERATIONS

Tenant will not perform any alterations or improvements to the Property without the prior written consent of Landlord, in Landlord's sole discretion. Alterations and improvements include adding, changing, or removing appliances, fixtures, shelving, wallpaper, or wall paint. In addition, except as required by applicable law, Tenant is not allowed to arrange, and will not permit, the installation of new or additional wiring, cabling, or equipment without Landlord's prior written consent, in Landlord's sole discretion. If Tenant violates this provision, Tenant will return the property to its original condition at Tenant's sole cost and expense. If Landlord approves of any alterations, Tenant understands that any applicable alterations will remain as part of the Property at the end of the Term. Tenant will not subject the Property to any liens in connection with making any alteration or improvement and will indemnify Landlord from all costs and expenses related to alterations, improvements, or liens.

### 2.5.8. JOINT LIABILITY

All individuals executing this Lease as Tenants will be jointly and severally liable for the performance of all agreements, covenants, and obligations of a Tenant contained in this Lease.

## 2.6. LANDLORD'S OBLIGATIONS

### 2.6.1. SERVICES AND UTILITIES

Landlord will only provide the services and utilities to the Property as specified in the Basic Terms in the amounts specified in the Basic Terms as currently provided to the Property and as otherwise required under applicable law. Tenant waives all liability of Landlord for any interruption or insufficiency of any service or utility resulting from causes beyond the reasonable control of Landlord.

### 2.6.2. MAINTENANCE AND REPAIRS

Subject to Tenant's duties under Section 2.5 above, Landlord will maintain the Building (including its structural elements, roof, and systems) in good order and repair and, if applicable, will maintain the Building common areas, in a clean, safe, and sanitary condition. Landlord will be responsible for, and will pay for, repairing (and restoring to working condition) the appliances, fixtures, or equipment located in the Property, except if any repairs are necessary as a result of improper use by Occupants, or the guest of any Occupant. Tenant will notify Landlord promptly in writing upon becoming aware of any



SeaWater 00298

condition within the Property or, if applicable, in the Building, that requires repair or maintenance by Landlord. Landlord will undertake any required repairs reasonably promptly, based on the condition, following receipt of notice. Delay by Landlord in performing or completing any repair will not permit Tenant to complete the repair or incur related expenses or to terminate this Lease, except as permitted by applicable law. In the event some or all of Landlord's maintenance obligations are provided by a condominium or other owners association, then Landlord's obligation hereunder will be solely to enforce the obligation of the association or authority to perform such maintenance (in lieu of Landlord being obligated to perform such maintenance directly).

### 2.6.3. QUIET ENJOYMENT

Landlord covenants and agrees that, provided Tenant is not in default under this Lease, and provided that Tenant keeps, observes, and performs all obligations contained in this Lease, Tenant will have quiet possession of the Property and such possession will not be disturbed by or interfered with by Landlord. Landlord will under no circumstances be held responsible for restriction or disruption of use, enjoyment, or access to the Property from public streets caused by construction work or other actions taken by governmental authorities or other parties, or any entry or work by Landlord in or around the Property authorized by this Lease, or any other cause not entirely within Landlord's direct control, and such circumstances will not constitute a constructive eviction of Tenant nor give rise to any right of Tenant against Landlord.

## 2.7. LANDLORD'S ACCESS

Landlord, its agents and contractors, will have the right of reasonable access to the Property during normal business hours to perform its obligations of maintenance and repair of the Property or, if applicable, any other portion of the Building, as long as Tenant is provided (in writing, by telephone, or other means designed in good faith to provide notice) 24 hours' notice (or longer period if required by applicable law) prior to entry, except that in the case of an emergency or, if applicable, if repairs or maintenance elsewhere in the Building unexpectedly require access, Landlord may immediately access the Property and will give Tenant notice of the entry within two days after. Landlord and its agents will have the right to access the Property during normal business hours for the purpose of showing the Property to prospective tenants and purchasers. Landlord will provide 24 hours (or longer period required by applicable law) prior notice given to Tenant (in writing, by telephone, or by other means designed in good faith to provide notice) before any showing. Tenant will not prevent Landlord from accessing the Property in order to conduct showings for which Tenant was provided notice.

## 2.8. SURRENDER

### 2.8.1. END OF TERM

Tenant will surrender possession of the Property and return the keys to Landlord immediately upon the Expiration Date or earlier termination of this Lease. At the time of surrender, the Property will be in the same condition as the Start Date, except for ordinary wear and tear, and otherwise in clean condition and free of all personal property of the Occupants. To the extent permitted by applicable law, any personal property left on the Property after Tenant vacates the Property will be deemed abandoned by the Occupants and may be disposed of by Landlord at Tenant's cost (and may be deducted from Tenant's Security Deposit by Landlord). Neither Landlord nor Tenant is obligated (and neither has any right) to unilaterally renew or extend the Term of this Lease. If all Occupants do not vacate the Property by the Expiration Date or earlier termination of this Lease, Landlord may commence legal proceedings allowed by applicable law to remove and evict Tenant from the Property and will be entitled to recover from Tenant double the Monthly Rent prorated based on a 30-day month (or the maximum rent allowed for holdover under applicable law, if less) for the period until Landlord regains possession of the Property. Alternatively, if Landlord accepts Tenant's payment of the Monthly Rent otherwise due under this Lease for the month after the end of the Term, then this Lease will be deemed to continue on a month-to-month basis at the applicable Monthly Rent as identified above and otherwise on the same terms and conditions as contained in this Lease. Either Landlord or Tenant may terminate the month-to-month tenancy as of the last day of any calendar month by giving one

calendar month's written notice of termination to the other party.

## 2.9. DEFAULT

### 2.9.1. DEFAULT BY TENANT

Tenant will be in default (Default) if: (a) Tenant fails to pay any Monthly Rent by **10** days after Monthly Rent is due and does not cure the failure within **10** days of receiving written notice from Landlord; (b) Tenant fails to pay any Additional Rent by **10** days after the Additional Rent is due and does not cure the failure within **10** days of receiving written notice from Landlord or; (c) Tenant fails to comply with any other obligation or restriction in this Lease and does not cure the failure within **10** days of receiving written notice from Landlord. If Tenant Defaults under this Lease, Landlord may exercise all rights and remedies available under applicable law, including the right to: (i) terminate this Lease; (ii) regain possession of the Property through an eviction or similar process; (iii) recover from Tenant all unpaid Rent, including unpaid Monthly Rent, Additional Rent, Late Fees and, if applicable, holdover Rent for the period prior to Tenant's delivery of possession of the Property to Landlord; (iv) recover all Rent payable under this Lease for the period from the date of termination for Tenant Default through the stated Expiration Date, less the amount Landlord is able to collect from any replacement tenants for that period; and (v) recover all reasonable costs and expenses incurred by Landlord in repairing any damage to the Property, caused by the improper use by any Occupant or any guests of an Occupant, less any amounts obtained from the Security Deposit. Additionally, to the extent permitted under applicable law, Landlord may recover from Tenant Landlord's court costs and reasonable attorneys' fees and expenses incurred in connection with any legal proceedings against Tenant. To the extent required by applicable law, Landlord will use reasonable efforts to mitigate any damages resulting from Tenant Default.

## 2.10. NOTICES

Any notice of termination of this Lease, notice of Default by Tenant under this Lease, notice of eviction by Landlord, or any other notice required to be given in writing under applicable law (**Material Notices**) will be in writing and sent to Tenant and Landlord at the applicable address set forth in Section 2.18 below. Except for Material Notices, all other written notices under this Lease may be delivered to the other party at the e-mail address or physical address of the party specified in Section 2.18, or by other electronic means agreed to by the parties. Either party can update its email or physical address by sending written notice to the other party.

## 2.11. CASUALTY DAMAGE

If the Property is rendered uninhabitable by a fire, storm, or other casualty, then this Lease will terminate as of the date of the casualty and Tenant will pay to Landlord only the Rent for the period prior to the casualty and Landlord will return to Tenant any Rent paid for the period after the casualty. However, if a portion of the Property remains habitable, then this Lease will continue but Monthly Rent will be adjusted proportionally based on the proportion of the Property still habitable by Tenant, until the damaged portion of the Property has been restored to a habitable condition. Nonessential elements (including decks and porches) of the Property will not be counted in determining the habitable portions of the Property. If the Property is part of a larger Building and any other part of that Building is materially damaged by casualty, Landlord will have the right to terminate this Lease upon 30 days' written notice to Tenant. If the Property, or another portion of the Building of which the Property is a part, is damaged or destroyed by fire or other casualty resulting from any negligent act by any Occupant or the guest of an Occupant, Tenant will be liable to Landlord for the costs of repairing the damage.

## 2.12. GOVERNMENT TAKING

If all or a substantial part of the Property is taken by right of eminent domain, or by purchase in lieu of condemnation, and the taking would render the Property uninhabitable, this Lease will terminate, and the Rent will cease as of the date that the physical taking of the Property occurs. If part of the Property is taken the Tenant may choose to terminate the Lease as

SeaWater 00300

provided in the preceding sentence, or remain in the Property for the duration of the Term but the Monthly Rent will be adjusted proportionally based on the portion of the Property still habitable by Tenant, and Landlord will restore the Property to a condition suitable for Tenant's use, as near to the condition immediately prior to the taking as is reasonable under the circumstances.

## 2.13. TENANT'S PROPERTY

Tenant acknowledges that Landlord's insurance does not cover loss or damage to any of Tenant's personal property located on the Property and that Landlord will not be liable for any damage to Tenant's personal property. If required by the Basic Terms, Tenant will obtain and maintain (during the **Term**) renter's insurance of at least the level stated in the Basic Terms. Upon Landlord's request, Tenant will provide Landlord a certificate of insurance as evidence of the policy. Even if no policy of renter's insurance is required, Landlord recommends that Tenant obtain renter's insurance.

## 2.14. SUBORDINATION / ESTOPPEL

This Lease and Tenant's rights under this Lease are subject and subordinate to any current and future mortgages/deeds of trust (and any related amendments) on the Property (or the land where the Property resides). Upon Landlord's written request, Tenant will sign any documents required by any applicable lender or purchaser to affirm the terms and status of this Lease.

## 2.15. GENERAL

This Lease will be governed by the laws of the State of **Florida**, and any additional laws of the city or county in which the Property is located. This Lease will be binding on and inure to the benefit of all permitted heirs, legal representatives, and assigns of the parties. This Lease, along with the attached Addenda and legal disclosures, contains the entire agreement between Landlord and Tenant and may not be changed except in writing signed by all parties. If any provision of this Lease is found to be invalid or unenforceable, all other provisions contained in this Lease will remain binding and enforceable to the maximum extent permitted by applicable law.

## 2.16. DISCLOSURES / ADDENDA

Tenant acknowledges that the legal disclosures and addenda (**Addenda**) attached to this Lease are part of the legal agreement between the parties. Tenant will comply with all applicable rules and regulations set out in the attached addenda. The terms of this Lease shall control in the event of any conflict between the terms of any Addenda and the terms of the Lease.

## 2.17. EXECUTION

All individuals indicated in the Basic Terms as comprising Tenant will sign this Lease and related attached Addenda where indicated. Each of Landlord and Tenant consents to the other party's execution of this Lease by electronic signature. Delivery of this Lease containing the electronic signature of a party or otherwise by facsimile through electronic means or as a digital copy will have the same full force and effect as a manually executed original version.

SeaWater 00301

## 2.18. CONTACT INFORMATION

### 2.18.1. TENANT

Tenant's address is required for notice prior to the Start Date. Notices after the Start Date will be made to the Property.

| Tenant Name | Address for Notice Prior to Start Date | Phone | Email |
|---|---|---|---|
| **Michael Spanos** | **3233 SW 2nd Ave STE 200 Fort Lauderdale, FL 33315** | **954-800-8800** | **mike85233@gmail.com** |
| **Melinda Michaels** | **37 Hendricks Isle Fort Lauderdale, FL 33301** | **913-710-0840** | **mindytubbert@gmail.com** |

### 2.18.2. LANDLORD & MANAGING AGENT

| Landlord Name | Address for Notice | Phone | Email |
|---|---|---|---|
| **Mendy Ringer** | **8195 Keller Rd Cincinnati, OH 45243** | **5138077526** | **mendyringer@gmail.com** |

IN WITNESS WHEREOF, Tenant and Landlord have executed this Lease as of the date of the last signature below.

## TENANT SIGNATURE

**Michael Spanos**     *Michael Spanos*
03-09-2022 01:05:11 AM EST - 3-1

**Melinda Michaels**     *Melinda Michaels*
03-04-2022 03:35:12 PM EST - 2-2

## LANDLORD SIGNATURE

**Mendy Ringer**     *Mendy Ringer*
03-10-2022 09:51:44 AM EST - 4-3



SeaWater 00303

# Parking Addendum

This Parking Addendum is attached to and made a part of the lease between **Landlord** and **Tenant** for the Property dated as of the date hereof (**Lease**). All capitalized terms used in this Addendum have the meanings given such terms in the Lease.

Tenant may park **any** vehicles in the parking area located on the grounds of the Building during the Lease term. Landlord shall be entitled to require all vehicles parking in the Parking Area to be registered with Landlord including, without limitation, providing Landlord with any required information, such as the vehicle license plate number and the owner's name and contact information. Landlord shall be entitled to institute parking controls and other measures including, without limitation, requiring vehicle tags or decals and installing access gates with security cards or access codes. Landlord may impose reasonable and customary charges on Tenant and other Occupants for security cards and/or vehicle tags or decals.

No vehicles other than Registered Vehicles may be parked in the parking area by Tenant, any other Occupant, or any of their guests. If Tenant replaces any of the Registered Vehicles, Tenant must notify Landlord of that replacement and provide Landlord with the new identification information (as set forth above) for the replacement vehicle prior to parking that vehicle in the parking area.

### NATURE OF PARKING RIGHTS

Tenant has the right to park only in the following reserved space(s): **Spot next to pool** (**Tenant Spaces**). Tenant may not park in any spaces in the parking area other than the Tenant Spaces. No other tenant has the right to park in the Tenant Spaces.

### PARKING RULES AND REGULATIONS

In addition to the restrictions described above, the following motor vehicle rules apply to Tenant and any other tenant whose Lease includes parking rights:

1. The parking and traffic regulations posted on any private streets, roads, or drives must be obeyed.

2. The parking area will be used only to park motor vehicles and for loading or unloading of motor vehicles.

3. All ordinances regarding fire lanes must be obeyed. Any vehicle parked outside the parking area, parked in a fire lane, blocking a fire hydrant, refuse container, another vehicle, sidewalk, or lawn, or otherwise illegally or improperly parked may be towed by Landlord without notice at the vehicle owner's expense.

4. Only operable passenger vehicles (including pick-up trucks) that can reasonably fit in a designated parking space may utilize the parking area. Commercial vehicles, recreational vehicles, boats or trailers, or other oversized vehicles may not be parked in the parking area.

5. Landlord may remove any vehicle at the owner's expense if it reasonably appears to Landlord that the vehicle is abandoned or inoperable, the vehicle does not display an inspection sticker and/or license plates, or the inspection and/or registration is expired.

6. Repairs to vehicles are prohibited in the parking area or on Building grounds, except for emergency repairs.

7. Vehicles may be washed only in designated areas. If there is no designated area, then washing vehicles is not allowed on the grounds of the Building.

8. Tenant's use of the parking spaces and parking area are at Tenant's own risk. Tenant acknowledges that Landlord does not provide security for the parking area and makes no representations concerning the security of the parking area. Landlord will not be liable or responsible for the damage to, or theft of, any vehicle or theft of any property from any vehicle.

The violation of any restriction, rule, or regulation contained in this Parking Addendum will constitute a Default by Tenant

 Lease Agreement

SeaWater 00304

under the Lease.



SeaWater 00305

IN WITNESS WHEREOF, Tenant and Landlord hereby agree to this Parking Addendum.

**TENANT SIGNATURE**

**Michael Spanos**   *Michael Spanos*
03-09-2022 01:05:11 AM EST - 3-4

**Melinda Michaels**   *Melinda Michaels*
03-04-2022 03:35:12 PM EST - 2-5

**LANDLORD SIGNATURE**

**Mendy Ringer**   *Mendy Ringer*
03-10-2022 09:51:44 AM EST - 4-12



SeaWater 00306

# Rules Addendum

This Rules Addendum is attached to and made a part of the lease between **Landlord** and **Tenant** for the Property dated as of the date hereof (**Lease**). All capitalized terms used in this Addendum have the meanings given such terms in the Lease.

### ACTIONS OF RESIDENTS

  - **Tenant will dispose of trash only in designated areas.**

  - **Tenant will promptly report any repair or maintenance problems to Landlord or Managing Agent (if any).**

### KEYS

  - **At delivery of possession to Property, Tenant will sign and deliver to Landlord a receipt which will identify the locks associated with the keys provided to Tenant (e.g. common building door, Property door, mailbox, etc.) and the number of each type of key so provided.**

  - **When Tenant vacates Property at the end of Term, Tenant will return all keys provided to Tenant by Landlord. If Tenant fails to return all such keys, Landlord may re-key all of the applicable locks and the cost incurred by Landlord in re-keying such lock(s) will be paid by Tenant on demand or Landlord may apply Security Deposit, if any, to pay that cost.**

  - **If Tenant loses a key or requires duplicates, they must notify Landlord or Managing Agent, if any, and bear the cost. Tenant may not duplicate the keys on their own.**

### USE OF PREMISES AND COMMON AREAS

  - **Tenant may not, without written consent of Landlord, drill holes or use nails, hooks, and screws on the property.**

  - **Tenant may not fasten anything to the fixtures, appliances, or to the interior or exterior of the property.**

  - **Any balcony or porch included in the property, or adjacent to the property, may not be altered by Tenant or used to store their personal belongings.**

  - **Tenant will comply with all weight restrictions on balconies and porches and will not overload them.**

  - **No laundry or other items will be hung from any window, balcony, or porch.**

  - **Tenant may not bring anything onto the property or grounds which could increase the risk of fire (e.g., flammable chemicals).**

  - **Tenant may not cook or barbecue on any porch or balcony or within 15 feet of any building.**

  - **Tenant won't place any sign, advertisement, or notice so that it's visible outside the property.**

  - **Tenant won't add or change any locks without prior written consent of Landlord.**

  - **Waterbeds and other water furniture are prohibited. Also, unusually heavy items like pianos and safes are only allowed if Landlord agrees that the weight is reasonable for the property's floor.**

 Lease Agreement

SeaWater 00307

**OTHERS**

**N/A**



SeaWater 00308

IN WITNESS WHEREOF, Tenant and Landlord hereby agree to this Rules Addendum.

**TENANT SIGNATURE**

**Michael Spanos**
_Michael Spanos_
03-09-2022 01:05:11 AM EST - 3-14

**Melinda Michaels**
_Melinda Michaels_
03-04-2022 03:35:12 PM EST - 2-15

**LANDLORD SIGNATURE**

**Mendy Ringer**
_Mendy Ringer_
03-10-2022 09:51:44 AM EST - 4-22


Lease Agreement

SeaWater 00309

# Lead Based Paint Hazard Disclosure

**LEAD WARNING STATEMENT**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**LANDLORD'S DISCLOSURES**

Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

Landlord has no records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**TENANT'S ACKNOWLEDGEMENTS**

By signing below, Tenant acknowledges receipt of copies of all information listed above. In addition, by signing below, Tenant acknowledges receipt of the pamphlet Protect Your Family from Lead in Your Home, a copy of which is attached to this Lease.

**CERTIFICATE OF ACCURACY**

IN WITNESS WHEREOF, the following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**TENANT SIGNATURE**

**Michael Spanos**  *Michael Spanos*
03-09-2022 01:05:11 AM EST - 3-24

**Melinda Michaels**  *Melinda Michaels*
03-04-2022 03:35:12 PM EST - 2-25

**LANDLORD SIGNATURE**

**Mendy Ringer**  *Mendy Ringer*
03-10-2022 09:51:44 AM EST - 4-26



Lease Agreement

SeaWater 00310

## Security Deposit Addendum

The following regarding your security deposit applies:

The Landlord is holding your security deposit at **Fifth Third** which is located at **7101 Miami Ave. Madeira, OH 45243**.

REQUIRED DISCLOSURE

YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

Certificate of Accuracy

IN WITNESS WHEREOF, the following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**TENANT SIGNATURE**

**Michael Spanos**   *Michael Spanos*
03-09-2022 01:05:11 AM EST - 3-27

**Melinda Michaels**   *Melinda Michaels*
03-04-2022 03:35:12 PM EST - 2-28

**LANDLORD SIGNATURE**

**Mendy Ringer**   *Mendy Ringer*
03-10-2022 09:51:44 AM EST - 4-35



## Radon Hazard Disclosure

Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.



SeaWater 00313

# EXHIBIT D

 **Dylan Tubbert** ⌄

Her ego is in the way     1:18 PM   `Feb 1, 2023`

> Dylan, I swear to God, I offered her $3,000 per month forever and she turned it down. 💀💀 That is twice the amount she was getting from your father.
1:18 PM

> If you want I can send you the money and you send it to her, don't tell her anything.
1:19 PM

> Send me your PayPal account
1:20 PM

I'm aware of her choices. But Mike she won't even take that from me because she would know I don't have 3k     1:26 PM

Sorry I'm at my warehouse planning our day

My mom doesn't like to even take $40 bucks from me even though I've been trying to pay her back     1:27 PM

3k is what I make in a little over a month of work she won't take that from me     1:29 PM

  

< (D) **Dylan Tubbert** ⌄                                ⋮



sne won't take that from me                         1:29 PM

Feb 1, 2023

Talk to your brothers and let me know, I honestly want to help. Much like you, I don't know how, every time I try to help her she gets crazier, that's how this got so bad.

1:34 PM

They're both done with her unfortunately. That has no convincing left, but it's on all three of them to figure out something. I mean you can send me the $$ but I don't know if she'll accept because obviously the amount is identical to what you'd give her too. It gets worse with her every time becaus

**View all**                                    >
                                                    1:39 PM

Nick's got a kid on the way now. Quinton has his two babies, they both have basically accepted not having her around.

I try what I can with her, but even then she still doesn't try. I can tell you this though, if you do send the cash to me I'll make sure she gets every cent

1:40 PM

 **Dylan Tubbert** ⌄

cent

<span style="float:right">1:40 PM</span>

`Feb 1, 2023`

My pay pal name is Dylan Tubbert

1:57 PM

PayPal.Me/dylantubbert



**Pay Dylan tubbert using**
Go to paypal.me/dylantubbert and...
PayPal.Me

Sorry I hardly use that stuff.   2:00 PM

Have you talked to your father? Does he have any ideas?

2:10 PM

He has tried with her multiple times as well,
really it's just at the point where everyone is
letting her guide her actions and figuring it out.
With all the efforts and resources I've given, my



     

SeaWater 00253



**Dylan Tubbert** ⌄

Feb 1, 2023

He has tried with her multiple times as well, really it's just at the point where everyone is letting her guide her actions and figuring it out. With all the efforts and resources I've given, my brothers, and my dad I know the three of them are at their wits end.

She needs the $$, but she needs help too. I've even offered her to come stay at my apartment for a few days but she won't          2:11 PM

2:12 PM          Please get her to move, I will keep sending you money

That's what I've been trying to do getting her out of Lauderdale at least and into her own place.          2:12 PM

I got it.   2:14 PM

Wednesday, February 8, 2023

9:17 PM          How's it going,? were you able to send her some money?   ⌄

<  **Dylan Tubbert** ⌄                                    ⋮

Wednesday, February 8, 2023

**Feb 8, 2023**

**How's it going,? were you able to send her some money?**
9:17 PM

She did take it after poking at it, but didn't actually accept it on her terms. I just sent it it to her after days of trying to get a hold of her and said here it is. Haven't heard back been working   9:30 PM

I've been extremely busy with work. Only me and one other guy in my department so I haven't had much time to talk with her outside of when I sent it a few days ago   9:31 PM

**She's the only mother you will ever have, please reach out to your brothers, she needs help.**

**She needs to know that you guys care.**
9:33 PM

I have and I know. I have told her thatdozens of times. As for my brothers they won't bother. not even Casey can get them to talk with her   9:34 PM

⌄

I don't try and avoid her. I usually call her weekly. Just this month is ridiculous at work where I'm

🖼  📷  ＋   |                                              ☺  ∿

**2 attachments**

Transaction details

## Payment sent to Dylan tubbert

| | | | |
|---|---|---|---|
| **Date** | **Transaction type** | **Transaction ID** | **Gross amount** |
| February 1, 2023 at 2:13:24 PM EST | Friends and Family | 4BK79735LE5475646 | -$3,000.00 USD |

| | |
|---|---|
| **Transaction status** | **Note to Dylan tubbert** |
| Completed | Feb 1 |

### Amount details

| Item | Subtotal |
|---|---|
| Gross Amount | -$3,000.00 USD |
| PayPal Fee | $0.00 USD |
| Net Amount | -$3,000.00 USD |

### Funding details

| | |
|---|---|
| **Funding type** | **Funding source** |
| PayPal balance | -$3,000.00 USD - PayPal Account |

### Customer details

Contact info
Dylan tubbert
dtubbs153@gmail.com
**The receiver of this payment is Unverified**

**Need help?**  Go to the Resolution Center for help with this transaction, to settle a dispute or to open a claim.

SeaWater 00256

December 4, 2020 ▪ Page 3 of 6

# EXHIBIT E



WELLS
FARGO

*Transaction history  (continued)*

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 11/17 | | Purchase authorized on 11/15 UPS*00000015R27W45 800-811-1648 GA S300321069611794 Card 8738 | | 1,628.03 | |
| 11/17 | | Purchase authorized on 11/16 Fastenal Company 0 Ft Lauderdale FL S460321602616649 Card 8738 | | 124.98 | |
| 11/17 | | Purchase authorized on 11/16 Water Purification 954-322-6666 FL S460321719083961 Card 8738 | | 458.00 | |
| 11/17 | | Bill Pay American Ro on-Line Xxxxxxxrpro on 11-17 | | 1,955.00 | |
| 11/17 | | Bill Pay 4393 Chase Card Services on-Line Xxxxxxxxxxx64393 on 11-17 | | 2,500.00 | |
| 11/17 | | Chen Bao Hua Iat Paypal 201116 1011132758651 Seawater Pro LLC | | 3,615.00 | 11,686.84 |
| 11/18 | | Square Inc 201118P2 201118 L207579184034 Michael Spanos | 8,511.72 | | |
| 11/18 | | Recurring Payment authorized on 11/16 Fedex 331623458 Memphis TN S580321713278957 Card 8738 | | 589.23 | 19,609.33 |
| 11/19 | | Square Inc 201119P2 201119 L207579504671 Michael Spanos | 4,227.12 | | |
| 11/19 | | Purchase authorized on 11/19 Speedway 1600 S Federal H Fort Lauderda FL P00380324818653071 Card 8738 | | 64.78 | 23,771.67 |
| 11/20 | | Purchase authorized on 11/18 Paypal *Designatro 402-935-7733 NY S380323585587906 Card 8738 | | 282.36 | |
| 11/20 | | Recurring Payment authorized on 11/19 Thefarmersdog.Com Thefarmersdog NY S300324307689585 Card 8738 | | 126.00 | |
| 11/20 | | Purchase authorized on 11/19 Google*Ads86722676 Internet CA S580324667710066 Card 8738 | | 500.00 | |
| 11/20 | | Purchase authorized on 11/19 A M Metal Finishin 407-8430182 FL S380324697678464 Card 8738 | | 553.42 | |
| 11/20 | | Purchase authorized on 11/20 McDonalds Hardware Ft Lauderdale FL P00000000379265246 Card 8738 | | 107.97 | |
| 11/20 | | Zelle to Fletcher Trevor on 11/20 Ref #Rp0995Nxp8 | | 500.00 | |
| 11/20 | | Online Transfer to Michaels M Everyday Checking xxxxxx2911 Ref #Ib0995Pk33 on 11/20/20 | | 750.00 | |
| 11/20 | | Zelle to Stokes Dillon Ref #Pp0995R5Hj | | 500.00 | 20,451.92 |
| 11/23 | | Purchase Return authorized on 11/20 Experian* Credit R 479-3436237 CA S300305664954553 Card 8738 | 189.55 | | |
| 11/23 | | Mobile Deposit : Ref Number :309210212752 | 350.00 | | |
| 11/23 | | Square Inc 201123P2 201123 L207580486470 Michael Spanos | 44.89 | | |
| 11/23 | | Square Inc 201121P2 201121 L207579878993 Michael Spanos | 45.07 | | |
| 11/23 | | Square Inc 201123P2 201123 L207580486469 Michael Spanos | 3,644.73 | | |
| 11/23 | | Recurring Payment authorized on 11/19 Pmt*Veh Tag Renew 866-835-4966 FL S460325250466260 Card 8738 | | 74.48 | |
| 11/23 | | Recurring Payment authorized on 11/19 Pmt*Broward Cnly F 877-818-4323 FL S380325250470182 Card 8738 | | 7.00 | |
| 11/23 | | Zelle to Stokes Dillon on 11/23 Ref #Rp099Krnvv | | 500.00 | |
| 11/23 | | Dhl Express Txn 201123 xxxxx6387 Michael Spanos | | 495.37 | 23,649.31 |
| 11/24 | | Purchase authorized on 11/22 UPS*00000015R27W47 800-811-1648 GA S300327849249754 Card 8738 | | 1,719.38 | |
| 11/24 | | Purchase authorized on 11/22 UPS*00000015R27W46 800-811-1648 GA S380327849251192 Card 8738 | | 2,008.82 | |
| 11/24 | | Purchase authorized on 11/23 Regal Beloit Ameri 715-675-8294 WI S380328769216441 Card 8738 | | 1,567.10 | |
| 11/24 | | Purchase authorized on 11/23 Paypal *Ankahnd Eb 402-935-7733 CA S380329053251079 Card 8738 | | 39.99 | |
| 11/24 | | Purchase authorized on 11/23 Paypal *Josjoh5930 402-935-7733 CA S460329053511906 Card 8738 | | 119.92 | |
| 11/24 | | Dhl Express Txn 201124 xxxxx7755 Michael Spanos | | 301.23 | |
| 11/24 | | Dhl Express Txn 201124 xxxxx7773 Michael Spanos | | 622.98 | |
| 11/24 | | Composite Concep Sale 201124 Michael Spanos | | 8,284.68 | 8,985.21 |
| 11/25 | | Square Inc 201125P2 201125 L207581016565 Michael Spanos | 4,142.46 | | |
| 11/25 | | Purchase authorized on 11/23 Pie-Zans Home of F 954-4629222 FL S300328715113297 Card 8738 | | 24.34 | |
| 11/25 | | Purchase authorized on 11/23 Paypal *Hassautoma 402-935-7733 CA S380329145482429 Card 8738 | | 117.65 | |

August 6, 2021 ■ Page 2 of 4



**WELLS FARGO**

---

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

---

**Transaction history**

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|--------------|-------------|---------------------|---------------------------|----------------------|
| 7/12 | | Online Transfer to Michaels M Ref #Ib0Bwpkj59 Everyday Checking Car Allowance | | 850.00 | 1,155.51 |
| 7/14 | | Recurring Payment authorized on 07/13 Sxm*Siriusxm.Com/A 888-635-5144 NY S381194459871182 Card 0403 | | 23.34 | 1,132.17 |
| 7/30 | | Allstate Ins CO Ins Prem Jul 21 000000988157542 Michaels | | 118.82 | 1,013.35 |
| **Ending balance on 8/6** | | | | | **1,013.35** |
| **Totals** | | | **$0.00** | **$992.16** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

---

**Monthly service fee summary**

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 07/09/2021 - 08/06/2021 | Standard monthly service fee $10.00 | You paid $0.00 |
|-------------------------------------|-------------------------------------|----------------|
| **How to avoid the monthly service fee** | **Minimum required** | **This fee period** |
| Have any ONE of the following account requirements | | |
| · Minimum daily balance | $500.00 | $1,013.35 ☑ |
| · Total amount of qualifying direct deposits | $500.00 | $0.00 ☐ |
| · Age of primary account owner | 17 - 24 | ☐ |
| · The fee is waived when the account is linked to a Wells Fargo Campus ATM or Campus Debit Card | | |

RC/RC

---

 IMPORTANT ACCOUNT INFORMATION

We are updating the Deposit Account Agreement ("Agreement") dated May 28, 2021. Effective August 9, 2021, in the section of the Agreement titled "Closing Accounts," the subsection "Closing your account if the balance is zero" is deleted and replaced with the following:

**Accounts with a zero balance will continue to be charged applicable fees**   (like the monthly service fee) until you request to close your account. We may close an account (except analyzed business accounts) with a zero balance on the fee period ending date or at month end without prior notification to you. Once an account is closed (either by you or us), no fees will be assessed on the account.
- To prevent closure by us, an account with a zero balance must have a qualifying transaction posted within the last two months of the most recent fee period ending date. IOLTA and RETA accounts require a qualifying transaction within ten months of the most recent fee period ending date.
- Examples of qualifying transactions are deposits and withdrawals made at a branch, ATM, online, mobile, or via telephone; one-time and recurring transfers made at a branch, ATM, online, mobile, or via telephone; automatic or electronic deposits, such as from payroll or government benefits; automatic or electronic payments, including Bill Pay; one-time and recurring purchases or payments made

September 8, 2021  ■  Page 2 of 4



**WELLS FARGO**

---

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

---

**Transaction history**

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|--------------|-------------|---------------------|---------------------------|----------------------|
| 8/9 | | Online Transfer to Seawater Pro LLC Business Checking xxxxxx9382 Ref #Ib0C4Wtpf3 on 08/09/21 | | 1,000.00 | 13.35 |
| 8/16 | | Recurring Payment authorized on 08/13 Sxm*Siriusxm.Com/A 888-635-5144 NY S461225484131031 Card 0403 | | 23.34 | -9.99 |
| 8/17 | | Paypal Transfer 210817 1015253694079 Seawater Pro LLC | 44,000.00 | | 43,990.01 |
| 8/19 | | Online Transfer to Seawater Pro LLC Ref #Ib0C749Mfc Business Checking Paypal Sales | | 43,000.00 | 990.01 |
| 8/23 | | Paypal Inst Xfer 210822 Google Youtube Seawater Pro LLC | | 11.99 | 978.02 |
| 8/24 | | Paypal Inst Xfer 210824 Google Google S Seawater Pro LLC | | 9.99 | 968.03 |
| 8/25 | | Paypal Inst Xfer 210825 Veerotech Seawater Pro LLC | | 29.95 | 938.08 |
| 8/30 | | Edeposit IN Branch/Store 08/30/21 10:41:59 Am 2577 E Sunrise Blvd Fort Lauderdale FL 9654 | 2,000.00 | | |
| 8/30 | | Online Transfer to Michaels M Everyday Checking xxxxxx2911 Ref #Ib0C9Bjfmn on 08/30/21 | | 2,000.00 | 938.08 |
| 8/31 | | Edeposit IN Branch/Store 08/31/21 01:46:43 Pm 1710 S Andrews Ave Fort Lauderdale FL 0403 | 40,348.00 | | |
| 8/31 | | Allstate Ins CO Ins Prem Aug 21 000000988157542 Michaels . | | 118.82 | 41,167.26 |
| 9/2 | | Robinhood Funds 210901 xxxxx1256 Michael Spanos | 0.26 | | |
| 9/2 | | Robinhood Funds 210902 xxxxx1256 Michael Spanos | 0.32 | | 41,167.84 |
| 9/3 | | Robinhood Funds 210902 xxxxx1256 Michael Spanos | | 40,000.00 | 1,167.26 |
| 9/8 | | Robinhood Funds 210907 xxxxx1256 Michael Spanos | 0.58 | | 1,167.26 |
| **Ending balance on 9/8** | | | | | **1,167.26** |
| **Totals** | | | **$86,348.58** | **$86,194.67** | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

---

**Monthly service fee summary**

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 08/07/2021 - 09/08/2021 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Minimum daily balance | $500.00 | -$9.99 ☐ |
| · Total amount of qualifying direct deposits | $500.00 | $44,000.58 ☑ |
| · Age of primary account owner | 17 - 24 | ☐ |
| · The fee is waived when the account is linked to a Wells Fargo Campus ATM or Campus Debit Card | | |

RC/RC

---



# ☑ IMPORTANT ACCOUNT INFORMATION

July 8, 2022 ■ Page 2 of 5



**WELLS FARGO**

---

## Statement period activity summary

| | |
|---|---:|
| Beginning balance on 6/8 | $9,642.75 |
| Deposits/Additions | 1,500.00 |
| Withdrawals/Subtractions | - 10,664.82 |
| **Ending balance on 7/8** | **$477.93** |

Account number:  2670727821

**MICHAEL SPANOS**
**MELINDA F MICHAELS**

*Arizona account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 122105278

### Overdraft Protection
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

---

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---:|---:|---:|
| 6/14 | | Recurring Payment authorized on 06/13 Sxm*Siriusxm.Com/A 888-635-5144 NY S302164302624241 Card 0403 | | 24.71 | 9,618.04 |
| 6/29 | | Online Transfer to Seawater Pro LLC Business Checking xxxxxx9382 Ref #Ib0Fq2Yp3L on 06/29/22 | | 9,500.00 | 118.04 |
| 6/30 | | Online Transfer From Seawater Pro LLC Business Checking xxxxxx9382 Ref #Ib0Fq8T6R2 on 06/30/22 | 500.00 | | |
| 6/30 | | Allstate Ins CO Ins Prem Jun 22 000000988157542 Michaels | | 130.11 | 487.93 |
| 7/5 | | Zelle From Melinda F Michaels on 07/05 Ref # Jpm999Dn32Rr | 1,000.00 | | |
| 7/5 | | Online Transfer to Michaels M Everyday Checking xxxxxx2911 Ref #Ib0Frlpcv5 on 07/05/22 | | 1,000.00 | 487.93 |
| 7/8 | | Monthly Service Fee | | 10.00 | 477.93 |
| **Ending balance on 7/8** | | | | | **477.93** |
| **Totals** | | | **$1,500.00** | **$10,664.82** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

---

## Monthly service fee summary

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 06/08/2022 - 07/08/2022 | Standard monthly service fee $10.00 | You paid $10.00 | |
|---|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period | |
| Have any ONE of the following account requirements | | | |
| · Minimum daily balance | $500.00 | $118.04 | ☐ |
| · Total amount of qualifying direct deposits | $500.00 | $0.00 | ☐ |
| · Age of primary account owner | 17 - 24 | | ☐ |
| · The fee is waived when the account is linked to a Wells Fargo Campus ATM or Campus Debit Card | | | |

RC/RC