UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-60984-Augustin-Birch

[*Consent Case*]

MELINDA MICHAELS,

    Plaintiff,

v.

SEAWATER PRO LLC, and
MICHAEL SPANOS A/K/A MIKE SPANOS,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
SUPPORTING THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff MELINDA MICHAELS ("Michaels"), through the undersigned counsel, files this RESPONSE to Defendants' Statement of Material Facts [ECF No. 57-1] as follows:

Michaels uses the following abbreviations in support of her motion:

| DOCUMENT | CITATION | ABBREVIATION |
|---|---|---|
| Defendants' Motion for Summary Judgment | ECF No. 57 | DMSJ |
| Defendants' Statement of Material Facts | ECF No. 57-1 | DSF |
| Declaration of Defendant Michael Spanos | ECF No. 57-2 | SpanDec |
| Michael Spanos Deposition Transcript | ECF No. 60 | SpanDepo |
| Melinda Michaels Deposition Transcript | ECF No. 59 | MindyDepo |
| Plaintiff's Motion for Summary Judgment | ECF No. 56 | PMSJ |
| Michaels Declaration | ECF No. 58-1 | MD |
| Santhagens Declaration | ECF No. 58-2 | SD |
| Tubbert Declaration | ECF No. 58-3 | TD |
| Eisenberg Declaration | ECF No. 58-4 | ED |
| Defendants SeaWater Pro LLC's Response to Plaintiff's Requests for Admissions | Exhibit E | SWA |
| Defendant SeaWater Pro LLC's Response to Melinda Michaels' First Set of Interrogatories | Exhibit F | SWI |

| DEFINITION | ABBREVIATION |
|---|---|
| *Michaels v. Seawater Pro LLC, et al,* Case No. 24-cv-60984-Augustin-Birch Amended Complaint [ECF No. 28] | Lawsuit |
| Defendants' Answer to the Amended Complaint (ECF No. 28) [ECF No. 29] | Answer |
| Fair Labor Standards Act | FLSA |
| Melinda Michaels ("Mindy"), Plaintiff | Michaels |
| SeaWater Pro LLC, Defendant | SW |
| Michael Spanos, Defendant | Spanos |
| Approximately September 27, 2019, through June 28, 2022 | Claim Period |
| SeaWater's Office | SW's Office |

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Disputed that for the first year, the only people working for SeaWater Pro were Mr. Spanos and Trevor Fletcher. Michaels was employed by Defendants from the start of SeaWater Pro,

2

around December 2017, until on or about June 28, 2022. **MD ¶ 3**. From around December 2017 until early January 2019, Michaels was the only employee of Michael Spanos and SeaWater Pro, except for Ernst Von Santhagens who worked for about two weeks in summer 2018 and three weeks in fall 2018 (he worked for Defendants through 2021). Defendants hired their next full-time employee around early 2019. **MD ¶ 12. SD ¶ 8, 13. ED ¶ 3-10**.

6. Disputed that SeaWater pro only hired more employees in its second year. **MD ¶ 3, ¶ 12. SD ¶ 8**. Michaels was employed by Defendants from SeaWater Pro's start, around December 2017, until June 28, 2022. **MD ¶ 3**. From around December 2017 to early January 2019, Michaels was the only employee of Michael Spanos and SeaWater Pro, except for Ernst Von Santhagens who worked for about two weeks in summer 2018 and three weeks in fall 2018. Defendants hired their next full-time employee around early 2019. **MD ¶ 12. SD ¶ 8, 13. ED ¶ 3-10**.

7. Undisputed that during COVID, Spanos hired three to four people, which did not include Ms. Michaels, since she was already working for Defendants pre-COVID. **MD ¶ 3, ¶ 12. SD ¶ 13. ED ¶ 3-10**.

8. Undisputed that Mr. Spanos owned the business. Disputed that Mr. Spanos worked relaxed hours during Michaels' claim period. **MD ¶ 40. SD ¶ 19-21**. Every day, first thing in the morning, Spanos gave Michaels a list of duties. **MindyDepo p. 35 ¶ 14-15**. Michaels and Spanos woke up between 7:30 and 8:00, had a quick meal, and went to the warehouse. **MindyDepo p. 62 ¶ 14-17**. Michaels worked evenings with Spanos; after a nap, from 8:00 PM to 2:00 AM, Spanos would be on the phone with Jay Baldotta in India or other dealers, and Michaels had a plethora of regular nightly duties to complete. **MindyDepo p. 97 ¶ 15-20**.

9. Disputed that Mr. Spanos rarely worked at night or away from SeaWater Pro. Every day, first thing in the morning, Spanos gave Michaels a list of duties. **MindyDepo p. 35 ¶ 14-15**. Michaels and Spanos woke up between 7:30 and 8:00, had a quick meal, and went to the warehouse. **MindyDepo p. 62 ¶ 14-17**. Michaels worked evenings with Spanos; after a nap, from 8:00 PM to 2:00 AM, Spanos would be on the phone with Jay Baldotta in India or other dealers, and Michaels had a plethora of regular nightly duties to complete. **MindyDepo p. 97 ¶ 15-20**.

10. Disputed that no one but Mr. Spanos worked weekends. Dylan Tubbert had to work for Defendants 5-6 days a week. **TD ¶ 14**. Michaels had to work for Defendants seven days a week. **MD ¶ 40-41, MindyDepo p. 112 ¶ 23**.

11. Undisputed.

3

12. Disputed. Michaels alone purchased the boat she and Spanos lived on from around October 2016 until about November 2020. During that period, Michaels often paid for the boat slip from her savings and alimony. Furthermore, Michaels had to pay for the slip continuously from SeaWater Pro's beginning, and then at times throughout her claim period. **MD ¶ 55-56**.

13. Undisputed as to (b)-((a) seems to be an error, assuming the second "a" was meant to be d). Disputed as to the $850 monthly rent for a boat slip they lived on for 11 months. **MD ¶ 55-56**.

14. Undisputed Spanos paid off Plaintiff's car. Disputed the payment was $3,000, as Michaels stated it was under $3,000. **MindyDepo p. 69 ¶ 11-12**. Disputed Spanos paid her $168 monthly insurance, as Michaels stated it was around $150 to $168. **MindyDepo ¶ 15-17**.

15. Disputed. Defendants' citation does not reference other expenses like Amazon. Instead, Spanos told Michaels to only make specific business-related purchases from the joint account, provided she was not paying herself. For instance, Amazon purchases for tools, supplies, maintenance items for residences, and rent. **MD ¶ 70**.

16. Disputed. Plaintiff's "that was a relationship" quote was in response to a question about owed money being wages. She then said she demanded payment multiple times, but Spanos only produced one check. **MindyDepo p. 207 ¶ 24 – p. 208 ¶ 12**. When the business was not profitable, Michaels was required to pay its expenses with her own money and was promised reimbursement that never came. **MD ¶ 22**.

17. Disputed. Plaintiff testified the business paid for utilities, groceries, and rent. **MindyDepo ¶ p. 71 ¶ 10 – 25, p. 72 ¶ 1-3**. Michaels also used her own savings and alimony for her health insurance costs. **MD ¶ 68**.

18. Disputed. Defendants required Michaels to use the business account to pay vendors, suppliers, and employees. **MD ¶ 48, 51, 52**. However, Defendants never let Michaels pay herself wages. They prohibited her from issuing herself paychecks. Spanos always said to Michaels, "you can write out checks, but not to yourself". **MD ¶ 51**.

19. Disputed. Michaels was given a Business Banking Card by Defendants for payments to vendors and suppliers. **MD ¶ 52**. Spanos controlled their joint personal account entirely. Michaels could not move money without Spanos's approval. The extreme control Spanos had over every aspect of Michaels's life was inescapable. **MD ¶ 68, 70, 71 ,73**.

20. Disputed. Due to Spanos's chronic heart failure (CHF), Michaels had to do all work for Spanos that involved lifting over 20 pounds. **MD ¶ 13, 14**. Michaels worked for Defendants, was

4

supervised by Spanos, and performed tasks he gave her, including being the commercial spokesperson, running hoses, and doing tests, working morning and night. **SD ¶ 13-21**. Michaels started her workday before Spanos left for the office. **TD ¶ 6**. Daily, neighbor Eisinger saw Spanos and Michaels commute to and from work together. Michaels was required to do most of the heavy lifting because of Spanos's heart condition. **ED ¶ 3-7**.

21. Disputed. Michaels was not just a passenger in Spanos's car; she was required by Defendants to make calls in the car on the way to and from appointments. **MindyDepo p. 122 ¶ 3-5**.

22. Disputed. Refilling medications was a job duty, and the Defendants' citation does not mention Michaels saying she "ran other personal errands for Mr. Spanos". **MindyDepo p. 123 ¶ 12-13**.

23. Disputed. In March, Michaels started working nights with Spanos, from 8:00 p.m. to 2:00 a.m. nightly, ready to perform any task Spanos gave her, in addition to all the duties she was normally required to perform at night. **MindyDepo p. 114 ¶ 15 – p. 115 ¶ 12. MD ¶ 41**.

24. Undisputed.

25. Disputed. The cited testimony does not support the facts asserted. Defendants are required to use pinpoint citations under S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests the Defendants' Material Fact be stricken per 56.1(b)(1)(d). The citation mentions Spanos's control over Michaels. In 2021, after Michaels complained about her compensation, Spanos put her on payroll, issuing one check for around $600. **MD ¶ 34**. Defendants continued to make promises to Michaels that were not kept. Id. Michaels also testified that she demanded payment many times, but Spanos only gave her a check once. **MindyDepo p. 208 ¶ 11-12**.

26. Disputed regarding the facts from the transcript citation. The citation indicates Spanos required Michaels to manage employees while simultaneously being his personal assistant. Michaels disliked running errands for Spanos because she knew employees would not work if she left. Additionally, Michaels states that leaving the warehouse for prescriptions or errands for Spanos was a job requirement, and she was still working going on the phone performing tasks in the car while driving. **MindyDepo p. 122 ¶ 3-5, p. 124 ¶ 21 – p. 125 ¶ 16**.

27. Disputed regarding the facts from the transcript citation. The citation indicates that for Michaels, work hours were whenever Spanos controlled her time, which included time at the shop (**MindyDepo p. 124 ¶ 19-21**), and that she was frustrated when she had to both manage employees

and get prescriptions for Spanos, as she couldn't do both well (**MindyDepo p. 124 ¶ 21-24**), but that it was a part of her job (**MindyDepo p. 125 ¶ 16**).

28. Disputed. Refilling Spanos's medication was Michael's job. (**MindyDepo p. 125 ¶ 16**). Michael's was required to work during Spanos's doctor's appointments. She was not just a passenger in Spanos's car; she had to make calls for Defendants in the car when going to and from appointments. **MindyDepo p. 122 ¶ 3-5**.

29. Disputed. Michaels was a SeaWater Pro employee and was required by Spanos to refill medication as part of her job (**MindyDepo p. 125 ¶ 16**), and to make calls in the car on the way to and from appointments. (**MindyDepo p. 122 ¶ 3-5**).

30. Disputed. The cited testimony from Spanos does not support the facts asserted. Defendants must use pinpoint citations per S. D. Fla. L. R. 56.1(b)(1)(B). Therefore, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation is about paying other employees, complaints, and pay schedules, not Michaels' duties. Defendants required Michaels to: fulfill all customer orders (from gathering parts to shipping), handle customer interaction and support, manage social media, build units, manage Spanos' schedule, oversee order checklists, and handle dealer orders and accounting. [**MD ¶ 14, 15, 16, 17, 18, 19, 20, 21; TD ¶ 9, 10; SD ¶ 17, 18**]. Additionally, Defendants required Michaels to consult on HR matters, manage customer deals, negotiate UPS rates, maintain the facilities, do machining, clean the CNC, track lost shipments, confirm shipment locations, deal with customs, attend trade shows, and act as the brand's representative in ads. [**MD ¶ 14, 24, 25, 26, 27, 28, 29, 30, 31, 32; TD ¶ 9, 10; SD ¶ 17, 18. SD ¶ 22**]. Michaels was required by Defendants to form partnerships with online personalities and influencers to market the brand. [**MD ¶ 42, TD ¶ 17**]. Michaels was required by Defendants to create, produce, market, and star in promotional videos. [**MD ¶ 32 (1), (2), (3); SD ¶ 17; TD ¶ 9, 16, 17**]. Spanos had Michaels do all tasks he couldn't because of his CHF. [**MD ¶ 13, 14, 15, 9, 43; SD ¶ 22; ED ¶ 7**]. Spanos made Michaels lift all watermaker motors for customer orders, so she had to manage the entire order fulfillment process. [**MD ¶ 14, 6, SD ¶ 22; TD ¶ 9**]. Lastly, Defendants required Michaels to purchase tools and supplies for the business. [**MD ¶ 44**].

31. Disputed regarding the facts from the transcript citation. The citation shows that, according to Michaels, beginning in 2021, her schedule was approximately 9:00 to 6:00 or 7:00 at the shop, occasionally later, Monday through Friday, and typically Saturday. **MindyDepo p. 127 ¶ 17-23.**

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed that Plaintiff is seeking to recover minimum wages for about six hours of work per night at home.

36. Disputed regarding the facts from the transcript citation. The referenced citation shows that per Michaels, Spanos was aware of the work she did each night. **MindyDepo p. 251 ¶ 7-17**. Also, at night, Defendants required Michaels to set up partnerships with online personalities and influencers to market the business. [**MD ¶ 42, TD ¶ 17**]. Defendants required Michaels to create, produce, market, appear in, and promote social media videos during her claim period. [**MD ¶ 32 (1), (2), (3); SD ¶ 17; TD ¶ 9, 16, 17**].

37. Disputed that all social media activities were done on Plaintiff's personal phone. Plaintiff also had a desk workstation at the business with a computer for social media, which she used not just for social media, but also for business emails, vendor coordination, negotiating shipping rates, payment processing, and Skype. **MD ¶ 16-21**.

38. Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions Michael's claims for owed wages and hours, and that Spanos had said Defendants would pay her the money they owed her. **MindyDepo p. 207 ¶ 8-25**.

39. Disputed regarding the facts from the transcript citation. The citation indicates that according to Michaels, when she was on social media at night, Spanos knew she was looking for business content and she would send him reviews she found. Whenever a negative comment was posted in the watermaker group, Spanos would respond under Michael's name. **MindyDepo p. 251 ¶ 7-13**. Spanos mentioned that a large portion of business was from ads on Facebook, Twitter, TikTok, and Google, and Michaels started the Facebook page in early 2018. **SpanDepo p. 73 ¶ 5-20**. Spanos also told Michaels not to inform him about all her social media activities, as he didn't want to know and was bothered by rumors. **SpanDepo p. 69 ¶ 7-9**.

40. Undisputed that Spanos did not look over Michaels's shoulder; disputed that Spanos had no knowledge of the work Michaels was doing at night, as Michaels attempted to inform him, but Spanos did not want to know what Michaels was doing on social media for the business since the online rumors would upset him. **SpandDepo p. 69 ¶ 7-9**.

41. Undisputed that the Plaintiff did not always tell Spanos what she was researching on her phone, where Spanos directed Michaels not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**.

42. Disputed. Spanos stated that a significant part of their business was from ads on Facebook, Twitter, TikTok, and Google, and that Michaels created the Facebook page in early 2018. **SpanDepo p. 73 ¶ 5-20**. Michaels had to film ads, be in photos, and market the business on social media at Spanos's direction. MD ¶ 29-32. Spanos testified that he supervised Melinda during YouTube filming (**SpanDepo p. 55, ¶ 22-23**), he told Michaels what to do as he filmed and she arranged items for the video (**SpanDepo. p. 50 ¶ 23-25**), and she had to pose for marketing pictures (**SpanDepo p. 51 ¶ 2-9**).

43. Undisputed that Spanos may have had no idea how much time Michaels claims she was "working" versus consuming social media for entertainment, because Michaels was directed not to tell Spanos everything that was going on with her social media use, because he didn't want to know, and rumors upset him. Id. Additionally, Spanos testified that there was no need to keep records of the time Michaels spent working (**SpanDepo p. 92 ¶ 9-10**), and that she should have kept her own records (**SpanDepo. ¶ 12-13**).

44. Undisputed that Michaels did company work at night; disputed that she also used this time for personal matters, as her personal use of social media was not often. **MindyDepo p. 252 ¶ 7**.

45. Undisputed. Michaels also was directed by Spanos not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**.

46. Undisputed. Michaels also was directed by Spanos not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**. Michaels performed work for the company in the evening, but personal use on social media was not very often. **MindyDepo p. 252 ¶ 7**.

47. Undisputed. Michaels also was directed by Spanos not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**.

48. Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**. Spanos reimbursed Michaels for business expenses, including rent down payments she was owed. **MindyDepo p. 226 ¶ 2-23**.

8

49.     Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**. Spanos reimbursed Michaels for business expenses, including rent down payments she was owed. **MindyDepo p. 226 ¶ 2-23**.

50.     Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**. Spanos reimbursed Michaels for business expenses, including rent down payments she was owed. **MindyDepo p. 226 ¶ 2-23**.

51.     Disputed that the $2,000 was a payment to Michaels. It was a reimbursement for a home down payment Michaels paid upfront because Spanos did not have a company or personal check for him to write it himself. **MindyDepo p. 225 ¶ 15-18**.

52.     Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**. Spanos reimbursed Michaels for business expenses, including rent down payments she was owed. **MindyDepo p. 226 ¶ 2-23**.

53.     Undisputed, but Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

54.     Undisputed, but Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

55.     Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation refers to Michael's claims of over $11,000 in car damage caused by Spanos and customers. **MindyDepo p. 69 ¶ 2-5**. Furthermore, Michaels bought the boat she and Spanos lived on from October 2016 to November 2020. During this period, Michaels regularly paid for the boat slip with her savings and alimony. **MD ¶ 55**. She was also required to pay for the slip from the start of SeaWater Pro and intermittently throughout her claim period. **MD ¶ 57**.

56.     Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation refers to Michael's claims that she paid for and was on the slip lease. **MindyDepo p. 77 ¶ 6**. Michaels regularly paid for the slip with her savings and alimony. **MD ¶ 55**. She was also required to pay for the slip from the start of SeaWater Pro and intermittently throughout her claim period. **MD ¶ 57**.

57.     Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation refers to Michael's claims that she

9

paid for and was on the slip lease. **MindyDepo p. 77 ¶ 6**. Michaels regularly paid for the slip with her savings and alimony. **MD ¶ 55**. She was also required to pay for the slip from the start of SeaWater Pro and intermittently throughout her claim period. **MD ¶ 57**.

58. Undisputed.

59. Undisputed that Defendants paid the rent for the Briny Apartment where Michaels lived for about two or three months. **MindyDepo p. 77 ¶ 7-13**.

60. Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation refers to Michael's testimony of working while crossing Lake Okeechobee. **MindyDepo p. 74 ¶ 2-3**. Spanos and SeaWater Pro paid for utilities and groceries as business expenses, since customers would arrive by dinghy, and Michaels was required to entertain them, cook for them, and perform customer engaging events, and Spanos required her to let customers use her car. **MindyDepo p. 71 ¶ 7-23**. As many customers did not have homes, they came to the shop or the Defendants' residences by dinghy. **MindyDepo p. 71 ¶ 20-23.**

61. Disputed as to the facts from the transcript citation. The citation indicates that according to Michaels, when on work trips with Spanos, he would pay for airfare and restaurants. **MindyDepo p. 82 ¶ 10-13**. It does not mention that Spanos paid for every restaurant bill throughout her employment as asserted.

62. Disputed. Michaels was never correctly paid for her hours or duties, or the wages owed by Defendants. **MD ¶ 74**. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2. In 2021**, after Michaels complained about her compensation, Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Defendants kept making future promises to pay Michaels but never fulfilled them. **MD ¶ 34**. Michaels also testified she demanded payment multiple times, with Spanos only providing a check once. **MindyDepo p. 208 ¶ 11-12**.

63. Disputed as to the facts from the transcript citation. The citation indicates that according to Michaels, at night she was required to be at Spanos's disposal the whole time for any directive, that Spanos controlled everything she did then, she had to be available for him, and he was present to give instructions. **MindyDepo p. 115 ¶ 2-16**. The citation does not mention if Michaels was Spanos's romantic partner during work hours, nor does it say Michaels could not identify her work, as Defendants assert. In fact, Defendants required Michaels to do social media and marketing at

10

night (**MD ¶ 41**) , and Spanos knew she was doing social media for the business. When a negative comment appeared on a watermaker group, Spanos himself would reply under Michael's name. **MindyDepo p. 251 ¶ 7-13**. Spanos said that much of their business came from ads on Facebook, Twitter, TikTok, and Google, and Michaels set up the Facebook page in early 2018. **SpanDepo p. 73 ¶ 5-20**. Spanos also instructed Michaels not to tell him everything about her social media use because he did not want to know and rumors upset him. **SpanDepo p. 69 ¶ 7-9**.

64. Disputed as to the facts asserted from the citation of Michael's transcript. The citation Defendants reference specifically indicates that according to Michaels at night she was at Spanos's disposal that entire time to do any directive given to her, that Spanos had control over everything Michaels did at all those times, she was required to be available for Spanos, and that he was there with her in order to give any directive. **MindyDepo p. 115 ¶ 2-16**. The testimony does not point to the fact asserted where Michaels was speaking generally about her time working at the company as Defendants purport. Instead, it further highlights the control and supervision Spanos had over Michaels. **MindyDepo p. 115 ¶ 2-16**.

65. Disputed as to the facts from the transcript citation. The citation indicates that Michaels did NOT agree with Defense Counsel's statement to limit her claim to three years before the lawsuit was filed. Michaels, in fact, testified she did not understand the Statute of Limitations, despite her counsel explaining it to her several times. **MindyDepo p. 113 ¶ 2-25, p. 114 ¶ 1-16**. Michaels also testified that she met with her attorney, who applied the law to her worked hours, which is how she understood the statute to work, but she struggled to understand the statute of limitations and the court system. **MindyDepo p. 114 ¶ 1-6**.

## ADDITIONAL FACTS

66. For the years 2019-2024, SW generated more than $500,000 in gross revenue. [**Lawsuit ¶ 6; Answer ¶ 6; SWA ¶ 2, 4, 5, 6, 7, 14; MD ¶ 22-23**].

67. Michaels was an employee of the Defendants during the Claim Period of approximately September 27, 2019 through June 28, 2022. [**MD ¶ 3; SD ¶ 13; TD ¶ 4; ED ¶ 10**].

68. At all times material hereto SW was an enterprise engaged in commerce or the production of goods for commerce and is covered by the FLSA at all times material hereto. [**Lawsuit ¶ 6; Answer ¶ 6**].

69. At all relevant times, SW and Spanos were in daily interstate commerce, using foreign tools and materials for their watermakers, and hired Michaels for interstate commerce to produce, market, and sell watermakers to international customers. [**Lawsuit ¶ 5-9, MD ¶ 5, 6, 7, 8, 9, 19**].

70. At all times material hereto, Spanos directly supervised Michaels [**MD ¶ 10; SD ¶ 14, 15; TD ¶ 16**].

71. At all times material hereto, Michaels was not paid an hourly rate, any other metric or method of compensation while working for Defendants. [**MD ¶33; SWI ¶ 13(b); TD ¶ 18**].

72. Defendants required Michaels to: fulfill all customer orders (from gathering parts to shipping), handle customer interaction and support, manage social media, build units, manage Spanos' schedule, oversee order checklists, and handle dealer orders and accounting. [**MD ¶ 14, 15, 16, 17, 18, 19, 20, 21; TD ¶ 9, 10; SD ¶ 17, 18**].

73. Additionally, Defendants required Michaels to consult on HR matters, manage customer deals, negotiate UPS rates, maintain the facilities, do machining, clean the CNC, track lost shipments, confirm shipment locations, deal with customs, attend trade shows, and act as the brand's representative in ads. [**MD ¶ 14, 24, 25, 26, 27, 28, 29, 30, 31, 32; TD ¶ 9, 10; SD ¶ 17, 18. SD ¶ 22**].

74. Michaels worked from around 9:00 a.m. to 6:00 p.m. in the office seven days a week from September 27, 2019, until about February 28, 2021. [**MD ¶ 40; TD ¶ 4; SD ¶ 19, 20, 21**]. Then, Defendants required her to continue working late into the night away from the office. [**MD ¶ 45, 46, TD ¶ 13, 14; ED ¶ 6, 8, 9**].

75. Michaels worked from around 8:00 p.m. to 2:00 a.m., seven days a week, from March 2, 2021, until about June 28, 2022. [**MD ¶ 41; ED ¶ 8**].

12

76. Michaels was only ever out from work for approximately two weeks during her claim period and is not claiming any compensation for those weeks. [**MD ¶ 39**].

77. Defendants required Michaels to create partnerships with online personalities, YouTubers, Instagrammers, social media influencers, and other cruisers to market and brand their business. [**MD ¶ 42, TD ¶ 17**].

78. Defendants required Michaels to create, produce, market, star in, and promote social media videos for them during her entire claim period. [**MD ¶ 32 (1), (2), (3); SD ¶ 17; TD ¶ 9, 16, 17**].

79. Due to his chronic heart failure (CHF), Spanos could not lift anything over 20 lbs. [**MD ¶ 13; ED ¶ 7**].

80. Because of his CHF, Spanos had Michaels do all the tasks he could not do himself. [**MD ¶ 13, 14, 15, 9, 43; SD ¶ 22; ED ¶ 7**].

81. Spanos made Michaels lift all the watermaker motors for customer orders (like putting the motor in a box). This meant Spanos had Michaels handle all aspects of fulfilling customer orders, including getting parts, ordering, stocking, making labels, packing, and shipping. [**MD ¶ 14, 6, SD ¶ 22; TD ¶ 9**].

82. Michaels was required by Defendants to buy tools and supplies for their business. [**MD ¶ 44**].

83. Defendants required Michaels to be on their business bank accounts. She was also required by them to write checks to pay vendors and suppliers, and to generate and pay the other employees. [**MD ¶ 48, 49, 50; TD ¶ 18**].

84. Defendants gave Michaels a SeaWater Pro email account and required her to conduct business with customers, vendors, and banks using that address. [**MD ¶ 50, 11, 16, 18**].

85. Defendants gave Michaels a Wells Fargo Business Banking Card in her name for paying vendors and suppliers without a check. [**MD ¶ 52, 53**].

86. At all relevant times, Defendants instructed Michaels that she was not allowed to pay herself any wages. [**MD ¶ 51**].

87. Defendants initiated Michaels into signing up on the Quickbooks payroll platform via email, but Defendants did not follow through and never put her on payroll. [**MD ¶ 35, TD ¶ 19**].

88. Defendants paid Michaels two $3,000.00 cash payments after she left Defendants' business. [**MD ¶ 37**].

13

89. After the first two cash payments, Defendants paid Michaels another $3,000 through her son, Dylan Tubbert. [**MD ¶ 37, 38; DT ¶ 20**].

90. No further payments have been made to Michaels by Defendants since. [**MD ¶ 37**].

91. Defendants kept no employment records for Michaels, did not require her to track her time, and dispute that she was an employee. [**SWI ¶ 17, 19**].

92. Michaels provided the boat that she and Spanos lived in from approximately October 2016 through on or about November 2020. [**MD ¶ 55, ED ¶ 3**].

93. Michaels had to pay the monthly slip rent for the boat where she and Spanos lived from the start of SW, and then at other times, with her own alimony and savings. [**MD ¶ 55, 56, ED ¶ 3**].

94. The slip was used by Defendants to store tools, supplies, and to receive packages and orders for both customers and their business. [**MD ¶ 57, ED ¶ 6**].

95. Michaels had to carry packages, tools, supplies, and orders for both customers and the business from the boat slip to the shop many times a week because most of the time they were over 20 lbs, and Spanos was not permitted to lift them. [**MD ¶ 58, ED ¶ 6, 7**].

96. From November 2020 to June 2022, Defendants required Michaels to leave the boat and move to three different places, which included two condos and one house. [**MD ¶ 59, 63, 66, ED ¶ 3**].

97. The first condo was used in part to house another employee, Bailey Frederes, in the master bedroom, and its dock was also used by YouTubers, boaters, customers, and influencers who were visiting the condo to promote the Defendants' business. [**MD ¶ 61, 62**].

98. The house was used in part to house other employees, such as Bailey Frederes and Dylan Tubbert. [**MD ¶ 65; TD ¶ 12**].

99. While Michaels and Spanos had a joint personal bank account, all control of that account was maintained by Spanos. [**MD ¶ 68**].

100. Spanos required Michaels to pay the rent on the slip, condos, and house from the business account and would tell her to "pay out of this account". [**MD ¶ 69**].

101. If there was not enough money in the account for rent, Spanos required Michaels to use her own money from her alimony or savings. [**MD ¶ 69**].

102. Spanos instructed Michaels to only make specific purchases from that joint account for business purposes, and he required that she not pay herself anything. [**MD ¶ 70**].

103. Spanos instructed Michaels to pay her personal car insurance from the joint account, as her car was used extensively by the Defendants' business for moving tools, materials, and shipments, and was also loaned to other employees and influencers. [**MD ¶ 72**].

104. Without Spanos's express approval, Michaels was not allowed to take or move money from the joint personal account. [**MD ¶ 68**].

105. Michaels was not allowed by Spanos to use any discretion concerning the funds in the joint personal account. [**MD ¶ 73**].

106. Michaels was never paid correctly for the hours she had to work, the tasks she was required to do, or the wages that Defendants owed her. [**MD ¶ 54**].

107. Because he saw it himself, Spanos knew the work that Michaels was doing for Defendants. [**SpanDepo p. 59 ¶ 5-8**].

108. Spanos testified that Michaels was responsible for shipping boxes, which included printing and attaching labels. [**SpanDepo p. 59 ¶ 12-13**].

109. Spanos assigned Michaels duties for SeaWater Pro, such as filming for YouTube and photo marketing. [**SpanDepo p. 56 ¶ 1-5**].

110. Spanos traveled for business and attended boat shows away from the company. [**SpanDepo p. 20 ¶ 1-3**].

111. Spanos testified that paying employees may have been another of Michaels' duties. [**SpanDepo p. 26 ¶ 1-5**].

112. According to Spanos's testimony, Michaels was responsible for the SeaWater Pro Facebook page. [**SpanDepo p. 55 ¶ 2-6**].

113. Spanos created content for YouTube where Michaels was featured and was under his supervision. [**SpanDepo p. 55 ¶ 22-23**].

114. Spanos held the camera, and Michaels did what he told her. [**Span Depo p. 56 ¶ 4-5**].

115. Spanos recalled Michaels typing invoices, speaking to and entertaining customers, and working the SW booth. [**SpanDepo p. 67 ¶ 11 – p. 68 ¶ 9**].

116. Spanos took photographs of Michaels with SW equipment in order to market SW. [**SpanDepo p. 71 ¶ 5-7**].

117. Spanos testified that Michaels was behind the front desk at SW as shown in the body camera footage video from the Fort Lauderdale Police Department where he was placed in handcuffs. [**SpanDepo p. 82 ¶ 13-14**].

118. Spanos agreed that he did not pay Michael's any wages. [**SpanDepo p. 94 ¶ 9-13**].

119. In all the documents Defendants produced to Plaintiff, Spanos was only able to identify one of Michael's own bills paid out of their joint account, being the car insurance. [**SpanDepo p. 96 ¶ 1-6**].

120. Spanos could not state with certainty that Amazon purchases were Michaels' personal expenses. [**SpanDepo p. 105 ¶ 10-12**].

121. Spanos always stated he was going to pay Michaels, anytime she addressed it to him, and he would be too tired or change the subject, and she was never properly paid for any work performed for Defendants. [**MindyDepo p. 90 ¶ 7-18**].

122. Michaels filed her Lawsuit against Defendants for Violations of the FLSA on June 7, 2024. [**ECF No. 1**].

Respectfully submitted,

Koz Law, P.A.
800 East Cypress Creek Road Suite 421
Fort Lauderdale, Florida 33334
Tel:   (786) 924-9929
Fax:   (786) 358-6071
Email: dc@kozlawfirm.com

_____
Dillon S. Cuthbertson, Esq.
Florida Bar No. 1056382