UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

    Plaintiff,

v.

SEAWATER PRO, LLC, AND
MICHAEL SPANOS,

    Defendants.
_____/

# DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

The threshold issue for the Court's determination is whether the Plaintiff was a non-exempt employee of the Defendants, SeaWater Pro, LLC ("SeaWater"), and Michael Spanos, because the FLSA and FMWA only apply to non-exempt employees. 29 U.S.C. §§ 206-207. Once the Court determines that the Plaintiff was not an employee, her claims under the FLSA and the FMWA necessarily fail, and the Court does not need to proceed further. Although brought under the FLSA and FMWA, the Plaintiff's resort to litigation in this Court is the type of weaponized litigation tactics the Fourth Circuit Court of Appeals indicated to be inappropriate following the dissolution of a domestic partnership in *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007). Determining that the Plaintiff was not an employee entitled to minimum wages is supported by the Plaintiff's deposition and the attestations she made in her Declaration. [ECF No. 58-1, 60]. If the Court were to find the Plaintiff was an employee, then her argument against the application of the credits against wages under *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), are misdirected, considering the Defendants' entitlement to credits against wages as provided in 29 U.S.C. §203(m) and as approved in *Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1320 (11th Cir. 2024). In denying summary judgment for the Plaintiff, the Court should enter summary judgment for the Defendants.

## II.  THE FACTS DON'T SUPPORT PLAINTIFF'S CLAIMS

The Plaintiff in this case concedes that she was not an employee in the facts she offered purportedly in support of her Motion for Summary Judgment. [ECF No. 58.][1] The Plaintiff attests to providing integral financial and other support to the Defendants' fledgling business by virtue of her contributions, which ranged from financial support to Mr. Spanos to helping him with his business and professional endeavors while they were in a romantic relationship. *See, id.* By attesting to the combination of the following facts, the Plaintiff confessed to not being an "employee" entitled to minimum wage:

- working with Mr. Spanos in the business from day 1. [ECF No. 58 at ¶4]
- infusing "capital that would cover the expense of the Defendants when they themselves could not pay those" [ECF No. 58-2 at ¶7]
- storing work items at the residence (vessel) she owned and on which the parties lived [ECF No. 58 at ¶32]
- engaging in production duties that included production, order fulfillment, and inventory management. [ECF No. 58 at ¶¶6, 9, 10]
- promotional duties that included "facilitat[ing] partnerships with online personalities", creating social media videos, working at booths, and marketing the business. [ECF Nos. 58 at ¶¶14, 15, 18]
- performing managerial duties such as human resources, negotiating with vendors, and marketing [ECF No. 58 at ¶¶9-10, 14-15]
- utilizing the access to the Defendants' bank account and checks to write checks to pay vendors, suppliers, and their other employees. [ECF Nos. 58 at ¶¶20-22; 58-1 at ¶48.]

---

[1] The Plaintiff's Declaration is filled with unsubstantiated conclusions about being compelled, required, or controlled by Mr. Spanos. [ECF No. 58-1 at ¶¶14, 22, 27-36, 41-45, 48, 56, 58-62, 69-72]. The Plaintiff does not provide any testimony (or other evidence) about what Mr. Spanos said or did that would result in her taking or refraining from any action, or being compelled, required, or controlled. While she may have felt she was compelled, required, or controlled, her feelings are not the type of affidavit evidence that is made on "personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As recognized in *Jacoby v. Dunn*, 2024 U.S. Dist. LEXIS 115574, at *10 (M.D. Ala. July 1, 2024), the Eleventh Circuit interprets Rule 56(c)(4) to limit admissible affidavit testimony to what is "based on personal knowledge rather than information, feelings, or belief." (citing *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002); and quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) (finding statement made "[t]o the best of [a plaintiff's] belief and knowledge" insufficient to establish a genuine issue of material fact because the statement was not based on personal knowledge)) (collecting cases in fn. 2). Consequently, the Court must ignore and/or strike her conclusory testimony.

- having a Wells Fargo Business Banking Card in her name, which she used to pay vendors and suppliers [ECF No. 58 at ¶22]
- contributing to the living expenses of Mr. Spanos through November 2020, while allowing the Defendants to "store tools, supplies, and receive packages and orders" at their shared residence [ECF No. 58 at ¶¶30-32]
- paying her car insurance from the bank account she shared with the Defendants [ECF No. 58 at ¶41]
- sharing their living expenses in exchange for whatever work she claims to have performed because "we were a couple. It was part of our agreement as a couple." [ECF No. 59 at 200: 7-9]

The Plaintiff was not an unappreciated and unpaid employee who performed the work identified above, as she claims. Instead, she attests to having lived with Mr. Spanos, helped him personally and professionally, and stayed with him because she "was in a romantic relationship with Spanos throughout the claim period," which she described as a "seven-year relationship." [ECF Nos. 58 at ¶29; 59 at 212: 2-5.] They had an agreement, and it should not be disturbed. [ECF No. 59 at 200: 7-9]

Due to their relationship and agreement, the Plaintiff attests to having a joint bank account with Mr. Spanos. [ECF No. 58 at ¶37.] She also attests to paying other expenses, both personal and business-related, from their shared bank account. [ECF No. 58 at ¶¶40-41.] The Plaintiff testified that, unlike a run-of-the-mill employee, she co-signed the leases for her living arrangements with Mr. Spanos. [ECF No. 59 at 156-157: 21-2: "I had leases that I had co-signed for and showing that I was the emergency contact…."]. The Plaintiff accompanied Mr. Spanos on the way to, from, and during his various doctor's appointments during the workdays. [ECF No. 59 at 226-230: 24-17]. Why would an employee do all of this? The answer is that employees don't. Employees don't share bank accounts with their employers, they don't pay for their employer's living expenses, and they don't loan money to their employers. [*But* see, ECF No. 58 at ¶¶30-31, 37-41.]

In reality, the Plaintiff did not expect to be paid hourly or a salary; she enjoyed the lifestyle she had with Mr. Spanos and expected a percentage of the business. [ECF No. 59 at 95-97: 21-13]. She agreed to their arrangement. [ECF No. 59 at 200: 7-9]. The Plaintiff broke off her relationship with Mr. Spanos in June of 2022, ceased living with Mr. Spanos, and claims she "was promised "$3,000 / month for the rest of my life…" [ECF No. 58-1 at ¶36.] She then terrorized

3

Mr. Spanos and his business, at which point the payments stopped, and he obtained a restraining order against her. [ECF No. 59 at 213: 8-25]. She was unsuccessful in setting up Mr. Spanos for a domestic violence claim, resulting in her arrest and continued legal proceedings. [ECF No. 59 at 139-140: 3-20]. The Plaintiff then found herself in a financial hole, resulting in collection actions filed against her by her creditors. [ECF No. 59 at 219-223: 19-6].

Only after all of this did the Plaintiff file this lawsuit, improperly weaponizing the FLSA to feed her obsession with Mr. Spanos and bypass the restraining order that prevents her from contacting him. [ECF Nos. 58 at ¶45; 59 at 138-141: 20-5: "If I had contacted Mike any other way, I would've been in contempt of Court."].

### III. ARGUMENT

The only conclusion the Court can reach after applying the relevant law to the undisputed material facts is that the Plaintiff was *not* an "employee" for whom the FLSA or FMWA were intended or enacted to receive minimum wages. The Plaintiff was not an employee of the Defendants, a prerequisite to entitlement to minimum wages. As set forth below, the Plaintiff was the romantic partner of Mr. Spanos who claims to have contributed more to the Defendants' business than an employee, had the type of access to its finances not given to employees in small companies that lack financial controls, and who, in return, did not pay for her living expenses, car expenses, meals (at restaurants), or travels (including to Europe). The Plaintiff testified in her deposition that the reason why the Defendants paid for all of this was because "…we were a couple. It was part of our agreement as a couple." [ECF No. 59 at 200: 2-10].

**A.    The Plaintiff Was Not An Employee Of The Defendants.**

Before the Court addresses any other issue, it must first determine whether the Plaintiff was an "employee" of the Defendants, thereby entitling her to receive the minimum wages required by the FLSA and FMWA. Both statutes require "employees" to receive at least the required minimum wage. *See* 29 U.S.C. §206(a); Fla. Stat. §448.110(3).[2] Although labeled otherwise, and although she claims entitlement to minimum wages under federal and Florida law, the facts offered by the Plaintiff and those of record support a finding that the Plaintiff was *not* an "employee" of the Defendants and *not* entitled to minimum wages. The cases interpreting the FLSA and other federal

---

[2]    The FMWA is interpreted consistently with and based on the FLSA. *Llorca v. Sheriff, Collier Cty.*, 893 F.3d 1319, 1328 (11th Cir. 2018); and Fla. Stat. §448.110(3). Consequently, subsequent references will be limited to the FLSA and not to the FMWA.

statutes using the same or similar definitions of "employee" and "employer" require the Court to determine that the Plaintiff was a "partner" who lived off the business and was not an "employee" who also was entitled to receive minimum wages as well. Once the Court determines that the undisputed material facts establish that the Plaintiff was not an "employee" entitled to minimum wages under the FLSA or FMWA, the Plaintiff's claims fail, and summary judgment must be entered for the Defendants.

    1.    <u>The FLSA does not consider a romantic partner who claims to have contributed to her partner's growing business, with access to its finances, and while living off its successes, an employee entitled to minimum wages once their relationship ends.</u>

The FLSA was not designed to categorize everyone claiming to have worked for another as an employee. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 149, 67 S. Ct. 639, 640 (1947) ("The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."). In this case, the Plaintiff testified in deposition that she worked for years without ever demanding or requesting payment. [ECF No. 59 at 141-2: 16-22]; *compare Alperstein v. Irvin B. Foster & Sons Sportswear Co.*, 193 F. Supp. 161, 162 (E.D. Pa. 1961) (finding the plaintiff not to be an employee of the defendants under the FLSA, in part, because "Plaintiff testified that he worked several weeks on defendant's premises without ever receiving any remuneration whatsoever, and without ever demanding payment from any of defendant's officers. Such conduct does not support plaintiff's position that he was an employee of defendant."). The Plaintiff in this case did not work expecting payment as an employee, but as Mr. Spanos's romantic partner, put in work based on their "agreement" for Mr. Spanos to pay for her living arrangements and lifestyle and, as she contends, her expectation of receiving a portion of the proceeds once Mr. Spanos sold the business. [ECF No. 59 at 143: 1-18; 200: 7-9]. Courts have routinely found that the FLSA does not apply to these arrangements under strikingly similar fact patterns.

Initially, litigants began to challenge whether the federal statutory reference to "employee" was intended to apply to partners, as reported in *Wheeler v. Hudman*, 825 F.2d 257 (10th Cir. 1987). In *Wheeler*, the Court analyzed the statutory, and "circular", definition of "employee" found in several federal statutes (including the FLSA), ultimately holding that none of the federal employment acts (including the FLSA) were intended to apply to partners. This body of law continued to evolve as additional scenarios were presented.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33154
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

The Fourth Circuit Court of Appeals eventually analyzed a factual scenario strikingly similar to the one at hand in *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007). In *Steelman*, the parties were romantic partners who lived together, worked together, shared living expenses, and then supported themselves through the business. *Id.* As the dog-grooming company in *Steelman* grew, the plaintiff acted as a supervisor, much like the Plaintiff herein claims she did. The plaintiff in *Steelman*, like the Plaintiff herein, constantly ate meals out [ECF No. 57-1 at ¶61] and used the company's account to pay all their bills [ECF No. 57-1, *passim*]. *Id.* The plaintiff in *Steelman*, also like the Plaintiff herein, claimed that she was given promises of payment that remained unfulfilled, that their relationship ended, after which she commenced a competing business and a lawsuit. *Id.*

The district court granted summary judgment to the defendants in *Steelman*, finding that the plaintiff was not an employee entitled to minimum wages under the FLSA. The Fourth Circuit Court of Appeals agreed and concluded that the FLSA was **not intended** to be used by an ex-romantic partner to require the payment of minimum wages after their relationship ends:

> But broad as the FLSA's coverage is, **the statute was not meant to be an omnibus financial relations act**, imposing a one-size-fits-all federal solution upon all sorts of human relationships **and available as a weapon upon the dissolution of all domestic partnerships** and other intimate arrangements involving shared funds and shared labor. [*Emphasis added*.]

*Steelman*, 473 F.3d at 132. The Court went on to note that the "extensive access to company funds is not the kind of privilege that employees enjoy with respect to their employers' revenue." *Id.*, at 130. Likewise, "When the plaintiff lived comfortably and exclusively off the proceeds of the business and exerted authority in disposing of its funds, we find it hard to see the barn exchanging labor for compensation that marks employment arrangements." *Id.*

Yet despite this admonition against using the FLSA as a weapon when a romantic relationship goes sour in *Steelman*, that is *precisely* what this Plaintiff herein has done to terrorize Mr. Spanos and his business, in combination with her online campaign to besmirch his reputation. [ECF Nos. 59 at 138-141: 20-5; 60 at 69: 12-25; 102-106: 3-6; 135-136: 9-17.] These acts included sharing Mr. Spanos' medical information online, disparaging him and his business, and fabricating a domestic violence claim that backfired, resulting in the Plaintiff's arrest (due to the existence of a recording of the "incident"). *Id.*

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33154
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

In determining that the FLSA was not intended to apply to the type of domestic partnership at issue herein, the Court in *Steelman* specifically addressed why the FLSA should not be interpreted to provide for the recovery by a romantic partner after a failed relationship:

> Similarly, the FLSA's objectives would not be advanced by federal interposition in the relationship in this case. Retroactively substituting the uniform federal standard tailored to the traditional workplace for the fluid and informal financial arrangement of the couple here would bear no relation to the purposes of the Act. Such an extension would not advance living conditions, given that the parties drew freely from the company's resources and lived well off them, but simply failed to conform their dealings to the FLSA framework. Nor would such an extension prevent the unfair competition that arises when businesses cut their costs by paying exploitatively low wages, as the degree of financial control the plaintiff possessed precluded such exploitation. To the extent that the parties' sharing of risk and reward created incentives for hard work and good management, this advantage amounts to fair competition, akin to the partnerships [**23] and other profitsharing arrangements that the Act evinces no intent to outlaw…."

*Steelman*, 473 F.3d at 132. No doubt, the situation *sub judice* "differs substantially from the traditional employment paradigm covered by the Act." *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993).

> In sum, the parties' financial and work arrangements cannot be categorized as mere "formal differences" from a classic framework of employment, *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32 (1961), but instead render the parties' relationship as distinct from an employer-employee relationship as the independent contractor, volunteer, and trainee relationships that are already regarded as outside the FLSA. *See Walling*, 330 U.S. at 152-53. We find the parties' business venture falls outside the FLSA because it "differs substantially from the traditional employment paradigm" and goes beyond the "bargained-for exchange of labor for mutual economic gain that occurs in a true employer-employee relationship." *Harker*, 990 F.2d at 133 (internal quotations omitted).

*Steelman*, 473 F.3d at 131. After considering the express purpose of the FLSA, as identified in 29 U.S.C. §202(a) as remedying "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," the Court in *Steelman* made the following pronouncement which is equally applicable herein:

> Similarly, the FLSA's objectives would not be advanced by federal interposition in the relationship in this case. Retroactively substituting the uniform federal standard tailored to the traditional workplace for the fluid and informal financial arrangement of the couple here would bear no relation to the purposes of the Act. Such an extension would not advance living conditions, given that the parties drew freely from the company's resources and lived well off them, but simply failed to conform their dealings to the FLSA framework. Nor would such an extension prevent the unfair competition that arises when businesses cut their costs by paying exploitatively low wages, as the degree of financial control the plaintiff possessed precluded such exploitation. To the extent that the parties' sharing of risk and reward created incentives for hard work and good management, this advantage

7

amounts to fair competition, akin to the partnerships and other profitsharing arrangements that the Act evinces no intent to outlaw.

473 F.3d at 132.

The Plaintiff claims that she was an integral cog in the Defendants' wheel business by virtue of her contributions, both economic and non-economic. Considering her testimony and facts, as well as the other undisputed facts of record, it is clear that the Plaintiff was not an "employee" who relied on the receipt of a wage from the Defendants but shared in what it took to grow the business and then, along with Mr. Spanos, reaped the benefits of the lifestyle it provided.

When encountering similar situations involving parties who were engaged in a romantic relationship, worked together, shared in the lifestyle created by their work, and then broke up, the District Courts are nearly (if not totally) unanimous in denying relief by finding the claimant was not an "employee", that the FLSA does not apply, that no employment relationship existed, and that no minimum wages were due as a result thereof. *See e.g.*, *Hua Jing Gao v. L&L Supplies, Inc.*, No. 2024 U.S. Dist. LEXIS 226108 (S.D.N.Y. Dec. 12, 2024); *Tingting Wang v. China Wok*, 2020 U.S. Dist. LEXIS 171350 (N.D. Ohio Sep. 18, 2020); *DeVore v. Lyons*, 2016 U.S. Dist. LEXIS 147306 (N.D. Tex. Oct. 25, 2016); *Escobar v. GCI Media, Inc.*, 2009 U.S. Dist. LEXIS 52719 (S.D. Fla. June 22, 2009); and *Godoy v. Rest. Opp. Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186 (S.D.N.Y. 2009). More recently, the District Court for the Middle District of Florida held that the FLSA did not apply to require payment of minimum wages by finding that the plaintiff was a partner, not an employee, in *Hawrych v. Nutra-Luxe M.D., LLC*, 2022 U.S. Dist. LEXIS 73316 (M.D. Fla. Apr. 21, 2022). Based on this overwhelming authority, the Plaintiff is not entitled to a summary adjudication that she was an "employee" entitled to minimum wages, but should be subjected to an adverse decision in favor of the Defendants by finding that no employment relationship existed.

   2. <u>Determining whether Plaintiff was an employee entitled to minimum wages required by the FLSA does not involve the application of the economic realities test.</u>

The Plaintiff improperly presumes that the Court must apply the economic realities test discussed in *Scantland v. Jeffry Knight, Inc.*, 724 F.3d 1308 (11th Cir. 2013), to determine whether she was an "employee" of the Defendants. The Plaintiff did not analyze whether the economic realities test from *Scantland* applies to her claims because doing so would be suicidal. The issue here is not whether the Plaintiff was an independent contractor or an employee, which would require applying the economic realities test from *Scantland*. The Plaintiff's role, based on the undisputed material

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33154
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

facts, establishes she was neither an employee nor an independent contractor. Since the Plaintiff does not allege she was (mis)classified as an independent contractor, the Court must find that the economic realities test from *Scantland* does not apply, as has been the case in similar factual scenarios, if not the same as those here.

The starting point for this analysis is cases controlling precedent from within this Circuit. Although the Eleventh Circuit has not decided whether the FLSA applies to partners, or whether the economic realities test from *Scantland* is applied to make this determination, it has determined that under Title VII, a "partner" of a business was not an "employee" entitled to relief under Title VII in *Hishon v. King & Spalding*, 678 F.2d 1022 (11th Cir. 1982). The Eleventh Circuit reached the same conclusion in *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398 (11th Cir. 1991), again finding that a "partner" was not an "employee" entitled to relief under the ADEA. *Hishon* and *Fountain* are significant because the Eleventh Circuit analyzed the definition of "employee" under Title VII, the ADEA, which are identical to the definition provided by the FLSA. Each of the Acts defines "employee" as "an individual employed by an employer". *See* 42 U.S.C. §200e(f); 29 U.S.C. §203(e)(1); and 29 U.S.C. §630(f)). Therefore, in construing with language that is the same in statutes, this Court must assume the Eleventh Circuit intended for its decisions in *Hishon* and *Fountain* to apply equally in cases brought under Title VII, the ADEA, and the FLSA. *See Santos v. Healthcare Rev. Recovery Grp., LLC.*, 90 F.4th 1144, 1154 (11th Cir. 2024) (in discussing statutory interpretation, "we consider how we've read similar language in other federal statutes.") Not surprisingly, how language from one statute, such as the ADEA, is interpreted guides how courts treat similar (or identical) language from another.

> We regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another. *See, e.g.*, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 60 L. Ed. 2d 609, 99 S. Ct. 2066 (1979); *Lorillard v. Pons*, 434 U.S. 575, 584, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978); *Wheeler v. Hurdman*, 825 F.2d 257, 263 (10th Cir. 1987); *Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793, 796 (2d Cir. 1986).

*Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997).

In *Hishon*, the Eleventh Circuit made clear that it would not consider a partner to be an employee when it stated unequivocally, "the Seventh Circuit has announced its hesitation to equate partners with employees. We have the same reluctance." *Id.*, at 1028. The Court proceeded to

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33154
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

hold that, "Title VII does not apply to those decisions dealing with the formation of partnerships." *Id.*, at 1030 (11th Cir. 1982).

Later, in *Fountain*, the Eleventh Circuit indicated that analyzing "partner or employee" was dependent upon the circumstances presented and, more specifically, "on the actual role played by the claimant in the operations of the involved entity and the extent to which that role dealt with traditional concepts of management, control, and ownership." *Id.*, at 1401.

To distinguish between an "employee" entitled to the protections of the ADEA and a "partner" who is not in in *Fountain*, the Eleventh Circuit employed a modified test in which it ignored the labels assigned by the parties and, determined as a matter of economic reality, that "the evidentiary value of a label is extremely limited, the economic reality of the role played being a more probative indication." *Id.* The Eleventh Circuit distinguished the plaintiff's role from what "employees" typically do, how they act, and how they are paid, to determine that the plaintiff was a "partner" and not an employee entitled to recovery under the ADEA, ultimately affirming the district court's entry of summary judgment for the employer. *Id.*

This Court would not be the first in the Eleventh Circuit to reject the application of the *Scantland* economic realities test in an FLSA case when the issues did not involve the alleged misclassification of an independent contractor. Several years after the Eleventh Circuit decided *Fountain*, this Court issued its decision in *Escobar v. GCI Media, Inc.*, 2009 U.S. Dist. LEXIS 52719 (S.D. Fla. June 22, 2009), finding that the economic realities test is <u>*not*</u> appropriately used to determine whether a romantic (or business) partner was an employee:

> The difficulty with applying the economic reality factors, however, "is that they largely arise from cases involving alleged independent contractors." *Wheeler*, 825 F.2d at 269. To determine whether an independent contractor is an employee, the court applies factors that help decipher whether the employee owns his own enterprise or is a part of the employer's enterprise. These factors "are useless for drawing lines between people who are part of the same enterprise." *Id.* at 272.
>
> For example, the crux of the economic realities test focuses on whether the employee is economically dependent on the employer. But in the context of a partnership, every partner is dependent on the business. Similarly, another unhelpful factor is whether the employer furnishes the equipment used. "It is also irrelevant in a partnership context to inquire whether the occupation requires skill" because any partner in an enterprise would be considered skilled to a certain extent. *Id*. at 272 (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832, 198 U.S. App. D.C. 93 (D.C. Cir. 1979)).

> Most importantly, regarding the control factor prevalent in most independent-contractor/employee distinctions, "the 'domination' of a partner in assignment and supervision of work, billing, share of profits, and other matters can result from a myriad of wholly practical reasons existing from time to time in any partnership." *Id.* at 273; *cf. Fountain v. Metcalf, Zima & Company, P.A.*, 925 F.2d 1398, 1401 (11th Cir. 2009) (Eleventh Circuit concluded that plaintiff was a partner and not an employee eligible to sue under the Age Discrimination in Employment Act ("ADEA")).
>
> In sum, characteristics pertinent to partnerships, such as the ability to share in profits, exposure to risk, and managerial control, "introduce complexities and economic realities which are not consonant with employee status." *Steelman v. Hirsch*, 473 F.3d 124, 129 (4th Cir. 2007) (citing *Wheeler*, 825 F.2d at 275). As a consequence of these complexities, we find that the traditional factors of the economic realities test are not applicable to the particular facts of this case. Instead, the court finds that the relationship between the parties here is more similar to, and thus governed by, the modified factors considered in the partnership cases decided by the Tenth Circuit in *Wheeler*, and the Southern District of New York in *Godoy v. Restaurant Opportunity Ctr. of New York*, 615 F. Supp. 2d 186, 2009 U.S. Dist. LEXIS 42750, 2009 WL 1269262 (S.D.N.Y. May 1, 2009)

*Escobar*, 2009 U.S. Dist. LEXIS 52719, at *9.

Another critical characteristic that the Court in *Escobar* pointed to was "the fact that GCI did not fire Escobar after his relationship with defendant Glasser became" as "further support[ing] an absence of an employee-employer relationship." *Id.*, at *14. The Plaintiff, like Escobar, walked away – but not before taking and/or refusing to turn over passwords for business-related items. *Id.* Just like the plaintiff in *Escobar*, the Plaintiff claims she was asked to work from home. *Id.* In arrangements similar to those considered in *Escobar*, *Wheeler*, and *Fountain*, that one partner may have or exert control over another or that one partner claims to have worked a lot of hours does not negate the existence of the partnership:

> The same analysis holds true in the context of this particular partnership. The members of the partnership each had a unique role in the enterprise. Glasser certainly had significant control over most aspects of the partnership, and Escobar had a specific technical role that he played subject to Glasser's supervision. But that level of supervision does not negate the existence of a partnership, and specifically does not mean that Escobar does not qualify for partner status.
>
> Moreover, the fact that Escobar was "on call 24/7" does not support the argument that he was an employee. To the contrary, after assessing the undisputed facts of this case, his continuous work on behalf of the partnership only supports the conclusion that he was a partner whose long hours represented his "capital contribution" to GCI. *See Godoy*, 2009 U.S. Dist. LEXIS 42750, 2009 WL 1269252 at *9.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33154
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

*Escobar*, 2009 U.S. Dist. LEXIS 52719, at *16-17. The Court in *Escobar* granted summary judgment to the defendants, finding no employment relationship existed. The same result should occur herein, as the facts are indistinguishable. Once it determines that a partnership existed, as discussed in the cases cited above, the Court must conclude that the Plaintiff was not an employee under the FLSA, was not entitled to recover minimum wages, and that summary judgment is appropriately granted to the Defendants.

       3.    <u>Mr. Spanos was not the Plaintiff's employer because she was not an employee.</u>

The FLSA considers an "employer" to be "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Absent an employer-employee relationship, the FLSA does not apply. *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). Thus, Mr. Spanos cannot be liable to the Plaintiff under the FLSA because she was not an employee; therefore, he was not her employer.

**B.**    <u>**The Defendants Are Entitled To The Credits Permitted By The FLSA.**</u>

The Plaintiff erroneously argues that the Defendants are not entitled to a set-off by ignoring the text of the FLSA and the law. The FLSA expressly states that "wages" include "the furnishing such employee with board, lodging, or other facilities…." 29 U.S.C. §2003(m). Although the FLSA expressly considers payment for board, lodging, and other facilities to be an acceptable way to pay an employee wages, it does not allow an employee to recover any expenses allegedly incurred in moving from one residence to another (with her boyfriend). *Id.* Likewise, the FLSA does not prohibit all setoffs; only those that would result in the employee receiving less than the minimum wage. *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974).

       1.    <u>The Defendants are entitled to the credits identified in 29 U.S.C. §203(m) toward any wages owed.</u>

Section 203(m)(1) of the FLSA "allows employers to include the reasonable cost of servicing meals, lodging, or other facilities in employee wages for purposes of the FLSA." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 (11th Cir. 1982). The FLSA allows employers to provide "meals, lodging, or other facilities" to an employee in lieu of wages. 29 U.S.C. § 203(m)(1) This provision of the Act entitles employers to lawfully "deduct from an employee's pay the reasonable cost of the employer provided housing and meals, even if that deduction results in the employee's cash pay falling below the statutory minimum." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011) (internal quotations omitted). Therefore, "[w]hen a court calculates the back wages that

12

an employee is due under the Act, the employer 'is entitled to a credit for the reasonable cost of providing meals and lodging.'" *Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1320 (11th Cir. 2024) (quoting *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir. 1982)).

The Plaintiff cites *Spears* for the proposition that credits are permitted "in an FLSA action only where the amount would not bring the paid employee's effective hourly rate underneath the minimum wage rate…." [ECF No. 56 at 19.] The Plaintiff's representation to the Court regarding the holding of *Spears* is as troubling as it is misleading. The Eleventh Circuit allowed the employer to take the credits at issue in remanding the case to the District Court, and did not direct that an employer could not take a credit against the minimum wages claimed.

The cost to the employer for providing the food and lodging is an acceptable means of establishing the wage credit to which the employer is entitled. *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983). Applying these principles to the case at bar, the Defendants are entitled to a credit of $77,575.00 for the payments they made towards the Plaintiff's food, lodging, and other expenses, more than satisfying any minimum wages the Plaintiff could recover.

The record evidence in this case is that the Defendants paid for all of the Plaintiff's living expenses from 2019 through the time relevant to this lawsuit. Once the Plaintiff started living with Mr. Spanos here in Florida, he paid for all security deposits, rents, utilities, moving fees, storage fees, groceries, meals, travel, flights, vacations, insurances, and transportation expenses. [ECF No. 57-1 ¶¶13-15). Monthly rents for their living arrangements increased from $850 to $880 per month for a boat slip to paying the condo and boat slip. [ECF No. 57-1 ¶¶13-15.] When the parties then moved into a condo, Seawater paid the monthly rent, including the boat slip at $2,400 without the boat slip and ($3,300.00 with the boat slips) per month, to the $4,000 per month for their rental home and boat slips, and to their oceanfront apartment at $5,000 per month. [ECF No. 57-1 ¶¶13-15].

The Plaintiff testified that she and Mr. Spanos ate most of their meals at restaurants, and again, Mr. Spanos paid every time they ate at a restaurant. [ECF No. 57-1 ¶61]. Plaintiff conceded that she would have had to pay for her own living expenses if Mr. Spanos had not. [ECF No. 57-1 ¶17].

The Plaintiff nonetheless pursued this lawsuit against Mr. Spanos and his company without considering the amounts they paid on her behalf and directly to her. [ECF No. 59 at 200: 2-6]. In

13

sum, the Defendants paid $85,175.00, well eclipsing any reasonable amount the Plaintiff could recover as unpaid minimum wages for performing the sporadic "work" during the time relevant to this lawsuit. [ECF No. 57-1 ¶¶13-15].

      2.    <u>The Plaintiff is not entitled to reduce the credits identified in 29 U.S.C. §203(m)(1) by unsubstantiated claims of living expenses she claims to have incurred.</u>

The Plaintiff attempts to minimize the credits to which the Defendants are entitled to take against her wages under 29 U.S.C. §203(m)(1) by relying on non-wage expenses she claims to have incurred because she was "required by Defendants to move from the boat she purchased" to living in various waterfront apartments. [ECF No. 56 at 19.] The FLSA specifically limits the liability of an employer to paying a prevailing employee to recovering "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b). The FLSA does not permit an employee to recover the type of consequential damages the Plaintiff herein seeks to recover (such as moving expenses or rent). The moving expenses the Plaintiff claims to have incurred while working for the Defendants, and which she does not indicate had any connection to the work she claimed to have performed for the Defendants, are not within the limited damages the FLSA entitles employees to recover. *C.f.*, "*Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002) ("Workers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage."); and 29 C.F.R. §531.35.

      3.    <u>The Plaintiff cannot recover money she acknowledges receiving for her work.</u>

The Plaintiff attests to receiving $6,000 "after she left the Defendants' business." [ECF No. 58 at ¶25]. She further attests to receiving $3,000 via her son, also after leaving the Defendants' business. [ECF Nos. 57-1 ¶54; 58 ¶26]. She admitted in deposition to receiving $7,600 during her relationship with Mr. Spanos. [ECF No. 57-1 ¶¶48-54]. If the Court finds that the Plaintiff is entitled to any wages, then the Defendants are entitled to an offset for these payments.

14

## IV.  CONCLUSION

The Plaintiff is not entitled to partial summary judgment because she was not an "employee" and therefore not entitled to receive, in addition to her living expenses, travel, and lifestyle support while with Mr. Spanos, the minimum wages required by the FLSA or FMWA. The Plaintiff's testimony, both in deposition and by affidavit, establishes that she was the romantic partner of Mr. Spanos. In this capacity, according to the Plaintiff, she lived and worked with Mr. Spanos while supporting him and his fledgling business. The Plaintiff claims to have continued working with Mr. Spanos even after his business became successful enough to support both of them. If the Court were to find the Plaintiff to be an "employee" entitled to minimum wage, then it must determine that the Defendants are entitled to a credit against any wages owed from their payment of the Plaintiff's living expenses (as an acceptable method of paying "wages" expressly permitted by 29 U.S.C. §203(m)(1)).  It must also reduce any amounts owed to the Plaintiff by the money she attests to having accepted after she left Mr. Spanos and his business, as permitted by law.

Respectfully submitted this 25th day of July 2025,

> s/ Brian H. Pollock, Esq.
> Brian H. Pollock, Esq. (174742)
> brian@fairlawattorney.com
> Gaelle W. Colas, Esq. (1006811)
> gaelle@fairlawattorney.com
> FAIRLAW FIRM
> 135 San Lorenzo Avenue, Suite 770
> Coral Gables, FL 33146
> Telephone: (305) 230-4884
> *Counsel for Defendants*