UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

  Plaintiff,

v.

SEAWATER PRO, LLC, AND
MICHAEL SPANOS,

  Defendants.

_____/

# DEFENDANTS' RESPONSE TO THE PLAINTIFF'S STATEMENT OF MATERIAL FACTS

  Defendants, Seawater Pro, LLC and Michael Spanos, pursuant to Local Rule 56.1, respond to the Plaintiff's Statement of Material Facts [ECF No. 58], as follows:

### *Preliminary Statement*

  Defendants respond to Plaintiff's Statement of Material Facts [ECF No. 58] by indicating whether each additional fact is "disputed" or "undisputed" for purposes of Plaintiff's Motion for Summary Judgment [ECF No. 56], only. The facts established through live trial testimony may be different from the facts presented as "undisputed" for purposes of responding to the present motion. See *Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

## **RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed.[1] "The determination of an individual's employment status under the FLSA is a question of law." *Axel v. Fields Motorcars of Fla., Inc.*, 711 F. App'x 942, 944 (11th Cir. 2017) (citing *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015)). Legal conclusions are not facts, and as such, no citation to the record evidence is required. To the extent a response is required, the Plaintiff attested that any work she performed was done in exchange for the payment of her meals, rent, living, car, travel, and other expenses because "we were a couple. It was part of our agreement as a couple." [ECF No. 59 at 200: 7-9]. The Plaintiff exhibited the hallmarks of a partner in the business, which included the following:

   a. engaging in production duties that included production, order fulfillment, and inventory management. [ECF No. 58 ¶¶6, 9, 10]

   b. Performing promotional duties that included "facilitat[ing] partnerships with online personalities", creating social media videos, working at booths, and marketing the business. [ECF Nos. 58 ¶¶14, 15, 18]

   c. performing managerial duties such as human resources, negotiating with vendors, and marketing [ECF No. 58 ¶¶9-10, 14-15]

---

[1] Rule 56(c)(4) requires summary judgment evidence be based on "personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As recognized in *Jacoby v. Dunn*, 2024 U.S. Dist. LEXIS 115574, at *10 (M.D. Ala. July 1, 2024), the Eleventh Circuit interprets Rule 56(c)(4) to limit admissible affidavit testimony to what is "based on personal knowledge rather than information, feelings, or belief." (citing *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002); and quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) (finding statement made "[t]o the best of [a plaintiff's] belief and knowledge" insufficient to establish a genuine issue of material fact because the statement was not based on personal knowledge)) (collecting cases in fn. 2). Consequently, the Court must ignore and/or strike her conclusory testimony that she was an "employee" as a legal conclusion and the other statements not based personal knowledge (such as "controlled," "directed," or "required").

    d. utilizing the access to the Defendants' bank account and checks to write checks to pay vendors, suppliers, and their other employees. [ECF Nos. 58 ¶¶20-22; 58-1 ¶48.]

    e. having a Wells Fargo Business Banking Card in her name, which she used to pay vendors and suppliers [ECF No. 58 ¶22]

    f. contributing to the living expenses of Mr. Spanos through November 2020, while allowing the Defendants to "store tools, supplies, and receive packages and orders" at their shared residence [ECF No. 58 ¶¶30-32]

    g. having a joint bank account with Mr. Spanos. [ECF No. 58 ¶37.]

    h. paying other expenses, both personal and business-related, from their shared bank account. [ECF No. 58-1 ¶¶70-72]

    i. paying her car insurance from the bank account she shared with the Defendants [ECF No. 58-1 ¶72]

    j. co-signed leases for her living arrangements with Mr. Spanos. [ECF No. 59 at 156-157: 21-2: "I had leases that I had co-signed for and showing that I was the emergency contact…."].

    k. accompanying Mr. Spanos on the way to, from, and during his various doctor's appointments during the workdays. [ECF No. 59 at 226-230: 24-17]

    l. providing the boat she lived on with Mr. Spanos [ECF No. 58-1 ¶55]

    m. enjoying the lifestyle she had with Mr. Spanos, expecting to also receive a percentage of the business. [ECF No. 59 at 95-97: 21-13].

5.   Undisputed.

6.   Undisputed.

7.   Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1.

8.   Disputed, in part. Although it is undisputed that the Defendants did not pay the Plaintiff a direct hourly wage, they dispute that they did not pay her "any other metric or method of compensation while working for Defendants," by virtue of their entitlement to a credit for the living expenses they paid to her [cite here from our Stmt of facts, and depo testimony of Michaels], for which the Defendants are entitled to a credit under 29 U.S.C. §203(m)(1). In addition, the Plaintiff enjoyed a lifestyle funded almost entirely by the Defendants' business based on the payments she

acknowledges it made for her living arrangements, meals, travel, and lifestyle. [ECF No. at 59; 200: 2-9).]

9. Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. At best, the Plaintiff's affiant, Mr. Tubbert, attested to witnessing the Plaintiff performing tasks without indicating why she performed them. [ECF No. 58-3.] Mr. Tubbert testified that while Mr. Spanos put the Plaintiff "in charge of" certain tasks or duties, which allowed the Plaintiff to determine how and when she would perform any task or duty she undertook, such as liaising with YouTubers and paying actual employees. *Id.*, ¶¶16-18.

10. Disputed. Although the Plaintiff claims Mr. Spanos "required" her to perform certain tasks or work, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11]. At best, the Plaintiff's affiant, Mr. Tubbert, attested to witnessing the Plaintiff performing tasks without indicating why she performed them or whether Mr. Spanos had knowledge or permitted Michaels "to work" or "to suffer". [ECF No. 58-3.]

11. Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. Plaintiff originally testified that she worked 91 hours per week during this time in her Statement of Facts. [ECF No. 28-1]. However, at deposition, Plaintiff changed her statement and alleges that she worked from 9 a.m. to 6 p.m. or 7 p.m. Monday to Thursday and one weekend day from 9:00 a.m. to 4:00 p.m. [ECF No. 59, at 126: 14-25; at127:1-14.] Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶11; ¶13]. Plaintiff testified she ran errands during this time such as filling Mr. Spanos' prescriptions and accompanying Mr. Spanos to doctor's appointments, all items which legally are not compensable work. [ECF No. 59 at 122: 1-25; 123: 2-25].

12. Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. Mr. Spanos denied

asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶¶11, 13]. Further, Plaintiff admitted she was unable to distinguish between what she did online for personal consumption as opposed to work. [ECF No. 59, at 256-7: 25-13.]

13. Undisputed that she did not work during those time periods, or at all.

14. Disputed. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11; ¶ 13]. Further, Plaintiff admitted she was unable to distinguish between what she did online for personal consumption as opposed to work. [ECF No. 59, at256-7: 25-13.]Disputed. Mr. Spanos testified that he never asked or required the Plaintiff to work. [ECF No. 57-1 ¶¶11-12].

15. Undisputed that Plaintiff voluntarily appeared in one video with her boyfriend Michael Spanos because she happened to be around that day. [ECF No. 60, at56 ¶ 1-4]. Disputed she was "forced" or required to be in the video. *Id.* Disputed she appeared in any other videos. *Id.*

16. Undisputed.

17. Disputed. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11; ¶ 12; 13; ¶ 14; ¶ 15].

18. Disputed. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11; ¶ 12; 13; ¶ 14; ¶ 15].

19. Disputed. Mr. Spanos testified that he could not say without a doubt that which of the Amazon expenses were personal and which were for business. [ECF No. 60, at105: 10-20].

20. Undisputed that the Defendants added the Plaintiff to the bank account Mr. Spanos used to operate his business. The account was a personal account they had together before the business started and continued for business once the business was incorporated. Defendants Dispute that they required the Plaintiff to "be on the account" or to write checks to pay vendors or suppliers. [ECF No. 60, at 26, 12-22].

21. Disputed. The Plaintiff testified she was never assigned a work email by SeaWater Pro. [ECF No. 59, at25: 3-5.]

22. Disputed. Mr. Spanos testified that Michaels had a power of an attorney for that account that allowed her to go to the bank, sign and request checks. [ECF No. 60, at27; 2-7]. Disputed that the Defendants in any way limited the Plaintiff to using the Business Banking Card from Wells

Fargo to payment of vendors and suppliers when payment by check was unnecessary. [ECF No. 57-1 ¶¶18-19.] [ECF No. 60, at 26: 25; at27, 1-12].

23. Disputed. The Plaintiff could spend the money from bank account(s) to which she had access as she pleased, including using the bank debit card she had to spend the money as she wished. [ECF No. 57-1 ¶¶18-19.]

24. Disputed. The Plaintiff could spend the money from bank account(s) to which she had access as she pleased, including using the bank debit card she had to spend the money as she wished. [ECF No. 57-1 ¶¶18-19.]

25. Undisputed.

26. Undisputed.

27. Disputed. The Defendants paid nearly $100,000 in rents, utilities, moving expenses, security deposits, meals, car payments, car insurance payments, living expenses and vacations to the Plaintiff based on her status as the romantic partner of Mr. Spanos and, if she were deemed an employee, as permissible payments under 29 U.S.C. §203(m)(1). [ECF No. 57-1 ¶¶12-19.]

28. Undisputed that the Plaintiff was not an employee and so the Defendants were not required to make or maintain any records of when she started or stopped working.

29. Undisputed.

30. Undisputed that the Plaintiff owned the boat she lived on with Mr. Spanos from October 2016 to November 2020.

31. Disputed. The Plaintiff testified in deposition that Mr. Spanos paid for all their "living expenses from 2019 on other than a couple of months for the boat slip.". [ECF No. 59, at167:13-22]. Mr. Spanos confirmed the Defendants paid all of the living expenses. [ECF No. 57-1 ¶ 18].

32. Disputed. Defendants deny this allegation and Mike Spanos assets he had a storage where he had stored his supplies. [ECF No. 60, at 52: 7-13].

33. Disputed. Mr. Spanos rented a separate locker to store business items. [ECF No. 60, at 52: 7-13].

34. Disputed that Defendant Spanos required the Plaintiff to "leave the boat and move" with him. The Court must ignore the Plaintiff's belief and/or conclusion as to being "required" to move.

*See*, fn. 1. Undisputed that the Plaintiff lived with Mr. Spanos for years at 4 different properties. [ECF No. 57-1 ¶ 20-29].

35. Disputed. Defendants deny Bailey resided in the master's bedroom, but in the closet of the master's bedroom. Defendants object Bailey's residence is material.

36. Undisputed that the Defendants also paid for Bailey Frederes Dylan Tubbert, employees of SeaWater Pro, LLC, to reside with the Plaintiff and Mr. Spanos. Defendants Dispute that the Plaintiff was an employee. Furthermore, the Court must ignore the legal conclusion that the Plaintiff was "employed". *See*, fn. 1.

37. Undisputed that the Plaintiff shared a checking account with Mr. Spanos, but Defendants Dispute that Mr. Spanos had exclusive control, as a conclusion unsupported by fact, *see*, fn. 1, and based on [ECF No. 57-1 ¶¶18-19.]

38. Undisputed that the Defendants paid rent on the slip, condos, and house from the Defendants' business account. Defendants dispute that Mr. Spanos "required" the Plaintiff to make these payments as a legal conclusion. Plus, the Court must ignore the Plaintiff's statement about being "required". *See*, fn. 1.

39. Disputed. *See* Response No. 31, above; see also [ECF No. 57-1 ¶¶18-19].

40. Disputed. The Plaintiff had complete discretion over how to use the funds in the joint bank account. [ECF No. 57-1 ¶¶18-19].

41. Undisputed that the Defendants paid Plaintiff's car expenses (including payments and insurance) from the business bank account. Defendants dispute that Mr. Spanos "required" or "directed" the Plaintiff to make these payments, as she had discretion on how to use the funds in that account. [ECF No. 57-1 ¶¶18-19]. Plus, the Court must ignore the Plaintiff's statement about being "required". *See*, fn. 1.

42. Disputed. The Plaintiff had complete discretion over how to use the funds in the joint bank account. [ECF No. 57-1 ¶¶18-19].

43. Disputed. The Plaintiff had complete discretion over how to use the funds in the joint bank account. [ECF No. 57-1 ¶¶18-19].

44. Disputed. *See* Response Nos. 4 and 8, above; see also [ECF No. 57-1 ¶¶18-19].

45. Undisputed.

**Defendants' Additional Material Facts In Response**

46. Plaintiff contends anytime she was at the control and will of her boyfriend, Mike Spanos, consisted of "work" for which was compensable, including refilling her boyfriend's medication, was "work" in her role as "manager." [ECF No. 59 at 124: 19-25].

47. The Plaintiff claims that starting from September 27, 2019, to February 26, 2021, she "worked" every day because she was at Mr. Spanos' disposal. [ECF No. 59 at 124: 19-25].

48. Refilling Mr. Spanos's medication and attending his doctor's appointments was not compensable work. [ECF No. 57-1.]

49. The Plaintiff engaged in these acts for her "personal" or "volunteer" time. [ECF No. 60 at 92:3-6].

50. The Plaintiff seeks compensation for activities such as remaining "available" to Mr. Spanos. [ECF No. 60 at 34: 9-25].

51. Because they shared a car and enjoyed each other's company as couple, the Plaintiff would often accompany Mr. Spanos to work. [ECF No. 60 at 111: 10-19); ECF No. 57-1 at ¶13].

52. Since she spent the day with him, the Plaintiff accompanied Mr. Spanos to his doctor's appointments and on other errands as a passenger his in car, which was not compensable work time. [ECF No. 60 at 122: 1-25).

53. As his girlfriend, she would call to get his medication refilled and run other personal errands for Mr. Spanos, which she claims was work time. [ECF No. 60 at 123: 2-25].

54. The Plaintiff testified at deposition that she could not "draw the line" between what she did online for personal consumption and what she did for work. [ECF No. 59 at 207-7: 25-13].

55. Although the Plaintiff claims to have worked at night and was "Always" on her phone, she concedes that Mr. Spanos didn't necessarily know what she was doing on her phone at night. [ECF No. 59 at 249: 13-25].

56. While the Plaintiff alleges to have worked on social media, Mr. Spanos wasn't looking over her shoulder to see what she was doing on her cellphone. [ECF No. 59 at 252: 21-23.)

57. Likewise, the Plaintiff did not tell Mr. Spanos what she was doing on her phone at night such that he did not know or have reason to know what she was doing. ECF No. 59 at 250: 9-12: "That's true."]

58. Mr. Spanos did not instruct the Plaintiff in any of her online social media activities. [ECF No. 59 at 119: 8-24].

59. The Plaintiff agreed that Mr. Spanos had no idea how much time she claims she was "working" versus consuming social media for entertainment. [ECF No. 59 at 251: 18-24].

60. Plaintiff stated that while she performed work for the company on social media in the evening, she also used the time for personal use. [ECF No. 59 at 252: 5-7].

61. The Plaintiff admitted that "[Spanos] may not have known] how much time she spent in the evenings on social media for business vs. personal use." [ECF No. 59 at 254: 2-7].

62. When asked if there were a lot of times where Mr. Spanos did not know Ms. Michaels was conducting work on social media, Ms. Michaels responded "I said it's possible." [ECF No. 59 at 250:13-23].

63.

64. The Plaintiff testified that, unlike a run-of-the-mill employee, she co-signed the leases for her living arrangements with Mr. Spanos. [ECF No. 59 at 156-157: 21-2: "I had leases that I had co-signed for and showing that I was the emergency contact…."].

65. The Plaintiff accompanied Mr. Spanos on the way to, from, and during his various doctor's appointments during the workdays. [ECF No. 59 at 226-230: 24-17].

66. The Plaintiff and Mr. Spanos agreed that as part of their arrangement, Mr. Spanos would pay all of their living expenses from the proceeds of the business. [ECF No. 59 at 200: 7-10 "…we were a couple. It was part of our agreement as a couple."].

67. Employees don't share bank accounts with their employers, they don't pay for their employer's living expenses, and they don't loan money to their employers. [*But* see, ECF No. 58 ¶¶30-31, 37-41.]

68. The Plaintiff did not expect to be paid hourly or a salary; she enjoyed the lifestyle she had with Mr. Spanos and expected a percentage of the business. [ECF No. 59 at 95-97: 21-13].

69. The Plaintiff testified in deposition that she worked for years without ever demanding or requesting payment. [ECF No. 59 at 141-2: 16-22].

70. They had an agreement, and it should not be disturbed. [ECF No. 59 at 200: 7-9.]

71. Plaintiff did not ask Mr. Spanos for money for unpaid wages until December of 2022, months after they broke up and months after she claims to have stopped working for the Defendants. [ECF No. 59 at 115: 7-23].

72. Only now, after she filed the lawsuit seeking money from Mr. Spanos and his business, does she claim that the Defendants are not entitled to credit "for any of the expenses that he paid for you while you two were living together here in South Florida…." [ECF No. 59 at 200: 2-6.]

73. The Plaintiff wanted and expected a percentage of Mr. Spanos' business. [ECF No. 59 at 95-97: 21-13].

74. The Plaintiff expected a percentage of the proceeds once Mr. Spanos sold the business. [ECF No. 59 at 143: 1-18; 200: 7-9].

75. The Plaintiff ultimately broke off her relationship with Mr. Spanos in June of 2022, ceased living with Mr. Spanos, and claims she "was promised "$3,000 / month for the rest of my life…" [ECF No. 58-1 ¶36.]

76. She then terrorized Mr. Spanos and his business, at which point the payments stopped, and he obtained a restraining order against her. [ECF No. 59 at 213: 8-25].

77. After the Plaintiff left Mr. Spanos and his business, she engaged in an online campaign in which she would stalk Mr. Spanos, besmirch him and his business online, and improperly and unnecessarily disclosed his private and confidential medical information online. [ECF Nos. 59 at 138-141: 20-5; 60 at 69: 12-25; 102-106: 3-6; 135-136: 9-17.]

78. The Plaintiff fabricated a claim of domestic violence against Mr. Spanos, which backfired due to the existence of a recording of the incident, the result of which was the Plaintiff being arrested (not Mr. Spanos as she had intended). [ECF Nos. 59 at 138-141: 20-5; 60 at 69: 12-25; 102-106: 3-6; 135-136: 9-17.]

79. Only after all of these attacks on Mr. Spanos and his business, and after over two years, did the Plaintiff file this lawsuit, improperly weaponizing the FLSA to feed her obsession with Mr. Spanos and bypass the restraining order that prevents her from contacting him. [ECF Nos. 58 ¶45; 59 at 138-141: 20-5: "If I had contacted Mike any other way, I would've been in contempt of Court."].

80. Once the Plaintiff started living with Mr. Spanos here in Florida, he paid for all security deposits, rents, utilities, moving fees, storage fees, groceries, meals, travel, flights, vacations, insurances, and transportation expenses. [ECF No. 57-1 ¶¶13-15).

81. Monthly rents for their living arrangements increased from $850 to $880 per month for a boat slip to paying the condo and boat slip. [ECF No. 57-1 ¶¶13-15.]

82. When the parties then moved into a condo, Seawater paid the monthly rent, including the boat slip at $2,400 without the boat slip and ($3,300.00 with the boat slips) per month, to the $4,000 per month for their rental home and boat slips, and to their oceanfront apartment at $5,000 per month. [ECF No. 57-1 ¶¶13-15]

83. The Plaintiff and Mr. Spanos ate most of their meals at restaurants, and again, Mr. Spanos paid every time they ate at a restaurant. [ECF No. 57-1 ¶61].

84. The Plaintiff conceded that she would have had to pay for her own living expenses if Mr. Spanos had not. [ECF No. 57-1 ¶17].

85. The Plaintiff admitted to receiving $7,600 during her relationship with Mr. Spanos. [ECF No. 57-1 ¶¶48-54].

86. Mr. Spanos made three payments of $3,000.00 to the Plaintiff. [ECF No. 59 at 213: 8-25].

87. The Plaintiff attested to receiving $6,000 "after she left the Defendants' business." [ECF No. 58 ¶25].

88. The Plaintiff attested to receiving $3,000 via her son, also after leaving the Defendants' business. [ECF Nos. 57-1 ¶54; 58 ¶26].

89. The payments stopped once Mr. Spanos obtained a restraining order against Michaels. [ECF No. 59 at 213: 8-25].

90. The Defendants paid $85,175.00, well eclipsing any reasonable amount the Plaintiff could recover as unpaid minimum wages for performing the sporadic "work" during the time relevant to this lawsuit. [ECF No. 57-1 ¶¶ 13-15].

91. After the Plaintiff broke up with Mr. Spanos, she then found herself in a financial hole, resulting in collection actions filed against her by her creditors. [ECF No. 59 at 219-223: 19-6].

92. Only after Mr. Spanos obtained a restraining order against the Plaintiff, after she was arrested for fabricating an alleged domestic violence incident, and digging herself into a financial

hole, did the Plaintiff file this lawsuit to improperly weaponize the FLSA and feed her obsession with Mr. Spanos and bypass the restraining order that would otherwise prevent her from contacting him. [ECF Nos. 58 at ¶45; 59 at 138-141: 20-5: "If I had contacted Mike any other way, I would've been in contempt of Court."].

Respectfully submitted this 25th day of July 2025.

s/ Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Gaelle W. Colas, Esq. (1006811)
gaelle@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Telephone: (305) 230-4884
*Counsel for Defendants*