UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-60984-Augustin-Birch

[*Consent Case*]

MELINDA MICHAELS,

    Plaintiff,

v.

SEAWATER PRO LLC, and
MICHAEL SPANOS A/K/A MIKE SPANOS,

    Defendants.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff MELINDA MICHAELS ("Michaels"), through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, files this REPLY in support of her Motion for Partial Summary Judgment [ECF No. 56] as follows:

Michaels uses the following abbreviations in support of her motion:

| DOCUMENT | CITATION | ABBREVIATION |
|---|---|---|
| Defendants' Motion for Summary Judgment | ECF No. 57 | DMSJ |
| Defendants' Statement of Material Facts | ECF No. 57-1 | DSF |
| Plaintiffs' Motion for Summary Judgment | ECF No. 56 | PMSJ |
| Defendants' Response to PMSJ | ECF No. 64 | DR |
| Plaintiff's Response to DMSJ | ECF No. 63 | PR |
| Plaintiff's Response to DSF | ECF No. 63-1 | PRF |
| Plaintiff's Reply Statement of Material Facts | Exhibit A | PRS |
| Declaration of Defendant Michael Spanos | ECF No. 57-2 | SpanDec |
| Michael Spanos Deposition Transcript | ECF No. 60 | SpanDepo |
| Melinda Michaels Deposition Transcript | ECF No. 59 | MindyDepo |
| Plaintiff's Motion for Summary Judgment | ECF No. 56 | PMSJ |
| Michaels Declaration | ECF No. 58-1 | MD |
| Santhagens Declaration | ECF No. 58-2 | SD |
| Tubbert Declaration | ECF No. 58-3 | TD |
| Eisenberg Declaration | ECF No. 58-4 | ED |
| Defendants SeaWater Pro LLC's Response to Plaintiff's Requests for Admissions | ECF No. 56-5 | SWA |
| Defendant SeaWater Pro LLC's Response to Melinda Michaels' First Set of Interrogatories | ECF No. 56-6 | SWI |

| DEFINITION | ABBREVIATION |
|---|---|
| *Michaels v. Seawater Pro LLC, et al,* Case No. 24-cv-60984-Augustin-Birch, Amended Complaint [ECF No. 28] | Lawsuit |
| Plaintiff's Statement of Claim [ECF No. 28-1] | SOC |
| Defendants' Answer to the Lawsuit [ECF No. 29] | Answer |
| Fair Labor Standards Act | FLSA |
| Melinda Michaels ("Mindy"), Plaintiff | Michaels |
| SeaWater Pro LLC, Defendant | SW |
| Michael Spanos, Defendant | Spanos |
| Approximately September 27, 2019, through June 28, 2022 | Claim Period |
| SeaWater's Office | SW's Office |

I.   **PLAINTIFF WAS AN EMPLOYEE UNDER THE FLSA**

A.   **PLAINTIFF'S DECLARATION *IS* EVIDENCE THAT SHE WAS AN EMPLOYEE**

Defendants argue that Plaintiff's Declaration (**MD**) offers opinions, not facts based on "personal knowledge", citing *Jacoby v. Dunn*, asserting the **MD** is not evidence that Plaintiff was an employee. 2024 U.S. Dist. LEXIS 1145574, at *10 (M.D. Ala. Jul. 1, 2024). In *Jacoby*, an inmate made salacious allegations that he was forced into having sex with other male inmates, where he contracted HIV, that prison system was out to get white men, and that inmates were in imminent danger. 1145574, at *7. The Court found those claims to be not based on personal knowledge, instead regarded them as an opinion. Here, Plaintiff has specifically enumerated duties in her **MD** that she was required to engage in for Defendants, where she had personal knowledge of those duties because she actually performed them. **MD ¶ 9, 13, 14, 15, 24, 25, 26, 27, 28, 29, 30, 31, 32, 43**. Every day Spanos gave Plaintiff a list of duties. **MindyDepo p. 35 ¶ 14-15**. Additionally, corroborating witnesses have described the duties Plaintiff was required to engage in, as well as witnessing Defendants' directing her to complete those duties. **TD ¶ 9, 10; SD ¶ 17, 18, 22. ED ¶ 7**. Finally, Spanos himself testified as to watching Plaintiff perform the duties for Defendants and nonetheless did not pay her wages. **SpanDepo p. 59 ¶ 5-8, p. 94 ¶ 9-13.** Spanos further testified that a large portion of business was from advertising on social media, and Plaintiff began doing SW's social media in early 2018 (**SpanDepo p. 55 ¶ 2-6, p. 73 ¶ 5-20**); that he supervised Plaintiff during YouTube filming (**SpanDepo p. 55, ¶ 22-23**); that he told Michaels what to do as he filmed and she arranged items for the video (**SpanDepo. p. 50 ¶ 23-25**); that she had to pose for marketing pictures (**SpanDepo p. 51 ¶ 2-9**); and that she was responsible for shipping boxes, which included printing and attaching labels (**SpanDepo p. 59 ¶ 12-13**). There is no question of Defendants' supervision, control, and direction exercised over Plaintiff, where they

have admitted such themselves. Therefore, Plaintiff's **MD** is not offered as an opinion but based on fact and personal knowledge. Therefore, under *Jacoby*, Plaintiff's Declaration is proper evidence she was an employee of Defendants.

### B. DEFENDANTS HAVE NO BASIS AS TO WHAT *ARE* EMPLOYEE DUTIES

Defendants further argue that because Plaintiff had a joint *personal* bank account with Defendant, was required to be a *signer* on the business banking account, was required to front expenses for Defendants whenever the Defendant did not have a check on hand (some of which were later reimbursed (**MindyDepo p. 226 ¶ 2-23**.)), and was required to attend doctors' appointments with Spanos, it automatically makes Plaintiff a non-employee. **DR p. 3**. However, Defendants offer no authority to support any of their assertions. It's nonsensical to allege that employees cannot be a signer on a business bank account, where they are required to write checks for the business. Similarly, it's nonsensical to allege that an employee cannot be compelled to attend a doctor's appointment with the President of Company, while simultaneously be required to work in the car ride to/from those appointments taking and making calls at his direction (**MindyDepo p. 122 ¶ 3-5**). It's further nonsensical to allege that an employee could not be required to fill prescription medication for the President of the Company as part of her job (**MindyDepo p. 125 ¶ 16**). Luckily, the Court efficiently evaluates what *does* make sense through a totality analysis under the FSLA.

### C. ROMANCE DOES *NOT* INVALIDATE AN EMPLOYEE RELATIONSHIP

Defendants offered a total of two cases from the Eleventh Circuit to support their argument that romantic partners were not employees under the FLSA. As cited in **PMSJ**, and now Defendants also cite, *Escobar v. GCI Media*, the Court used the *Wheeler* test from the Tenth Circuit in its analysis of employees v. partners for FLSA compensation determination. In *Escobar*, the

4

Plaintiff moved into a general partner role of an advertising and PR firm. He chose the projects he wanted to work on for a percentage rate of the profit, attended partner meetings, and held himself out to be a partner. The Court cited that under *Wheeler*, where the Plaintiff was given the opportunity to share in the profits of the company, he assumed the risks of loss and liabilities, and where greater profits were generated Plaintiff was given salary raises, he was a partner. 2009 U.S. Dist. LEXIS 52719, at *13 (S.D. Fla. Jun. 22, 2009). Defendants also cite *Hawrych v. Nutra-Luxe M.D., LLC*, where an entrepreneur entered into a valid contract with a plastic surgeon divesting him a 10% ownership interest in a cosmetics company. After the Dr. was denied his promised 10% sale proceeds he sued under the FLSA. The Court determined that the actions of the Dr. were those of a stakeholder, not an employee, by looking at the economic realities of the relationship. The Dr. consistently worked for sixteen years anticipating a big 10% payout at the end, and thus his uncompensated work was justified; he further held himself out to be an employee, incorporated his title into the trademark of the company and represented the company at business meetings. 2022 U.S. Dist. LEXIS 73316 (M.D. Fla. Apr. 21, 2022).

    Defendants cite *outside* the Eleventh Circuit and rely heavily on the Fourth in a case distinguished by Plaintiff in the **PMSJ** (*Steelman v. Hirsh*), to argue that the FLSA was not intended to be used by an ex romantic partner to require payment of minimum wages after their relationship ends. 473 F.3d at 132. *Steelman* illustrated where parties took on the same risks and rewards, and drew freely from the company's resources, and where Plaintiff had a great degree of financial control, it precluded exploitation of Plaintiff as a worker/employee. *Id.* Defendants cite even further *outside* the Eleventh Circuit to *Hua Jine Gao v. L&L Supplies, Inc.,* where married spouses were freely able to withdraw and enjoy money from the joint business bank account, there was no employee relationship. 2024 U.S. Dist. LEXIS 226108, at *14 (S.D. N.Y. Dec. 12, 2024);

5

*Tingting Wang v. China Wok,* holding a spouse was not an employee where she used money from the business to pay for a trip to Vegas, had credit cards in her name paid for with business proceeds. 2020 U.S. Dist. LEXIS 171350, at *9 (N.D. Ohio Sep. 18, 2020)(also holding that the Sixth allows a FLSA plaintiff's deposition testimony alone to be sufficient to defeat the employer's summary judgment motion; *see* ¶ A above, deepening the contradiction within Defendants' argument); *DeVore v. Lyons*, where a girlfriend testified she helped her boyfriend for eighteen months without compensation because she wanted *him* to be successful, she was not an employee. 2016 U.S. Dist. LEXIS 147306 (S. D. Tex. Oct. 25, 2016)(also using the economic realities test, and finding Defendants' definitions of "volunteer", "helper" or "office person" unavailing and non-determinative under the FLSA); and *Godoy v. Rest.*, (does not address spouses or romantic partners) held that co-workers at a restaurant that gained equity in, assumed the risks of loss and liabilities of the venture, and had the opportunity to share in its profits were not employees. 615 F. Supp. 2d 186, at *192 (S.D. NY. May 1, 2009). None of the cited cases share factual equivalents with Plaintiff and Defendants, instead they highlight how vastly different the facts here are here.

While *Escobar* and *Hawrych* ultimately did not find an employment relationship under the FLSA, the legal tests they applied support the conclusion that such a relationship exists in the present case. As stated in **PMSJ**, Plaintiff did not assume any risk of Defendants' business as she was not: legally named on the business, legally tied to the business, or have any financial ties to the business (being a *signer* on a business banking account, does not a partner make). Plaintiff had no ability to make any decision related to the business organization, finances, or certainly profit or losses. [**MD ¶ 48-50; TD ¶ 18**]. Plaintiff had no ability to share in the profits of the business as she was directed by Spanos, "you can write out checks, but not to yourself" (**MD ¶ 51**), Spanos never allowed Plaintiff to take money for herself at her own discretion at any time (**MD ¶ 73,**

6

**MindyDepo p. 201 ¶ 16-25**), that if she had taken anything out of any of the joint accounts, it would have been considered *theft* (**MindyDepo p. 202 ¶ 2-7**), and all partnership assets were Defendants, not Plaintiffs. Furthermore, Plaintiff had no ability to share in management, and there was no partnership agreement. In fact, Defendants have never raised partnership as an affirmative defense (and it should be waived at this stage of litigation). Plaintiff was directly supervised and controlled by Spanos on all matters on a daily basis. **MD ¶ 10; SD ¶ 14-15; TD ¶ 16**. Every day Spanos gave Plaintiff a list of duties. **MindyDepo p. 35 ¶ 14-15**. Plaintiff expected and demanded payment for the hours worked and duties performed and did not receive it from Defendants. **MindyDepo p. 201 ¶ 1-3**. Spanos told Plaintiff he was going to pay her an hourly wage, which she never received. **MindyDepo p. 200 ¶ 7-24**. Plaintiff demanded payment several times throughout her employment with Defendants. **MindyDepo p. 207 ¶ 24 – p. 208 ¶ 12**. Every time she was required to give out a payroll check, she would say to Defendants "where's my money" and "what am I making out of this" yet continued working for Defendants because of their promise to pay, and she "believed in [him]". **MindyDepo p. 209 ¶ 9-21**. Plaintiff's ongoing complaints about her compensation led Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Plaintiff was told by Defendants that she would get paid, kept asking Spanos year after year, and trusted Spanos that he would pay, which he did not. **MindyDepo p. 210 ¶ 3-19**. The agreement was always for Plaintiff to be paid an hourly wage (*Id.* **p. 200 ¶ 7-24**), which she never received (**SpanDepo p. 94 ¶ 25-2**), not an agreement to be a partner of the business. Under *Escobar* and *Hawrych*, where Plaintiff did not hold herself out as an owner or partner, was never divested a percentage of the company (**MindyDepo p. 95 ¶ 21 – p. 96 ¶ 3**), did not freely share in the profits and losses, was only allowed to pay *one* "personal expense" from Defendants' proceeds being her car insurance because the business utilized Plaintiff's personal vehicle as they saw fit by

7

loaning it to other employees, influencers, and customers (**MindyDepo p. 71 ¶ 7-23, SpanDepo p. 96 ¶ 1 – p. 98 ¶ 9**), was never given salary raises (she was paid nothing at all, **SpanDepo p. 94 ¶ 9-13**), the *Wheeler* partner test, as well as the economic realities test illustrate an employee relationship.

Defendants make one final point as a "critical characteristic" under *Escobar*, that where Defendants in that case did not fire Plaintiff after their relationship ended, it supported an absence of an employee-employer relationship. **DR p. 11 ¶3**. However, Spanos testified that when Plaintiff was required to work from home with him at night during the later part of her employment he controlled Plaintiff's ability to go to warehouse with the other employees, and that in those weeks, she was "prohibited" from entering the warehouse. **SpanDepo p. 72 ¶ 2-7**. Prohibiting an employee from entering the Defendants warehouse does not a partner make. Furthermore, after Spanos returned from a trip to Greece alone with Plaintiff's niece (**MindyDepo p. 102 ¶ 16-19**), Plaintiff was constructively fired from SW where Spanos utilized local law enforcement to do the firing for him. Spanos had Plaintiff arrested and obtained a no-contact order, which legally barred her from returning to work. While there was no formal letter of termination, Defendants' actions effectively barred Plaintiff from returning to the workplace and halted the ongoing work she had been required to perform for their benefit.

Defendants also note that in *Escobar,* where the Plaintiff was claiming to have worked 24/7 on call, the Court found to be sweat equity in the partnership context, where the Plaintiff had a reasonable expectation to receive partnership income. 2009 U.S. Dist. LEXIS 52719, at *16-17. However, Plaintiff here has not asserted in her claim that every hour spent at home was working for Defendants. Plaintiff has properly asserted a reasonable estimate of the hours Defendants required her to work, (**MD ¶ 40-41)**, which includes two periods of her employment. The first

period from on or about September 27, 2019, through on or about February 28, 2021, Plaintiff was both working at home and going into the office to work for approximately 91 hours per week. **MD ¶ 40**. Her schedule was from about 9:00 to 6:00 or 7:00 *in the shop*, *sometimes later*, Monday through Friday, and usually Saturday. **MindyDepo p. 127 ¶ 17-23**. The second period from about March 1, 2021, through on or about June 28, 2022, Plaintiff only worked nights for Defendants, and only at home, for approximately 37 hours per week, where Defendants required Plaintiff to further facilitate customer orders, calls, emails, engage in all social media, corporate branding, and marketing. **MD ¶ 41**. If Plaintiff had truly been contributing sweat equity as a partner, she would not have adhered to the hours now claimed in this lawsuit; rather, a 24/7 schedule—typical of someone seeking to share in the profits—would have been more advantageous and consistent with such a role. As previously stated, *Escobar* only reinforces the paradox at the heart of Defendants' claim: while they suggest Plaintiff was a partner, the evidence makes it unmistakably clear she was galaxies away from such a role. Instead, Plaintiff, her witnesses, and Spanos himself have illustrated that Plaintiff was an employee of Defendants SW and Spanos. Summary judgment should therefore be GRANTED that Plaintiff was an employee covered under the FLSA.

**II.     CREDITS *ARE* IMPROPER**

As briefed in **PR p. 17 ¶ F**, Defendants again, paradoxically concede that if Plaintiff *is* an employee under the FLSA, they are entitled to setoffs against back pay owed to Plaintiff under *Spears v. Bay Inn & Suites Foley, LLC*, and *Donavan v. New Floridian Hotel, Inc.*, for reasonable meals and lodging. *Spears,* 105 F. 4th 1320 (11th Cir. 2024) and *Donavan* 676 F.2d 474 (11th Cir. 1982). However, this argument fundamentally dismantles Defendants' premise that Plaintiff was not an employee but a partner. In order for Defendants to properly claim any setoff under *Spears,* they were required under *Donovan* to keep thorough records of each setoff against the wages

9

Plaintiff was earning throughout her employment with Defendants. 682 F.2d 185 (8th Cir. 1982)(holding that a reasonable cost is not more than the actual cost and employers must "keep certain records of the cost incurred in furnishing board, lodging or other facilities" and **"showing additions or deductions from wages paid** for board, lodging or other facilities **on a work week basis**" (*emphasis added*)). Spanos testified he never issued payment for wages to Plaintiff but admitted that she showed up and performed hours of work for SW. **SpanDepo p. 90 ¶ 12-16, p. 94 ¶ 25-2**. *See also* **MD ¶ 33, 74; SWI ¶ 13(b); TD ¶ 18**. Spanos also testified that there was no need to keep records of the time Michaels spent working (**SpanDepo p. 92 ¶ 9-10**), and that she should have kept her own records (**SpanDepo. ¶ 12-13**). Furthermore, under *Mendoza* v. *Upton Buffet, Inc.*, the Court held that any credit for lodging must be considered part of Plaintiff's wage and cannot be simply used as free-standing credit for overtime to be invoked at will whenever Plaintiffs happen to work more than 40 hours per week. 2010 U.S. Dist. LEXIS 96898, at *9 (S.D. Fla. Sep. 16, 2010). That is precisely what Defendants now attempt to do—retroactively apply any lodging or incidental credit they can unjustifiably identify, despite the lack of documentation as a setoff against wages Plaintiff rightfully earned through her work for Defendants. There was no bargained-for exchange or reasonable agreement that Plaintiff would receive lodging in lieu of wages for her work for Defendants (*see* **PR p. 19**). In fact, the opposite is true: Plaintiff consistently expected—and expressly demanded—monetary compensation for the hours she worked and the duties she performed, which Defendants failed to provide. Over a two-year period, Defendants required Plaintiff to move off the boat she owned on more than three occasions (**MD ¶¶ 59, 62, 66**). During these relocations, Plaintiff was forced to share accommodation, away from her own vessel, with other employees (**MD ¶¶ 61, 65**). She received no compensation whatsoever for her work (**MD ¶ 74**) and was in fact compelled to pay slip rent using her own alimony and personal

savings (**MD ¶¶ 55, 56**). Spanos and SW paid utilities, car insurance, and groceries, as business expenses, Plaintiff was required to entertain these customers, prepare meals, host customer-facing events, and make her personal vehicle available for customer use. **MindyDepo**, p. 71, ¶¶ 7–23. Contrary to Defendants' assertion (**DR p. 14**), Plaintiff is seeking to recover the wages owed for the hours worked, and duties she performed for Defendants. Payments cited by Defendants were merely reimbursements to Plaintiff for business-related expenses—including lease down payments that Plaintiff was required to front on Defendants' behalf. **MindyDepo p. 225 ¶ 15-18, 226 ¶ 2-23.** Furthermore, where Plaintiff effectively received two $3,000 payments from Spanos, he had promised to pay Plaintiff $3,000 a month for life and stopped making payment after Plaintiff asked Spanos to reduce it to writing. **MindyDepo** p. 212 ¶22-24. These payments were not wages or gifts, but were made for the purpose of distancing Plaintiff from Spanos, who had destroyed much of her property and subjected her to deeply harmful conduct (**MindyDepo, p. 211, ¶¶ 12–21**). Because those payments were not wages owed, Defendants cannot offset them by improperly claiming undocumented lodging as a setoff against unpaid wages. Summary Judgment should therefore be GRANTED that Defendants are not allowed offsets.

**III.   CONCLUSION**

There exists no genuine issue of fact as to whether (i) FLSA enterprise and individual coverage exists, as Defendants do not dispute this, (ii) Plaintiff was an employee of Defendants, (iii) Defendants are not allowed setoffs in this case, and (iv) Defendants are liable under the FLSA for their nonpayment of minimum and overtime wages, and therefore summary judgment in favor of Plaintiff should be GRANTED.

WHEREFORE, Plaintiff respectfully requests the Court GRANT Plaintiff's Motion for Partial Summary Judgment [ECF No. 56].

Respectfully submitted,

Koz Law, P.A.
800 East Cypress Creek Road Suite 421
Fort Lauderdale, Florida 33334
Tel:   (786) 924-9929
Fax:   (786) 358-6071
Email: dc@kozlawfirm.com

_____
Dillon S. Cuthbertson, Esq.
Florida Bar No. 1056382