UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-60984-Augustin-Birch

[*Consent Case*]

MELINDA MICHAELS,

    Plaintiff,

v.

SEAWATER PRO LLC, and
MICHAEL SPANOS A/K/A MIKE SPANOS,

    Defendants.
_____/

**PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff MELINDA MICHAELS ("Michaels"), through the undersigned counsel, files this REPLY to Defendants' Response to the Plaintiff's Statement of Material Facts [ECF No. 65], in support of Plaintiff's Statement of Material Facts [ECF No. 58] as follows:

Michaels uses the following abbreviations in support of her motion:

| DOCUMENT | CITATION | ABBREVIATION |
|---|---|---|
| Defendants' Motion for Summary Judgment | ECF No. 57 | DMSJ |
| Defendants' Statement of Material Facts | ECF No. 57-1 | DSF |
| Declaration of Defendant Michael Spanos | ECF No. 57-2 | SpanDec |
| Michael Spanos Deposition Transcript | ECF No. 60 | SpanDepo |
| Melinda Michaels Deposition Transcript | ECF No. 59 | MindyDepo |
| Plaintiff's Motion for Summary Judgment | ECF No. 56 | PMSJ |
| Michaels Declaration | ECF No. 58-1 | MD |
| Santhagens Declaration | ECF No. 58-2 | SD |
| Tubbert Declaration | ECF No. 58-3 | TD |
| Eisenberg Declaration | ECF No. 58-4 | ED |
| Defendants SeaWater Pro LLC's Response to Plaintiff's Requests for Admissions | Exhibit E | SWA |
| Defendant SeaWater Pro LLC's Response to Melinda Michaels' First Set of Interrogatories | Exhibit F | SWI |

| DEFINITION | ABBREVIATION |
|---|---|
| *Michaels v. Seawater Pro LLC, et al,* Case No. 24-cv-60984-Augustin-Birch Amended Complaint [ECF No. 28] | Lawsuit |
| Defendants' Answer to the Amended Complaint (ECF No. 28) [ECF No. 29] | Answer |
| Fair Labor Standards Act | FLSA |
| Melinda Michaels ("Mindy"), Plaintiff | Michaels |
| SeaWater Pro LLC, Defendant | SW |
| Michael Spanos, Defendant | Spanos |
| Approximately September 27, 2019, through June 28, 2022 | Claim Period |
| SeaWater's Office | SW's Office |

2

46. Disputed regarding the facts from the transcript citation. The citation indicates that for Michaels, work hours were whenever Spanos controlled her time, which included time at the shop (**MindyDepo p. 124 ¶ 19-21**), and that she was frustrated when she had to both manage employees and get prescriptions for Spanos, as she couldn't do both well (**MindyDepo p. 124 ¶ 21-24**), but that it was a part of her job (**MindyDepo p. 125 ¶ 16**).

47. Disputed regarding the facts from the transcript citation. The citation indicates that for Michaels, work hours were whenever Spanos controlled her time, which included time at the shop (**MindyDepo p. 124 ¶ 19-21**), and that she was frustrated when she had to both manage employees and get prescriptions for Spanos, as she couldn't do both well (**MindyDepo p. 124 ¶ 21-24**), but that it was a part of her job (**MindyDepo p. 125 ¶ 16**).

48. Disputed. Michaels was a SeaWater Pro employee and was required by Spanos to refill medication as part of her job (**MindyDepo p. 125 ¶ 16**), and to make calls in the car on the way to and from appointments. (**MindyDepo p. 122 ¶ 3-5**).

49. Disputed. Michaels was an employee of the Defendants during the Claim Period of approximately September 27, 2019, through June 28, 2022. [**MD ¶ 3; SD ¶ 13; TD ¶ 4; ED ¶ 10**], and Spanos directly supervised Michaels [**MD ¶ 10; SD ¶ 14, 15; TD ¶ 16**].

50. Disputed. The cited testimony from Spanos does not support the facts asserted. Defendants must use pinpoint citations per S. D. Fla. L. R. 56.1(b)(1)(B). Therefore, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation is about paying other employees, complaints, and pay schedules, not Michaels' duties. Defendants required Michaels to: fulfill all customer orders (from gathering parts to shipping), handle customer interaction and support, manage social media, build units, manage Spanos' schedule, oversee order checklists, and handle dealer orders and accounting. [**MD ¶ 14, 15, 16, 17, 18, 19, 20, 21; TD ¶ 9, 10; SD ¶ 17, 18**]. Additionally, Defendants required Michaels to consult on HR matters, manage customer deals, negotiate UPS rates, maintain the facilities, do machining, clean the CNC, track lost shipments, confirm shipment locations, deal with customs, attend trade shows, and act as the brand's representative in ads. [**MD ¶ 14, 24, 25, 26, 27, 28, 29, 30, 31, 32; TD ¶ 9, 10; SD ¶ 17, 18. SD ¶ 22**]. Michaels was required by Defendants to form partnerships with online personalities and influencers to market the brand. [**MD ¶ 42, TD ¶ 17**]. Michaels was required by Defendants to create, produce, market, and star in promotional videos. [**MD ¶ 32 (1), (2), (3); SD ¶ 17; TD ¶ 9, 16, 17**]. Spanos had Michaels do all tasks he couldn't because of his CHF. [**MD ¶ 13, 14, 15, 9,**

3

**43; SD ¶ 22; ED ¶ 7]**. Spanos made Michaels lift all watermaker motors for customer orders, so she had to manage the entire order fulfillment process. [**MD ¶ 14, 6, SD ¶ 22; TD ¶ 9**]. Lastly, Defendants required Michaels to purchase tools and supplies for the business. [**MD ¶ 44**].

51.  Undisputed they rode together sometimes to work, disputed that Plaintiff was not required to work during those times. She was not just a passenger in Spanos's car; she had to make calls for Defendants in the car when going to and from appointments. **MindyDepo p. 122 ¶ 3-5**. Because of Spanos' chronic heart failure (CHF) Michaels was required to perform any and all work that Spanos could not do required lifting anything over 20 pounds, that included transporting materials to/from work. [**MD ¶ 13, 14, 15, 9, 43; SD ¶ 22; ED ¶ 7**].

52.  Disputed. She was not just a passenger in Spanos's car; she had to make calls for Defendants in the car when going to and from appointments. **MindyDepo p. 122 ¶ 3-5**.

53.  Disputed. The cited testimony from Michaels does not support the facts asserted. The citation makes no mention of running personal errands for Spanos, and under S. D. Fla. L.R. 56.1(b)(12)(B), Plaintiff requests this material fact be stricken. The citation references that filling prescriptions were "part of the job". **MindyDepo p. 123 ¶ 2-25**.

54.  Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions Michael's claims for owed wages and hours, and that Spanos had said Defendants would pay her the money they owed her. **MindyDepo p. 207 ¶ 8-25**.

55.  Disputed regarding the facts from the transcript citation. The citation indicates that according to Michaels, when she was on social media at night, Spanos could see what she was doing at any time, knew she was looking for business content and she would send him reviews she found. Whenever a negative comment was posted in the watermaker group, Spanos would respond under Michael's name. **MindyDepo p. 251 ¶ 7-13**. Spanos mentioned that a large portion of business was from ads on Facebook, Twitter, TikTok, and Google, and Michaels started the Facebook page in early 2018. **SpanDepo p. 73 ¶ 5-20**. Spanos also told Michaels not to inform him about all her social media activities, as he didn't want to know and was bothered by rumors. **SpanDepo p. 69 ¶ 7-9**.

56.  Undisputed that Spanos did not look over Michaels's shoulder; disputed that Spanos had no knowledge of the work Michaels was doing at night, as Michaels attempted to inform him, but

Spanos did not want to know what Michaels was doing on social media for the business since the online rumors would upset him. **SpandDepo p. 69 ¶ 7-9**.

57. Undisputed that the Plaintiff did not always tell Spanos what she was researching on her phone, where Spanos directed Michaels not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**.

58. Disputed regarding the facts from the transcript citation. The citation indicates that according to Michaels, when she was on social media at night, Spanos knew she was looking for business content and she would send him reviews she found. Whenever a negative comment was posted in the watermaker group, Spanos would respond under Michael's name. **MindyDepo p. 251 ¶ 7-13**. Spanos mentioned that a large portion of business was from ads on Facebook, Twitter, TikTok, and Google, and Michaels started the Facebook page in early 2018. **SpanDepo p. 73 ¶ 5-20**. Spanos also told Michaels not to inform him about all her social media activities, as he didn't want to know and was bothered by rumors. **SpanDepo p. 69 ¶ 7-9**.

59. Undisputed. Michaels also was directed by Spanos not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**. Michaels performed work for the company in the evening, but personal use on social media was not very often. **MindyDepo p. 252 ¶ 7**.

60. Undisputed that Michaels did company work at night; disputed that she also used this time for personal matters, as her personal use of social media was not often. **MindyDepo p. 252 ¶ 7**.

61. Undisputed. Michaels also was directed by Spanos not to tell him everything that was going on with her social media use, because he didn't want to know, and rumors upset him. **SpanDepo p. 69 ¶ 7-9**. Michaels performed work for the company in the evening, but personal use on social media was not very often. **MindyDepo p. 252 ¶ 7**.

62. Disputed that Spanos had no knowledge of the work Michaels was doing at night, as Michaels attempted to inform him, but Spanos did not want to know what Michaels was doing on social media for the business since the online rumors would upset him. **SpandDepo p. 69 ¶ 7-9**.

63. Disputed. Defendants left number 63 blank. For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d).

64. Disputed regarding the facts from the transcript citation. There is no mention of a "run of the mill employee" nor her "living arrangement" with Spanos, the citation indicates that according to Michaels, in addition to leases she was required to sign as an emergency contact for Owner

5

Spanos, she had also kept track of records of the time she had worked and duties she was forced by Defendants to perform in a container at SW's shop, and that she was still required to pack boxes when her leg was broken. **MindyDepo p. 156 ¶ 17- 157 ¶ 7**.

65. Undisputed Plaintiff was required to attend Doctor's appointments with Spanos in the car, denied that she was just a passenger in Spanos's car; she had to make calls for Defendants in the car when going to and from appointments. **MindyDepo p. 122 ¶ 3-5**.

66. Disputed regarding the facts from the transcript citation. Michaels does not agree that Spanos paid all their living expenses and actually refutes that by stating that Spanos did not pay half the RV or boat, and additionally, told her he was going to pay her an hourly wage, which she never received. **MindyDepo p. 200 ¶ 7-24**.

67. Disputed. This is a statement of law, not of fact. Plaintiff requests this Material fact be stricken under 56.1(b)(1)(d).

68. Disputed. Michaels was never correctly paid for her hours or duties, or the wages owed by Defendants. **MD ¶ 74**. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2.** In 2021, after Michaels complained about her compensation, Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Defendants kept making future promises to pay Michaels but never fulfilled them. **MD ¶ 34**. Michaels also testified she demanded payment multiple times, with Spanos only providing a check once. **MindyDepo p. 208 ¶ 11-12**. Spanos indicated she would be paid an hourly rate. **MindyDepo p. 200 ¶ 22-24**.

69. Disputed as to the facts from the transcript citation. The transcript highlights that the first time a request was made for wages owed *in writing* was through her attorneys **MindyDepo p. 59 at 141-2 ¶ 16-22**. Michaels was never correctly paid for her hours or duties, or the wages owed by Defendants. **MD ¶ 74**. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2.** In 2021, after Michaels complained about her compensation, Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Defendants kept making future promises to pay Michaels but never fulfilled them. **MD ¶ 34**. Michaels also testified she demanded payment multiple times, with Spanos only providing a check once. **MindyDepo p. 208 ¶ 11-12**. Spanos indicated she would be paid an hourly rate. **MindyDepo p. 200 ¶ 22-24**.

70. Disputed as to the facts from the transcript citation. The citation has no mention of an "agreement" not to be disturbed, instead it references that at the beginning, they were supposed to divide living expenses, but Spanos did not keep the bargain, did not pay the boat or the RV

expenses, and left Michaels to pay it herself, all while telling her she would be paid an hourly wage. **MindyDepo p. 200 ¶ 7-24**.

71. Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions that Spanos had control over everything Plaintiff did while on business trips, and she was required to be available for his directives on those trips. **MindyDepo p. 115 ¶ 7-23**.

72. Disputed as to the facts from the transcript citation. The citation references that Plaintiff worked approximately 91 hours per week especially after COVID, she was required to pay for the boat, RV, dock fees, and Spanos told her she would be paid an hourly wage. **MindyDepo p. 199 ¶ 22 – 25 – p. 200 ¶ 1-24**.

73. Disputed as the facts from the transcript citation. Spanos had told Michaels throughout the was going to pay her an hourly wage. **MindyDepo p. 199 ¶ 22-25**. When she complained to him about not being properly compensated, Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Defendants kept making future promises to pay Michaels but never fulfilled them. **MD ¶ 34**. Michaels had a conversation then with Spanos about giving her a part of the business, where she was not being properly compensated, and "he refused". **MindyDepo p. 97 ¶ 1-2**.

74. Disputed as the facts from the transcript citation. Spanos told Michaels he was going to give her money once he sold the business after being so sick he couldn't walk more than 24 feet at the time, not that he would give her a percentage. **MindyDepo p. 143 ¶ 1-11.** Defendant's second citation does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions Plaintiff worked approximately 91 hours per week especially after COVID, she was required to pay for the boat, RV, dock fees, and Spanos told her she would be paid an hourly wage. **MindyDepo p. 199 ¶ 22 – 25 – p. 200 ¶ 1-24**.

75. Undisputed that Plaintiff was promised $3,000 per month from Defendants, disputed that she ended the employment relationship. **MD ¶ 36**.

76. Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions that after Plaintiff asked

Spanos to reduce the $3,000 promise to writing, he pursued contempt charges against Michaels and stopped making payments. **MindyDepo p. 212 ¶ 15 – p. 213 ¶ 1-25**. Furthermore, mischaracterizing Plaintiff as a "terrorist" is outrageous. Plaintiff directs the Court to Spanos' testimony at **SpanDepo p. 5 ¶ 7-18** for insight into Defendant's documented and sanctionable behavior.

77. Disputed. The cited testimony does not support the facts asserted. **MindyDepo p. 138-141 ¶ 20-5** references Plaintiffs' traumatic experiences with Spanos after he put his hands on her, had her arrested in retaliation, and still never properly paid her for the hours, duties and wages she earned. **SpanDepo p. 69** specifically indicates that Plaintiff would tell Spanos what she was doing on social media, and Spanos would tell her "I don't want to know, because the rumors upset me", he then goes onto speculate about what she could have been doing on social media. **SpanDepo p. 102-106** cites that Spanos could not say without a doubt that all purchases were personal expenses. **SpanDepo p. 135-136** do not exist, the record ends at p. 120.

78. Disputed. The cited testimony does not support the facts asserted. **MindyDepo p. 138-141 ¶ 20-5** references Plaintiffs' traumatic experiences with Spanos after he put his hands on her, had her arrested in retaliation, and still never properly paid her for the hours, duties and wages she earned.

79. Disputed. The cited testimony does not support the facts asserted. The first time a request was made for owed wages *in writing* was through her attorneys **MindyDepo p. 59 at 141-2 ¶ 16-22**. Michaels was never correctly paid for her hours or duties, or the wages owed by Defendants. **MD ¶ 74**. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2.** In 2021, after Michaels complained about her compensation, Spanos put her on Quickbooks payroll, issuing one check for about $600. **MD ¶ 34**. Defendants kept making future promises to pay Michaels but never fulfilled them. **MD ¶ 34**. Michaels also testified she demanded payment multiple times, with Spanos only providing a check once. **MindyDepo p. 208 ¶ 11-12**. Spanos indicated she would be paid an hourly rate. **MindyDepo p. 200 ¶ 22-24**.

80. Disputed. The citations to Plaintiff's declaration misstate the facts. Michaels regularly paid for the slip with her savings and alimony. **MD ¶ 55**. She was also required to pay for the slip from the start of SeaWater Pro and intermittently throughout her claim period. **MD ¶ 57**. Plaintiff testified that the business paid for utilities, groceries, and rent. **MindyDepo ¶ p. 71 ¶ 10 – 25, p.**

8

**72 ¶ 1-3**. Michaels also used her own savings and alimony for her health insurance costs. **MD ¶ 68**.

81. Disputed as to "living arrangement", Plaintiff bought the boat she and Spanos lived on from October 2016 to November 2020, was required to pay for the slip from the start of SeaWater Pro and intermittently throughout her claim period. **MD ¶ 57**.

82. Disputed. From November 2020 to June 2022, Defendants required Michaels to leave the boat and move to three different places, which included two condos and one house. [**MD ¶ 59, 63, 66, ED ¶ 3**]. The first condo was used in part to house another employee, Bailey Frederes, in the master bedroom, and its dock was also used by YouTubers, boaters, customers, and influencers who were visiting the condo to promote the Defendants' business. [**MD ¶ 61, 62**]. The house was used in part to house other employees, such as Bailey Frederes and Dylan Tubbert. [**MD ¶ 65; TD ¶ 12**].

83. Disputed. When on *work trips* with Spanos, he would pay for airfare and restaurants. **MindyDepo p. 82 ¶ 10-13**.

84. Disputed as to Plaintiff was already paying her own living expenses, including her health insurance and slip payments (**MD ¶ 55-56, 68**), and was required to front other expenses for Defendants such as rent payments. **MindyDepo p. 225 ¶ 15-18**, **226 ¶ 2-23**.

85. Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**. Spanos reimbursed Michaels for business expenses, including rental down payments she was owed. **MindyDepo p. 226 ¶ 2-23**.

86. Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

87. Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

88. Disputed that payments to Michaels were for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

89. Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation mentions that after Plaintiff asked Spanos to reduce the $3,000 promise to writing, he pursued contempt charges against Michaels and stopped making payments. **MindyDepo p. 212 ¶ 15 – p. 213 ¶ 1-25**.

90.     Disputed. There were never payments made to Michaels for wages owed or duties performed. Spanos never paid Michaels wages. **SpanDepo p. 94 ¶ 25-2**.

91.     Disputed. The cited testimony does not support the facts asserted. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citation makes no mention of the severing of the employment relationship, or does it address a financial hole. The citation refers to Wells Fargo suing Plaintiff, of which Plaintiff had no knowledge of the suit, until her son made her aware. **MindyDepo p. 219-223, ¶ 19-6**.

92.     Disputed. Defendants must use pinpoint citations as required by S. D. Fla. L. R. 56.1(b)(1)(B). For this reason, Plaintiff requests this Material Fact be stricken under 56.1(b)(1)(d). The citations make no mention of facts, and instead Defendants assert opinions: that Plaintiff was fabricating domestic violence or digging herself into a financial hole. Instead, Plaintiff encountered a traumatizing event where Spanos put his hands on her. **MindyDepo p. 138-141 ¶ 20-5** references Plaintiffs' traumatic experiences with Spanos after he put his hands on her, had her arrested in retaliation, and still never properly paid her for the hours, duties and wages she earned. **SpanDepo p. 94 ¶ 25-2**. Furthermore, Plaintiff had no knowledge of the Wells Fargo suit, until her son made her aware. **MindyDepo p. 219-223, ¶ 19-6**. Plaintiff is law abiding, refused to make contact with Defendant when they were directed to have no contact, and Spanos told her and the police on camera that he was going to "take her down". **MindyDepo p. 140 ¶ 6-20**. Further consistent improper behavior by Defendants was evident during Spanos' deposition (**SpanDepo p. 5 ¶ 7-18**) and is shown in the video illustrating Plaintiff working behind the desk at SW (**MD ¶ 21**).

Respectfully submitted,

Koz Law, P.A.
800 East Cypress Creek Road Suite 421
Fort Lauderdale, Florida 33334
Tel:    (786) 924-9929
Fax:    (786) 358-6071
Email: dc@kozlawfirm.com

_____
Dillon S. Cuthbertson, Esq.
Florida Bar No. 1056382

11