UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

      Plaintiff,

v.

SEAWATER PRO, LLC, AND
MICHAEL SPANOS,

      Defendants.

_____/

## DEFENDANTS' MATERIAL FACTS IN REPLY

Defendants, Seawater Pro, LLC and Michael Spanos, pursuant to Local Rule 56.1, file their Material Facts in Reply to address the Plaintiff's Response to the Statement of Material Facts [ECF No. 63-1], as follows:

### *Preliminary Statement*

Defendants file their Reply, including their responses to the Additional Facts contained in the Plaintiff's Response to the Statement of Material Facts [ECF No. 63-1] by indicating whether each additional fact is "disputed" or "undisputed" for purposes of Defendant's Motion for Summary Judgment [ECF No. 57], only. The facts established through live trial testimony may be different from the facts presented as "undisputed" for purposes of responding to the present motion. See *Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S ADDITIONAL FACTS (NOS. 66-122)**

66.    Undisputed.

67.    Disputed.[1] "The determination of an individual's employment status under the FLSA is a question of law." *Axel v. Fields Motorcars of Fla., Inc.*, 711 F. App'x 942, 944 (11th Cir. 2017) (citing *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015)). Legal conclusions are not facts, and as such, no citation to the record evidence is required. To the extent a response is required, the Plaintiff attested that any work she performed was done in exchange for the payment of her meals, rent, living, car, travel, and other expenses because "we were a couple. It was part of our agreement as a couple." [ECF No. 59 at 200: 7-9]. Mr. Spanos testified the Plaintiff was never an employee of the company. [ECF No. 60 at 110: 7-11]. The Plaintiff exhibited the hallmarks of a partner in the business, which included the following:

a. engaging in production duties that included production, order fulfillment, and inventory management. [ECF No. 58 ¶¶6, 9, 10]

b. Performing promotional duties that included "facilitat[ing] partnerships with online personalities", creating social media videos, working at booths, and marketing the business. [ECF Nos. 58 ¶¶14, 15, 18]

c. performing managerial duties such as human resources, negotiating with vendors, and marketing [ECF No. 58 ¶¶9-10, 14-15]

---

[1]    Rule 56(c)(4) requires summary judgment evidence be based on "personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As recognized in *Jacoby v. Dunn*, 2024 U.S. Dist. LEXIS 115574, at *10 (M.D. Ala. July 1, 2024), the Eleventh Circuit interprets Rule 56(c)(4) to limit admissible affidavit testimony to what is "based on personal knowledge rather than information, feelings, or belief." (citing *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002); and quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) (finding statement made "[t]o the best of [a plaintiff's] belief and knowledge" insufficient to establish a genuine issue of material fact because the statement was not based on personal knowledge)) (collecting cases in fn. 2). Consequently, the Court must ignore and/or strike her conclusory testimony that she was an "employee" as a legal conclusion and the other statements not based personal knowledge (such as "controlled," "directed," or "required").

    d. utilizing the access to the Defendants' bank account and checks to write checks to pay vendors, suppliers, and their other employees. [ECF Nos. 58 ¶¶20-22; 58-1 ¶48.]

    e. having a Wells Fargo Business Banking Card in her name, which she used to pay vendors and suppliers [ECF No. 58 ¶22]

    f. contributing to the living expenses of Mr. Spanos through November 2020, while allowing the Defendants to "store tools, supplies, and receive packages and orders" at their shared residence [ECF No. 58 ¶¶30-32]

    g. having a joint bank account with Mr. Spanos. [ECF No. 58 ¶37.]

    h. paying other expenses, both personal and business-related, from their shared bank account. [ECF No. 58-1 ¶¶70-72]

    i. paying her car insurance from the bank account she shared with the Defendants [ECF No. 58-1 ¶72]

    j. co-signed leases for her living arrangements with Mr. Spanos. [ECF No. 59 at 156-157: 21-2: "I had leases that I had co-signed for and showing that I was the emergency contact…."].

    k. accompanying Mr. Spanos on the way to, from, and during his various doctor's appointments during the workdays. [ECF No. 59 at 226-230: 24-17]

    l. providing the boat she lived on with Mr. Spanos [ECF No. 58-1 ¶55]

    m. enjoying the lifestyle she had with Mr. Spanos, expecting to also receive a percentage of the business. [ECF No. 59 at 95-97: 21-13].

68.    Undisputed.

69.    Undisputed.

70.    Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this conclusion. *See*, fn. 1.

71.    Disputed, in part. Although it is undisputed that the Defendants did not pay the Plaintiff direct hourly wage, they dispute that they were required to pay her any wage as she was not an employee. The Plaintiff did not work as an employee expecting payment, but as Mr. Spanos's romantic partner, contributing based on their "agreement" for Mr. Spanos to pay for her living arrangements and lifestyle and, as she contends, to receive a share of the proceeds once Mr. Spanos sold the business. [ECF No. 59 at 143: 1-18; 200: 2-9]. Plus, the parties had an "arrangement" or

"agreement" through which Defendants paid all room, board, food, and expenses from 2019 through July 28, 2022. [ECF No. 59 at 143: 1-18; 200: 2-9]. If any wage were due, the Defendants paid it in the manner permissible by 29 U.S.C. §203(m)(1), for which they are entitled to a credit. In addition, the Plaintiff enjoyed a lifestyle funded almost entirely by the Defendants' business based on the payments she acknowledges it made for her living arrangements, meals, travel, and lifestyle. [ECF No. at 59; 200: 2-9).]

72.     Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work in ECF No. 58-1, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. At best, the Plaintiff's affiant, Mr. Tubbert, attested to witnessing the Plaintiff performing tasks without indicating why she performed them. [ECF No. 58-3.] Mr. Tubbert testified that while Mr. Spanos put the Plaintiff "in charge of" certain tasks or duties, which allowed the Plaintiff to determine how and when she would perform any task or duty she undertook, such as liaising with YouTubers and paying actual employees. *Id.*, ¶¶16-18. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

73.     Disputed. Although the Plaintiff claims Mr. Spanos "required" her to perform certain tasks or work, the Court must ignore this conclusion. *See*, fn. 1. Since this is not a fact but a conclusion, no response is required. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11]. At best, the Plaintiff's affiant, Mr. Tubbert, attested to witnessing the Plaintiff performing tasks without indicating why she performed them or whether Mr. Spanos had knowledge or permitted Michaels "to work" or "to suffer". [ECF No. 58-3.] Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

74.    Disputed. Plaintiff testified she ran errands during the hours she claimed were work time, time such as filling Mr. Spanos' prescriptions and accompanying him to doctor's appointments, which legally are compensable work time as unrelated to the Defendants' business. [ECF No. 59 at 122: 1-25; 123: 2-25]. Plus, the Plaintiff testified that she did not work the hours claimed as a result of her concurrent employment, which did not permit her to arrive at the Defendants' business until at least 11:00 a.m. for two days a week through March 2020. [ECF No. 59 at 242-245: 13-5]. Mr. Spanos testified that the Plaintiff would not get out of bed before 11:00 a.m. [ECF No. 60 at 59: 19-20.] Not only did Defendants dispute directing, requesting, or knowing about any work the Plaintiff claims to have performed from 8:00 p.m. to 2:00 a.m, but the Plaintiff was unable to "draw the line" between work and non-work activities, and Mr. Spano. *See* ECF No. 57-1 at ¶¶35-47. Furthermore, Mr. Spanos testified that she was not working. [ECF No. 111: 9-18].

75.    Disputed. Not only did Defendants dispute directing, requesting, or knowing about any work the Plaintiff claims to have performed from 8:00 p.m. to 2:00 a.m, but the Plaintiff was unable to "draw the line" between work and non-work activities, and Mr. Spano. *See* ECF No. 57-1 at ¶¶35-47.

76.    Undisputed that Plaintiff did not work during the time she was admitted to Holy Cross Hospital. [ECF No. 59 at 108-111: 21−7]. Defendants dispute that Plaintiff only did not work for two weeks, as the Plaintiff testified to other instances in which she was away from work, such as when she accompanied Mr. Spanos on a 50-foot motor yacht for several days in Florida or during the two-week sailing vacation she enjoyed with Mr. Spanos in Greece. [ECF No. 59 at 78-80: 16-4; 108: 5-16]. Although she claimed she was "available," the Plaintiff did not testify she performed any work. *Id.*

77.    Disputed. Although the Plaintiff claims Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶¶11, 13]. Further, Plaintiff admitted she was unable to distinguish between what she did online for personal consumption as opposed to work. [ECF No. 59, at256-7: 25-13.] Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her

vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

78.     Undisputed that Plaintiff voluntarily appeared in one video with her boyfriend, Mr. Spanos Spanos, because she happened to be around that day. [ECF No. 60, at 56 ¶ 1-4]. Defendants dispute that Mr. Spanos "directed" her work, which she translates to "supervised" in the facts herein, the Court must ignore this legal conclusion. *See*, fn. 1. Since this is not a fact but a legal conclusion, no response is required. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶¶11, 13]. Defendants dispute that Plaintiff was "forced" or required to be in the video. *Id*.  Defendants dispute she appeared in any other videos. *Id*. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

79.     The Plaintiff offered no admissible evidence on this issue, as she relies on speculation, conjecture, and inadmissible hearsay, to which no response is needed.

80.     Disputed. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

81.     Disputed. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶ 11; ¶ 13]. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

82.     Disputed. Mr. Spanos testified that he never asked or required the Plaintiff to work. [ECF No. 57-1 ¶¶11-12]. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos,

relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

83.     Undisputed that the Plaintiff was a party to the business bank account, for which she had the authority to issue checks, make payments, and receive a bank card. [ECF No. 59 at 91: 18-24]. Also undisputed that the Plaintiff issued and signed checks to vendors from that account, and that she calculated payroll, issued, and signed payroll checks to employees. [ECF No. 59 at 91-94: 22-1]. Although the Plaintiff claims Mr. Spanos "required" her to perform certain tasks, the Court must ignore this conclusion. *See*, fn. 1. Defendants dispute that they "required" the Plaintiff to perform any of these tasks. Mr. Spanos denied asking or requesting the Plaintiff to perform any tasks. [ECF No. 57-1 ¶11].

84.     Disputed.  The Plaintiff testified she was never assigned a work email by SeaWater Pro. [ECF No. 59, at25: 3-5.]

85.     Undisputed.

86.     Disputed. The Plaintiff testified she never tried to pay herself any wages. [ECF No. 59 at 201-202: 16-7]. Plus, as Mr. Spanos testified, the Plaintiff had access to the QuickBooks online payment platform and she could have issued herself money "as she pleased." [ECF No. 60 at 95: 10-21].

87.     Undisputed that the Plaintiff was able to utilize the QuickBooks payroll platform but denied that she was not paid. Mr. Spanos testified that the Plaintiff had access to the QuickBooks online payment platform and she could have issued herself money "as she pleased." [ECF No. 60 at 95: 10-21].

88.     Undisputed.

89.     Undisputed.

90.     Disputed. Additional payments are identified at ECF No. 57-1 at ¶¶48-54

91.     Undisputed.

92.     Disputed, in part. The Defendants paid for rental of the boat slip from September 27, 2019, to August 31, 2010, while they lived on the boat and then for the Hendricks apartment where the Plaintiff and Mr. Spanos lived as of September 1, 2020. [ECF No. 57-2 at ¶¶20-22].

93.     Disputed, in part. The Defendants paid for rental of the boat slip from September 27, 2019, to August 31, 2010, while they lived on the boat and then for the Hendricks apartment where the Plaintiff and Mr. Spanos lived as of September 1, 2020. [ECF No. 57-2 at ¶¶20-22]

94.     Undisputed.

95.     Disputed. Mr. Spanos testified that he never asked or required the Plaintiff to work. [ECF No. 57-1 ¶¶11-12]. Any tasks the Plaintiff may have performed were because she, like Mr. Spanos, relied on the Defendants' business to pay all of her bills and because of her vested interest in the business as Mr. Spanos' romantic partner. [ECF No. 59 at 143: 1-18; 200: 2-9]. Pursuant to the parties' arrangement, the Defendants paid all of the Plaintiff's living and other expenses from the business. [ECF No. 57-1 at ¶¶55-61].

96.     Disputed. Although the Plaintiff claims Mr. Spanos "required" her to perform certain tasks, the Court must ignore this conclusion. *See*, fn. 1. The Plaintiff voluntarily moved with Mr. Spanos to the various locations at which they lived together, as each rental was nicer than the prior living arrangements (as evidenced by the increased monthly rental associated with each). [ECF No. 57-1 at ¶¶12-13.] The Plaintiff thought they were "living beyond our means" but was not threatened or coerced to move. [ECF No. 59 at 202-203: 8-15].

97.     Undisputed.

98.     Disputed.

99.     Disputed. Mr. Spanos testified that the Plaintiff had a power of attorney on that account and could go to the bank, sign, and request checks.  [ECF No. 60, at 27: 2-7].

100.    Disputed that the Defendants in any way limited the Plaintiff to using the Business Banking Card from Wells Fargo to payment of vendors and suppliers when payment by check was unnecessary. [ECF No. 57-1 ¶¶18-19.] [ECF No. 60, at 26: 25; at27, 1-12].

101.    Undisputed.

102.    Disputed that Mr. Spanos "required" the plaintiff not pay herself anything from the account. The Court must ignore this conclusion. *See*, fn. 1. The Plaintiff could spend the money

from bank account(s) to which she had access as she pleased, including using the bank debit card she had to spend the money as she wished. [ECF No. 57-1 ¶¶18-19.] The Plaintiff testified she never tried to pay herself any wages. [ECF No. 59 at 201-202: 16-7]. Plus, as Mr. Spanos testified, the Plaintiff had access to the QuickBooks online payment platform and she could have issued herself money "as she pleased." [ECF No. 60 at 95: 10-21].

103.    Disputed. The Plaintiff testified that Mr. Spanos paid her car insurance as of 2019. [ECF No. 59 at 67-68.]

104.    Disputed. The Court must ignore this conclusion. *See*, fn. 1. The Plaintiff could spend the money from bank account(s) to which she had access as she pleased, including using the bank debit card she had to spend the money as she wished. [ECF No. 57-1 ¶¶18-19.] The Plaintiff testified she never tried to pay herself any wages. [ECF No. 59 at 201-202: 16-7]. Plus, as Mr. Spanos testified, the Plaintiff had access to the QuickBooks online payment platform and she could have issued herself money "as she pleased." [ECF No. 60 at 95: 10-21].

105.    Disputed. The Court must ignore this conclusion. *See*, fn. 1. The Plaintiff could spend the money from bank account(s) to which she had access as she pleased, including using the bank debit card she had to spend the money as she wished. [ECF No. 57-1 ¶¶18-19.] The Plaintiff testified she never tried to pay herself any wages. [ECF No. 59 at 201-202: 16-7]. Plus, as Mr. Spanos testified, the Plaintiff had access to the QuickBooks online payment platform and she could have issued herself money "as she pleased." [ECF No. 60 at 95: 10-21].

106.    Disputed. *See* Response to Fact. 67, above.

107.    Undisputed that Mr. Spanos testified he saw the Plaintiff "help with mainly shipping boxes, printing labels, and putting them on boxes" as identified on p. 59 of his deposition. [ECF No. 60 at 59].

108.    Undisputed that Mr. Spanos testified he saw the Plaintiff "help with mainly shipping boxes, printing labels, and putting them on boxes" as identified on p. 59 of his deposition. [ECF No. 60 at 59].

109.    Undisputed that while the couple were on a leisurely boating outing, Mr. Spanos was holding a camera and the Plaintiff followed instructions. [ECF No. 60 at 55-56: 10-5]. The Plaintiff did not consider this to be work. [ECF No. 59 at 231-232: 21-4]. The other time she was on a boat,

she claims that the entire time she spent on the boat was work time, even if filming took a few minutes to an hour. *Id.*, at 232-235: 14-9]. Mr. Spanos further testified that the Plaintiff did not do any other marketing or filming. [ECF No. 60 at 55-56: 10-5].

110.   Undisputed.

111.   Undisputed.

112.   Undisputed that the Plaintiff created a SeaWater Pro Facebook Page on her personal Facebook account and ran it. [ECF No. 60 at 55: 2-6].

113.   Undisputed that while the couple were on a leisurely boating outing, Mr. Spanos was holding a camera and the Plaintiff followed instructions. [ECF No. 60 at 55-56: 10-5]. The Plaintiff did not consider this to be work. [ECF No. 59 at 231-232: 21-4]. The other time she was on a boat, she claims that the entire time she spent on the boat was work time, even if filming took a few minutes to an hour. *Id.*, at 232-235: 14-9]. Mr. Spanos further testified that the Plaintiff did not do any other marketing or filming. [ECF No. 60 at 55-56: 10-5].

114.   Undisputed that once, Mr. Spanos directed and filmed the Plaintiff in a video that was posted on YouTube. [ECF No. 60 at 55-56: 10-5].

115.   Undisputed.

116.   Undisputed that Mr. Spanos took the photograph marked as Plaintiff's Exhibit 6 to his deposition. [ECF No. 59 at 70-71: 14-7].

117.   Undisputed

118.   Disputed. Mr. Spanos testified that he did not pay the Plaintiff "custom[ary] wages" for which he issued her a "W-2 Form, no." But Mr. Spanos' testimony continues, as he stated the Plaintiff was "paid, compensated, by paying her rent, her car insurance, her gasoline, her food, her visits to the doctor, trips to Greece, trips to -- to Kansas. · All the money that is documented in those charges that you were just -- had me read." [ECF No. 60 at 94: 9-18].

119.   Disputed. Mr. Spanos identified the Plaintiff's car insurance as a bill that the Plaintiff paid from their joint bank account. [ECF No. 96: 1-4].

120.   Undisputed that Mr. Spanos could not identify "without a doubt" the personal purchases the Plaintiff made on the Amazon account based on the banking records on which he was

questioned during his deposition, because he did not have enough information when asked. [ECF No. 60 at 105: 10-20].

121.    Undisputed that the Plaintiff testified to this in her deposition. [ECF No. 59 at 90]. Also undisputed that Mr. Spanos paid the Plaintiff an amount exceeding any wages she claims to have earned. [ECF No. 60 at 83; 57-1 at ¶¶12-23].

122.    Undisputed.

## DEFENDANTS' ADDITIONAL FACTS IN REPLY

123.    The Plaintiff filed this lawsuit after she was unable to pay her credit card bill and was sued by Wells Fargo because "she didn't have the money" to pay what she owed. [ECF No. 59 at 219-223: 19-6]

124.    The Plaintiff attested on December 2, 2024, to having worked an average of 91 hours a week for the Defendants for 21.85 weeks and then 68.57. (Exhibit "A".)

125.    Mr. Spanos supported the Plaintiff by paying all of her living expense since 2019, other than a few months of her paying for the boat slip. "He was paying for everything else…." [ECF No. 59 at 166-167: 14-19]

126.    The Plaintiff and Mr. Spanos were inseparable. As Plaintiff put it, "I was always with Mike… We were always together." [ECF No. 59 at 63: 7-14]

127.    Before coming to Florida, the Plaintiff lived with Mr. Spanos, and they shared expenses. [ECF No. 59 at 165-166: 3-9].

128.    Once they moved to Florida, the Plaintiff contends she paid for them live on her boat until Mr. Spanos contributed. [ECF No. 59 at 166: 14-19].

129.    The Plaintiff testified that the Defendants paid her share of the leases, room, board, living, and all other expenses since 2019, but should not receive credit for paying those expenses, because "we were a couple. It was part of our agreement as a couple." [ECF No. 59 at 200: 2-9]

130.    According to the Plaintiff, she helped start the Defendants' business by working with Mr. Spanos "…from the beginning of the business." [ECF No. 59 at 34: 9-18].

131.    The Plaintiff testified that for years, she was the only person who worked with Mr. Spanos. [ECF No. 58-1 at ¶12].

132.    The Plaintiff not only claims to have worked with Mr. Spanos "from the beginning of the business" but also to have had access to the business bank account "from inception." [ECF No. 59 at 91: 18-21].

133.    When the business needed money, the Plaintiff testified that she infused funds "with the promise I would be paid back." [ECF No. 58-1 at ¶22].

134.    The Plaintiff also testified that she spent her own money supporting Mr. Spanos until his business got off the ground. [ECF No. 56-1 at ¶22].

135.    The Plaintiff did not work as an employee expecting payment, but as Mr. Spanos's romantic partner, contributing based on their "agreement" for Mr. Spanos to pay for her living arrangements and lifestyle and, as she contends, to receive a share of the proceeds once Mr. Spanos sold the business. [ECF No. 59 at 143: 1-18; 200: 2-9].

136.    Meanwhile, the Plaintiff accompanied Mr. Spanos on a 50-foot motor yacht for several days in Florida and again during a two-week trip on a sailboat in Greece, each time to entertain clients of the business. [ECF No. 59 at 78-80: 16-4].

137.    After their relationship ended, the Plaintiff became a competitor. [ECF No. 69 at 17: 2-7].

138.    The Plaintiff then set out on a vindictive campaign to terrorize Mr. Spanos and his business, including through an online campaign to disparage him and his business, sharing Mr. Spanos' medical information online, disparaging him and his business, and falsely claiming domestic violence, which backfired and led to the Plaintiff's arrest (due to a recording of the "incident"). [ECF Nos. 59 at 138-141: 20-5; 60 at 69: 12-25; 102-106: 3-6; 135-136: 9-17.]

139.    The Plaintiff attributes Mr. Spanos with saying "That I would get paid" but not that he would pay her a wage, hourly wage, or salary. [ECF No. 59 at 200-201: 10-15].

140.    And while she claims to have asked for payment starting in 2021, she never explains why she continued working without receiving a wage since then. [ECF No. 56-1 at ¶34.]

141.    Mr. Spanos paid for the rent, utilities, and groceries while living with the Plaintiff at their condominium apartment. [ECF No. 59 at 71: 4-13 "paid by the business"].

142.    At the house they lived in, the Defendants paid the rent, utilities, and groceries. [ECF No. 59 at 71: 14-16].

143.     At the Briny Apartment, the Defendants also paid for the rent, utilities, and groceries. [ECF No. 59 at 74-75: 21-3].

144.     Defendnats also paid for the boat slips for the boats owned by the Plaintiff and Mr. Spanos. [ECF No. 59 at 75: 4-13].

145.     From 2019 through July 28, 2022, the Defendants paid all room, board, food, and expenses according to the parties' agreement. [ECF No. 59 at 143: 1-18; 200: 2-9].

146.     The Plaintiff did not dispute the rental amounts for the properties where they lived together, confirming her recollection of each amount. [ECF No. 59 at 77-78: 21-9].

147.     The Defendants also paid for the room and board of two of the Defendants' employees— her niece and son—who lived with them while working for the Defendants. [ECF No. 59 at pp. 49-50: 24-14; 51: 1-3; 128: 1-4].

148.     One employee, Dylan Tubbert, was the Plaintiff's son and worked for the Defendants while living with Mr. Spanos and the Plaintiff from October or November 2020 until he quit in February 2021. [ECF No. 59 at pp. 49-50: 24-14; 51: 1-3; 128: 1-4].

149.     Bailey Frederes also lived with Mr. Spanos and the Plaintiff while working as an employee of the Defendants from January to March 2020 and again from some time in 2021 until April 2022. [ECF No. 59 at 51-52: 11-18].

Respectfully submitted this 1st day of August 2025,

*Brian H. Pollock, Esq.*
Brian H. Pollock, Esq.(174742)
brian@fairlawattorney.com
Gaelle W. Colas, Esq. (1006811)
gaelle@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Defendants*