UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

    Plaintiff,

v.

SEAWATER PRO, LLC,
AND MICHAEL SPANOS,

    Defendants.

_____/

# REPLY SUPPORTING
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  ARGUMENT

The Court is required to give a "fair reading" when interpreting the FLSA. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142, 200 L. Ed. 2d 433 (2018). A "fair reading" of the FLSA entails construing it "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) (*quoting* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 63, at 363 (2012)). Construing the FLSA to require the payment of minimum wages to the Plaintiff would not be "fair" based on the undisputed facts of this case.

No reasonable person would work for years on end, 91, 37, or even 15 hours a week as an employee without <u>ever</u> being paid any wages whatsoever without some duress, coercion, or a threat. No reasonable juror could find for the Plaintiff under these facts, as it is objectively unreasonable to work so much for so long without ever being paid wages (other than $600), and without any evidence of duress, coercion, or a threat to procure the work. [ECF No. 56-1 at ¶¶33-34]; *but see Harris v. Salvation Army*, 2025 U.S. Dist. LEXIS 56347, at *20 (S.D. Fla. Mar. 26, 2025). The Plaintiff cannot escape the Court's conclusion that she was <u>not</u> an employee entitled to minimum wages from her former romantic partner, that she already received more than enough money through everything the Defendants paid for during the period for which she seeks recovery in this case, and that she is not entitled to "double dip" after her personal relationship with Mr. Spanos ended. *See Bonich v. NAS Component Maint., Inc.*, 2020 U.S. Dist. LEXIS 98137, at *5 (S.D. Fla. June 4, 2020) (collecting cases to address avoidance of double recovery); and *Morales v. Zenith Ins. Co.*, 2012 U.S. Dist. LEXIS 5112, at *10 (M.D. Fla. Jan. 17, 2012 (discussing need to preclude a "double dip"). Accordingly, summary judgment should be entered for the Defendants.

**A.**  **<u>The Plaintiff Was Not An Employee Entitled To Minimum Wages Under The FLSA Or FMWA Because She Was Not Economically Dependent On Them.</u>**

Convenient as it is for the Plaintiff to come to the Court while being hounded by her creditors [Reply Fact ¶123] and claim over $160,000 from the Defendants for minimum wages as their employee [ECF No. 28-1], after being supported by the Mr. Spanos for years [Reply Fact ¶¶125, 145], she cannot escape the conclusion that she was not an employee economically dependent on or controlled by the Defendants.

The Plaintiff and Mr. Spanos each testified about the details of their years-long romantic relationship, during which they were virtually inseparable. [*See generally* ECF Nos. 59, 60]. As the Plaintiff put it, "I was always with Mike… We were always together." [Reply Fact ¶126]. Before coming to Florida, the Plaintiff lived with Mr. Spanos, and they shared expenses. [Reply Fact ¶127]. Once they moved to Florida, the Plaintiff claims to have paid for living on her boat until Mr. Spanos contributed. [Reply Fact ¶128]. Then, beginning in 2019, Mr. Spanos paid for everything. [Reply Fact ¶124: "He was paying for everything else…."] The reason why the Plaintiff believes the Defendants paid her share of the leases, room, board, living, and all other expenses since 2019, and that the Defendants are not entitled to receive any credit for paying those expenses, is because "we were a couple. It was part of our agreement as a couple." [Reply Facts ¶129].

She claims to have helped start the Defendants' business by working with Mr. Spanos "…from the beginning of the business." [Reply Facts ¶130]. She claims to have been the only person who worked with Mr. Spanos for years. [Reply Facts ¶131]. The Plaintiff not only claims to have worked with Mr. Spanos "from the beginning of the business" but also to have had access to the business bank account "from inception." [Reply Facts ¶132]. When the business needed money, she claims to have infused funds "with the promise I would be paid back." [Reply Facts ¶133]. The Plaintiff also claims to have spent her own money supporting Mr. Spanos until his business got off the ground. [Reply Facts ¶134]. The Plaintiff did not work as an employee expecting payment, but as Mr. Spanos's romantic partner, contributing based on their "agreement" for Mr. Spanos to pay for her living arrangements and lifestyle and, as she contends, to receive a share of the proceeds once Mr. Spanos sold the business. [Reply Facts ¶135]. Meanwhile, the Plaintiff accompanied Mr. Spanos on a 50-foot motor yacht for several days in Florida and again during a two-week trip on a sailboat in Greece, each time to entertain clients of the business. [Reply Facts ¶136]. After their relationship ended, the Plaintiff became a competitor. [Reply Facts ¶137].

The Plaintiff did not testify in her deposition, attest in her Affidavit, or provide any other testimony or evidence that she started working for the Defendants from 2019 through 2022 based on an understanding, agreement, or expectation that she would receive a wage, whether it be hourly, salary, or commission. That evidence does not exist. At best, the Plaintiff attributes Mr. Spanos with saying "That I would get paid" but not that he would pay her a wage, hourly wage,

or salary. [Reply Facts ¶139]. And while she claims to have asked for payment starting in 2021, she never explains why she continued working without receiving a wage since then. [Reply Facts ¶140].

In confronting circumstances nearly identical or even comparable circumstances to those presented herein, courts regularly determine that the FLSA does not apply because no employment relationship exists. Initially, litigants challenged whether the federal statutory reference to "employee" was meant to apply to partners, as discussed in *Wheeler v. Hudman*, 825 F.2d 257 (10th Cir. 1987). In *Wheeler*, the court examined the statutory—and "circular"—definition of "employee" found in several federal statutes (including the FLSA), ultimately concluding that none of the federal employment acts (including the FLSA) were intended to apply to partners. This area of law developed as more factual cases emerged.

The Fourth Circuit Court of Appeals analyzed a factual scenario strikingly similar to the one at hand in *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007). In *Steelman*, the parties were romantic partners who lived together, worked together, shared living expenses, and supported themselves through their business. *Id.* As the company in *Steelman* grew, the plaintiff served as a supervisor. The plaintiff in *Steelman* frequently ate meals out, and the company's account was used to pay all their bills. *Compare id.*, with ECF No. 57-1, *passim*. Like the Plaintiff h*ere*, the Steelman plaintiff claimed she was promised payment that was never fulfilled, and she eventually started a competing business after their relationship ended. *Id.* The district court granted summary judgment to the defendants in *Steelman*, finding that the plaintiff was not an employee entitled to minimum wages under the FLSA. The Fourth Circuit Court of Appeals agreed, concluding that the FLSA was <u>not meant</u> to for an ex-romantic partner to recover minimum wages after their relationship ends.

> But broad as the FLSA's coverage is, <u>the statute was not meant to be an omnibus financial relations act, imposing a one-size-fits-all federal solution upon all sorts of human relationships and available as a weapon upon the dissolution of all domestic partnerships</u> and other intimate arrangements involving shared funds and shared labor. [*Emphasis added*.]

*Steelman*, 473 F.3d at 132. The Court went on to note that the "extensive access to company funds is not the kind of privilege that employees enjoy with respect to their employers' revenue." *Id.*, at 130. Likewise, "When the plaintiff lived comfortably and exclusively off the proceeds of the business and exerted authority in disposing of its funds, we find it hard to see the barn exchanging labor for compensation that marks employment arrangements." *Id.*

The facts here are almost identical to those the Court in *Steelman* found did not establish an employment relationship. Despite *Steelman*'s warning against using the FLSA as a weapon when a romantic relationship goes sour, this Plaintiff has done so, intending to terrorize Mr. Spanos and his business, in combination with her online campaign to besmirch his reputation. [Reply Facts ¶138.] These actions included sharing Mr. Spanos' medical information online, disparaging him and his business, and falsely claiming domestic violence, which backfired and led to the Plaintiff's arrest (due to a recording of the "incident"). *Id.*

In determining that the FLSA was not meant to apply to the type of domestic partnership involved here, the Court in *Steelman* specifically explained why the FLSA should not be read to allow recovery by a romantic partner after a failed relationship. Clearly, the situation *sub judice* "differs substantially from the traditional employment paradigm covered by the Act." *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993).

> In sum, <u>the parties' financial and work arrangements cannot be categorized as mere "formal differences" from a classic framework of employment</u>, *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32 (1961), <u>but instead render the parties' relationship as distinct from an employer-employee relationship as the independent contractor, volunteer, and trainee relationships that are already regarded as outside the FLSA</u>. *See Walling*, 330 U.S. at 152-53. <u>We find the parties' business venture falls outside the FLSA</u> because it "differs substantially from the traditional employment paradigm" and goes beyond the "bargained-for exchange of labor for mutual economic gain that occurs in a true employer-employee relationship." *Harker*, 990 F.2d at 133 (internal quotations omitted). [*Emphasis added*.]

*Steelman*, 473 F.3d at 131. After considering the express purpose of the FLSA, as identified in 29 U.S.C. §202(a) as remedying "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," the Court in *Steelman* made the following pronouncement at 473 F.3d at 132 which is equally applicable herein:

> Similarly, the FLSA's objectives would not be advanced by federal interposition in the relationship in this case. Retroactively substituting the uniform federal standard tailored to the traditional workplace for the fluid and informal financial arrangement of the couple here would bear no relation to the purposes of the Act. Such an extension would not advance living conditions, given that the parties drew freely from the company's resources and lived well off them, but simply failed to conform their dealings to the FLSA framework. Nor would such an extension prevent the unfair competition that arises when businesses cut their costs by paying exploitatively low wages, as the degree of financial control the plaintiff possessed precluded such exploitation. To the extent that the parties' sharing of risk and reward created incentives for hard work and good management, this advantage

amounts to fair competition, akin to the partnerships and other profitsharing arrangements that the Act evinces no intent to outlaw.

When District Courts have encountered similar situations involving parties who were in a romantic relationship, worked together, shared a lifestyle created by their work, and then broke up, they are nearly (if not entirely) unanimous in denying relief, finding that the claimant was not an "employee," that the FLSA did not apply, that no employment relationship existed, and that no minimum wages were owed as a result. *See, e.g.*, *Hua Jing Gao v. L&L Supplies, Inc.*, No. 2024 U.S. Dist. LEXIS 226108 (S.D.N.Y. Dec. 12, 2024); *Tingting Wang v. China Wok*, 2020 U.S. Dist. LEXIS 171350 (N.D. Ohio Sep. 18, 2020); *DeVore v. Lyons*, 2016 U.S. Dist. LEXIS 147306 (N.D. Tex. Oct. 25, 2016); *Escobar v. GCI Media, Inc.*, 2009 U.S. Dist. LEXIS 52719 (S.D. Fla. June 22, 2009); and *Godoy v. Rest. Opp. Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186 (S.D.N.Y. 2009). More recently, the District Court for the Middle District of Florida held that the FLSA did not apply to require payment of minimum wages by finding that the plaintiff was a partner, not an employee, in *Hawrych v. Nutra-Luxe M.D., LLC*, 2022 U.S. Dist. LEXIS 73316 (M.D. Fla. Apr. 21, 2022). The Plaintiff, as in *Escobar*, was not economically dependent on the Defendants when she "shared in the profits of the company, assumed the risks of loss and liabilities, had some right to share in management, and even contributed capital." 2009 U.S. Dist. LEXIS 52719 at *17.

The Defendants are entitled to a summary adjudication that the Plaintiff was not an "employee" entitled to minimum wages based on the facts and law, but was a romantic partner who was not an "employee" and who was economically dependent on the Defendants. Accordingly, the entry of a judgment for the Defendants is appropriate.

**B.   The Court Must Credit The Defendants For Payment Of Living And Other Expenses Under 29 U.S.C. §203(m)(1), As The Parties Agreed.**

The Plaintiff argues against the Defendants' entitlement to the credits against wages permitted by 29 U.S.C. §203(m) and 29 C.F.R. §531.2 by arguing that misleading the Court about the impact of *Brennan v. Heard*, 491 F. 2d 1 (5th Cir. 1974), and its progeny. [ECF No. 63 at 17]. The Plaintiff's argument that an employer is unable to credit the "board, lodging, or other facilities" paid on behalf of an employee under 29 U.S.C. §203(m)(1) and 29 U.S.C. §531.2 is wrong.

Over 40 years ago, the Eleventh Circuit Court of Appeals held that *Brennan v. Heard* did not preclude applying the credits permitted by §203(m) against minimum wages:

> The FLSA normally requires employers to pay their workers in cash but, <u>as the *Heard* court noted, section 3(m) is an express exception to this rule</u>. *Brennan v. Heard*, 491 F.2d at 3 n.2. *See also Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973). Congress apparently recognized and decided to preserve the custom in many industries, including the restaurant business, of compensating employees in part through food and lodging. *See* 112 Cong.Rec. 11,378 (1966) (comments of Congressman Gurney during debate prior to Congress' amending the FLSA to cover the restaurant industry); 83 Cong. Rec. 7408 (1938) (comments of Congressmen Crawford and O'Malley during debate prior to Congress' enacting the original FLSA). The Secretary has failed to cite any passage in the statute or legislative history that even suggests Congress intended to make the statutory exception to the payment of cash wages any different from the customary practice, by making employee choice a prerequisite.

*Davis Bros., Inc. v. Donovan*, 700 F.2d 1368, 1371 (11th Cir. 1983). In *Brennan v. Heard*, the Fifth Circuit Court of Appeals specifically recognized the three exceptions to the provision of "cash in hand" that Congress included in 29 U.S.C. §203(m), which included paying "any sums paid to a third party at the request of the employee" which the Court noted was "equivalent to a loan to the employee, or an advance against his salary" and distinguishable from the type of "set-off" it precluded. 491 F.2d at 3 n.2.

The FLSA expressly states that "wages" include "the furnishing such employee with board, lodging, or other facilities…." 29 U.S.C. §203(m). Section 203(m)(1) of the FLSA "allows employers to include the reasonable cost of servicing meals, lodging, or other facilities in employee wages for purposes of the FLSA." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 (11th Cir. 1982) ("*Donovan – New Floridian*"). The FLSA permits employers to provide "meals, lodging, or other facilities" to an employee in lieu of or as a credit toward wages. 29 U.S.C. § 203(m)(1). This part of the Act authorizes employers to lawfully "deduct from an employee's pay the reasonable cost of employer-provided housing and meals, even if that deduction causes the employee's cash wages to fall below the statutory minimum." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011) (internal quotations omitted). Therefore, "[w]hen a court calculates the back wages that an employee is due under the Act, the employer 'is entitled to a credit for the reasonable cost of providing meals and lodging.'" *Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1320 (11th Cir. 2024) (quoting *Donovan – New Floridian*, 676 F.2d 468, 474 (11th Cir. 1982)).

The Plaintiff's citation to and reliance on *Donovan – New Floridian* for the proposition that credits are permitted "in an FLSA action only where the amount would not bring the paid employee's effective hourly rate underneath the minimum wage rate…" without addressing the distinctions the former Fifth Circuit drew in that case or that the Eleventh Circuit Court of Appeals drew between the facts in *Spears* and those in *Donovan – New Floridian* is troubling. [*See* ECF No. 56 at 18]. The Plaintiff also continues to mislead the Court by misrepresenting that *Spears* stands for the proposition that credits against wages can only be applied "…only where the amount would not bring the paid employee's effectively hourly rate underneath the minimum wage rate." [ECF No. 63 at 18].

The Plaintiff's arguments are contrary to the Court's opinion on *Spears*, as the Eleventh Circuit specifically approved of applying the credit to any minimum wages owed:

> The parties' dispute hinges on whether the stipulation to the value of Spears's lodging satisfied the Patels' burden to prove the reasonable cost of lodging and entitled them to credit for the lodging value <u>in the calculation of Spears's unpaid minimum wages</u>. To determine whether the Patels have satisfied their burden, we must first sort out the parties' stipulations. <u>The Patels argue that they were relieved of their burden to prove the reasonable cost of Spears's lodging for the purpose of a minimum wage credit</u> because the parties stipulated that Spears's lodging was worth $630 a week. <u>Spears contends that the stipulation applies only to the use of the $630 value for the purposes of calculating his overtime pay rate</u>. <u>We agree with the Patels</u>. [*Emphasis added*].

*Spears*, 105 F.4th at 1320-21. Equally as troubling is the Plaintiff's argument that a specific recordkeeping requirement exists for to enable Defendants to take the credits against any minimum wages permitted by the FLSA at §203(m), when it is actually an evidentiary issue:

> Spears argues that because the Patels did not comply with the Department of Labor's recordkeeping requirements, they did not satisfy their burden and the $630 value is "unsubstantiated." <u>But Spears misreads the regulations and our decision in *Donovan*</u>.
>
> Although the regulations require employers to keep records of lodging costs, <u>the regulations do not say that keeping those records is a prerequisite for getting credit for lodging costs in a lawsuit</u>. *See* 29 C.F.R. § 516.27(a)-(b). <u>And our decision in *Donovan* does not hold that keeping records is a requirement for credit. *Donovan* involved a dispute about the value of lodging, and we held that the employer could prove the reasonable cost of lodging by providing the records required by regulation</u>. *See* 676 F.2d at 474-75. <u>But we did not hold that the records were the only evidence that an employer could use to prove reasonable cost. Indeed, *Donovan* considered other evidence of reasonable cost, like records of room and board charged to clients and the testimony of the employer</u>. *See id*. at 475-76. We determined that the other evidence was not sufficient to prove reasonable cost but not

> because it failed to satisfy the recordkeeping regulation. *Donovan* is also distinguishable from this appeal in which the parties do not contest the actual value of lodging. In *Donovan*, the parties contested the value of the lodging. *See id.*; *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513-14 (11th Cir. 1993) (discussing *Donovan's* burden on the defendants and quoting Donovan's statement about ways to substantiate the estimate of cost). [*Emphasis added*].

*Spears*, 105 F.4th at 1321 (11th Cir. 2024). Repeatedly, the Eleventh Circuit has stated that an employer is entitled to take the credits against minimum wages claimed upon presentation of the appropriate evidence. Herein, Mr. Spanos cited the evidence of the cost to provide the items for which he seeks a credit, which is sufficient under the law. 29 C.F.R. §531.3 ("actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees.")

The evidence is that the Plaintiff lived with Mr. Spanos from 2014 until June 28, 2022, and the Defendants paid for their living and other expenses during the time relevant to this case. [ECF No. 57-1 at ¶¶11-17]. Mr. Spanos paid for the rent, utilities, and groceries while living with the Plaintiff at their condominium apartment. [Reply Facts ¶141]. At the house they lived in afterwards, the Defendants paid the rent, utilities, and groceries. [Reply Facts ¶142]. At the Briny Apartment, the Defendants also paid for the rent, utilities, and groceries. [Reply Facts ¶143]. They also paid for the boat slips for the boats owned by the Plaintiff and Mr. Spanos. [Reply Facts ¶144]. From 2019 through July 28, 2022, the Defendants paid all room, board, food, and expenses according to the parties' agreement. [Reply Facts ¶¶125, 145]. The Plaintiff did <u>not dispute</u> the rental amounts for the properties where they lived together, confirming her recollection of each amount. [Reply Fact ¶146].

The Plaintiff acknowledges that the Defendants also paid for the room and board of two of the Defendants' employees—her niece and son—who lived with them while working for the Defendants. Dylan Tubbert, the Plaintiff's son, worked for the Defendants while living with Mr. Spanos and the Plaintiff from October or November 2020 until he quit in February 2021. [Reply Facts ¶¶147, 148]. Bailey Frederes also lived with Mr. Spanos and the Plaintiff while working as an employee of the Defendants from January to March 2020 and again from some time in 2021 until April 2022. [Reply Fact ¶149]. Thus, the Defendants routinely provided housing to employees and others working for the business, as permitted by 29 C.F.R. §531.31. The Plaintiff agreed that the Defendants would pay for her living arrangements. [ECF No. 57-1 at ¶16]. Even

using the Plaintiff's admittedly inaccurate claim of $81,583.41 in minimum wages owed in the Amended Complaint, the evidence makes it clear that the Defendants paid her more through cash and credits for food and lodging, which total more than $85,175.00, so no wages are owed to her. [ECF Nos. 28-1; 57-1 at ¶¶ 13-15, 48-54, 61].]

Under the circumstances, the Court must find that if the Plaintiff were an employee entitled to minimum wages, the payments the Defendants made for room, board, and the Plaintiff's other living expenses operate as a credit against any minimum wages owed (and well exceed them), such that summary judgment is appropriately entered for the Defendants.

**C.     The Plaintiff Cannot Meet the Burden of Proving the Hours Worked by Just and Reasonable Inference**

The Plaintiff does not attempt to reconcile the moving target that is the hours she claims to have worked for the Defendants. She alleges working 91 hours a week for the Defendants until February 7, 2021, at which time she claims she worked 37 hours a week for them. [ECF No. 28 at ¶14 and 28-1]. The Plaintiff then attested to having worked 91 and then 37 hours, as above, in her Answers to Interrogatories served December 2, 2024. [Reply Fact ¶124]. Plaintiff then identified her hours were 9:00 a.m. to 6:00 p.m. or 7:00 p.m. Monday to Friday, and one weekend day from 9:00 a.m. to 4:00 p.m. in deposition. [ECF No. 57-1 at ¶¶31, 34.] The issue here is that the Plaintiff's claims are reasonable and speculative because of her belief that nearly all the time she spent with Mr. Spanos through March 1, 2021, was work, just like the time she spent online at night afterwards was work for which she should be paid.

The Court cannot accept testimony that is conclusory, speculative, or lacks a proper foundation. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Although the burden is relaxed for an employee when time records do not exist, the burden is not eliminated altogether. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). She can only meet the evidentiary burden that exists when she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007). Likewise, she can only recover for "work" of which the Defendants requested or knew about.

> The Supreme Court originally defined "work" in the FLSA context to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn.*

> *Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944). It later clarified the "exertion" requirement, noting that "an employer, if he chooses, may hire a man to do nothing." *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 89 L. Ed. 118 (1944). Accordingly, the key test remains "[w]hether time is spent predominantly for the employer's benefit or for the employee's," which "is a question dependent upon all the circumstances of the case." *Id.*

*Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1292 (11th Cir. 2021). The Plaintiff's attempt to recover minimum wages for performing personal tasks unrelated to the manufacture and sale of watermakers, for riding in a car with Mr. Spanos, and for accompanying him at dinners and on leisurely boat trips is not the type of "work" for which the FLSA was intended to require the payment of wages.

Plaintiff cites its counsel's recent victory *Keefe v. Britt's Bow Wow Boutique, Inc.*, 2025 U.S. App. LEXIS 12621 (11th Cir. May 23, 2025), in hopes it would apply to this case. However, the situation presented in *Keefe* is markedly different, as hours that were tracked up to a point ceased being tracked, and the employer instructed the plaintiff not to report her overtime hours. *Id.* The case *sub judice* involves no such facts. The Plaintiff in this case testified about how she would calculate the hours and wages due to each employee, without ever having done so for herself. [ECF No. 59 at 93-94: 10-1: "I was calculating hours… For everybody every week. Yes."]. At best, the Plaintiff could not distinguish between work and non-work, which is the reason 29 C.F.R. §785.23 provides "An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises." *See e.g.*, *Barraza v. Pardo*, 2015 U.S. Dist. LEXIS 94006, at *24 (S.D. Fla. July 20, 2015) (judgment for employer).

### III.   CONCLUSION

Although Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment attempts to misdirect the Court, she cannot avoid the propriety of the Court's grant of summary judgment to the Defendant. No reasonable juror could find the Plaintiff was an employee of the Defendants under the facts presented, and even if they could, any minimum wages owed would be reduced to zero after applying the credits to which the Defendants are entitled under §203(m)(1) and 29 C.F.R. §531.2. Plus, her speculative testimony is insufficient to support any award. Therefore, summary judgment is due to be granted to the Defendants.

Respectfully submitted this 1st day of August 2025,

*Brian H. Pollock, Esq.*
Brian H. Pollock, Esq.(174742)
brian@fairlawattorney.com
Gaelle W. Colas, Esq. (1006811)
gaelle@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Defendants*
