UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-CV-60984-AUGUSTIN-BIRCH

MELINDA MICHAELS,

    Plaintiff,
v.

SEAWATER PRO, LLC, and
MICHAEL SPANOS,

    Defendants.
_____/

## DEFENDANT MICHAEL SPANOS'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND PROTECTIVE ORDER

Defendant, Michael Spanos ("Mr. Spanos"), submits this Response in Opposition to Plaintiff's Motion for Sanctions and Request for Protective Order [ECF No. 95] (the "Motion"). Plaintiff asks this Court to invoke its inherent authority to impose sanctions and to enter a sweeping protective order that would substantially restrict Mr. Spanos's participation in his own defense. The Motion should be denied because Plaintiff has not come close to meeting the demanding legal standards required for either form of relief. The conduct alleged, even if accepted as true for purposes of this Motion, falls far short of the kind of bad-faith abuse of the judicial process necessary to justify sanctions under the Court's inherent powers. Nor has Plaintiff demonstrated the particularized, non-speculative good cause required under Federal Rule of Civil Procedure 26(c) to support the broad and intrusive protective measures she seeks. For these reasons, and as explained below, the Motion should be denied in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from unpaid minimum wage claims that Plaintiff asserts under the Fair Labor Standards Act and Florida Minimum Wage Act against Defendants, SeaWater Pro, LLC and Michael Spanos. [ECF No. 28]. The parties have engaged in discovery and pretrial proceedings, and the Court has set this matter for trial on February 23, 2026, with a settlement conference referred to United States Magistrate Judge Patrick M. Hunt. [ECF No. 94].

Importantly, this wage-and-hour lawsuit did not arise in a vacuum. As detailed in Defendants' previous filings, Plaintiff initiated this suit as a vindictive measure after Mr. Spanos obtained a state-court **stalking injunction** against her on April 14, 2023, due to her own harassing conduct, including a nefarious online campaign to harm Mr. Spanos and his business. The parties had been in a long-term romantic relationship from 2014 until 2022, during which time Plaintiff lived with Mr. Spanos and he financially supported her every need. Far from being an overworked employee who suddenly discovered unpaid wages, Plaintiff never raised any wage complaint until after the relationship ended. Defendants maintain that this case is not a bona fide wage dispute at all, but rather a retaliatory campaign by a disgruntled ex-girlfriend seeking a "break-up payment" to which she is not entitled. This broader context explains why emotions have run high; it underscores that the flashpoints in this litigation stem from a deeply personal falling-out, not from any genuine interference with the judicial process or threat of violence by Mr. Spanos.

In essence, Plaintiff's Motion is based on three isolated incidents over the past year and a half that this case has been litigated, in which Mr. Spanos allegedly used offensive, vulgar, or hostile language toward Plaintiff or her counsel. Plaintiff first points to an off-the-record remark purportedly made by Mr. Spanos immediately prior to the commencement of his deposition on January 22,

2025. [ECF No. 95 ¶ 1]. She further alleges that after that deposition concluded, Mr. Spanos made an angry statement that Plaintiff's counsel interpreted as a threat. [*Id.* ¶ 2]. Plaintiff next relies on a series of contentious settlement-related communications in October 2025, during which Mr. Spanos allegedly sent emails containing insults and derogatory language toward Plaintiff's counsel. [*Id.* ¶¶ 6-9]. Finally, Plaintiff cites a brief confrontation in the courtroom on December 3, 2025, during which Mr. Spanos allegedly used offensive language toward Plaintiff's counsel and was instructed by a United States Marshal to leave the courtroom. [*Id.* ¶ 10].

      Mr. Spanos does not deny that emotions have flared during this litigation or that some of his remarks were intemperate and ill-advised. He does, however, dispute Plaintiff's characterization of his statements as *threats of violence* or as conduct intended to intimidate or interfere with the judicial process. More importantly, it is undisputed that none of the alleged incidents resulted in any physical altercation, any violation of a court order, any delay of proceedings, or any disruption of the Court's ability to manage this case. Discovery proceeded to completion, the Court conducted its December 3, 2025 status conference without incident, and the case was set for trial and referred to a settlement conference as scheduled. In short, despite the personal rancor, the litigation progressed in an orderly fashion.

      Yet Plaintiff now asks the Court to wield its inherent sanctioning power and to enter a protective order that would, among other things, require staggered courthouse arrival and departure times for the parties, prohibit any direct contact between Mr. Spanos and Plaintiff or her counsel, suspend the parties' meet-and-confer obligations, mandate "civil" behavior by court order, and permit Plaintiff to demand Mr. Spanos's remote or physically segregated participation in the upcoming settlement conference. [ECF No. 95 at 6]. These sweeping requests far exceed what the

law permits under the circumstances. They seek to effectively gag, isolate, and stigmatize Mr. Spanos in his own defense—a result neither justified by the record nor authorized by the rules.

## II. ARGUMENT

Plaintiff's counsel has a long history of misconduct in this Court. His conduct (and temper) was so bad that he was required to enroll in anger management counseling on October 28, 2022. *In re: Elliot Ari Kozolchyk Florida Bar # 74791*, No. 1:20-mc-21879, ECF No. 12 (S.D. Fla. Oct. 28, 2022) (Exhibit "A"). He received further conditions to be allowed to practice in this Court on June 3, 2024. *Id.* at ECF No. 20. (Exhibit "B"). He then received a public reprimand. *Id.* at ECF No. 21. (Exhibit "C"). Meanwhile, the Florida Bar pursued a Formal Complaint for Reciprocal Discipline against Plaintiff's counsel, which contains what can only be described as a "parade of horribles" relating to his conduct before this Court and with the adversarial "employers" pursued for his clients. *The Florida Bar v. Elliot Ari Kozolchyk*, No. 2023-50,298(I7J) (Fla. Nov. 26, 2024) (Exhibit "D"). One incident described in the Florida Bar Complaint recounts that Plaintiff's counsel's conduct toward a defendant-employer during court proceedings was so aggressive that it reduced the defendant to tears in open court. (*Id.* at 4-5). In a separate matter, Plaintiff's counsel was found to have engaged in "loud, heated, and disruptive" conduct toward opposing counsel during a deposition and, after refusing to comply with the Court's instruction to cease such behavior, was sanctioned and ordered to serve in a local soup kitchen. (*Id.* at 5). Plaintiff's counsel's storied history of conduct with litigants, with this case as no exception, provides essential context for the contentious interactions in this case and undermines any attempt to portray those interactions as one-sided or unprovoked.

Now, Plaintiff's counsel comes before this Court to misrepresent caselaw to claim it has the "inherent power" to sanction a frustrated litigant whose attorneys have weaponized the FLSA and its attorney's fee provision to request unavailable relief and further divide the parties' respective settlement positions through otherwise unnecessary attorney's fees. Plaintiff's counsel, as professionals who advocate tenuous positions for their clients, request relief from this Court because they frustrated Mr. Spanos to the point that he called them names.

Mr. Spanos made no pointed, direct, or indirect threats, and the Declaration submitted at ECF No. 95-1 does *not* attribute Mr. Spanos to making any direct threats, providing no basis for how or where the declarant concluded Mr. Spanos "'*indicated*' he wanted to kick the shit out of him." Mr. Spanos has done nothing more than express his frustration with Plaintiff and her counsel in a way litigants can do outside the Courts' presence, outside of those related to the Court and its proceedings (such as stenographers), and in a way that attorneys cannot.

Lastly, Plaintiff's request for protection is spurious, as Mr. Spanos previously obtained a temporary injunction against stalking against Ms. Michaels that prevents her from direct or indirect contact with Mr. Spanos. (Exhibit "G"). Undersigned counsel for Mr. Spanos will be traveling to the Courthouse from Miami, and requiring an additional 30 or 40 minutes to avoid the parties coming in contact is unreasonable, given the parties' ability to enter and exit the depositions taken in this case (x2) and the courthouse without incident.

A. <u>Inherent-Power Sanctions Should Be Declined.</u>

Federal courts possess inherent authority to sanction *attorneys* for conduct that abuses the judicial process, but that authority is "narrow" and "potent" and must be exercised with great restraint. The Supreme Court and the Eleventh Circuit Court of Appeals have repeatedly

emphasized that inherent-power sanctions require an explicit finding of bad faith *by counsel* and must be used only in clear cases of abusive litigation conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223-24 (11th Cir. 2017); *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Plaintiff misrepresents the cited authorities from within this Circuit by manipulating citations, which the Court should address as patently misleading. For instance, the Court denied the imposition of sanctions in *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020), due to the subjective and objective lack of bad faith conduct in the positions taken in the litigation, not name-calling.

The mere existence of offensive language, incivility, or heated exchanges does not automatically equate to bad faith *by counsel* within the meaning of the Court's inherent powers. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (bad faith is shown by egregious misconduct such as "delaying or disrupting the litigation or hampering enforcement of a court order", not simply by ill-tempered behavior); *Pendlebury v. Starbucks Coffee Co.*, No. 04-cv-80521, 2006 U.S. Dist. LEXIS 112210, at *8-9 (S.D. Fla. Dec. 27, 2006) (declining sanctions where counsel's rude comments, though regrettable, "were not so outrageous as to prevent the deposition's completion or render it useless" and "did not frustrate the fair examination of the witness or constitute abuse").

"Bad faith" in this context refers to *counsel's* conduct undertaken with an improper purpose—such as delaying the proceedings, harassing an opponent, defying court orders, or perpetrating fraud on the court. *See Hyde*, 962 F.3d at 1310. Neither recklessness nor gross negligence meets the standard, unless the conduct is so egregious that it can only be explained as intentional misconduct. *Id.* Moreover, because inherent-power sanctions are so severe, courts generally require that the alleged misconduct be proven by clear and convincing evidence and that

the accused party be afforded full due process protections before any sanction is imposed. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304-05 (11th Cir. 2006) (requiring clear and convincing proof of bad faith); *Chambers*, 501 U.S. at 50 (sanctioning court must "comply with the mandates of due process," meaning notice and an opportunity to be heard). Usually, a hearing is required and the cases addressing sanctions in this context often cite to the hearings held. *See Miller v. Midland Credit Mgmt.*, 2021 U.S. App. LEXIS 28121, at *7 (11th Cir. 2021) (discussing need for a "meaningful opportunity" to be heard, explicit findings, and potential hearing); *Armstead v. Allstate Prop. & Cas. Ins. Co.*, 705 F. App'x 783 (11th Cir. 2017) (discussing hearing); and *Ass'n for Disabled Ams., Inc. v. Pebb Enters. Shops of Delray Ltd.*, 555 F. App'x 876, 878 (11th Cir. 2014) (multiple hearings held).

Measured against these stringent standards, Plaintiff's Motion falls far short. The conduct alleged consists of a handful of isolated verbal outbursts and contentious communications by Mr. Spanos, a frustrated litigant, intermittently disbursed over a year-and-a-half period of litigation. None of the statements at issue can be found in pleadings, motions, or any filing presented to the Court. None involved the assertion of frivolous legal claims or defenses, the concealment or destruction of evidence, the violation of discovery obligations, or defiance of any court order. Similarly, none impugned the Court, its integrity, or detracted from the Court's authority. In other words, nothing about these incidents or statements undermined the integrity of the proceedings or the Court's authority. The litigation stayed on track: discovery closed, the Court held its scheduled conferences, and the case remains set for trial on time. There has been no prejudice to the process aside from Plaintiff's personal offense at Mr. Spanos's intemperate words.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

Eleventh Circuit precedent confirms that inherent-power sanctions are reserved for circumstances far more egregious than those presented here. In *Chambers*, for example, the sanctioned party engaged in an extensive pattern of fraud and obstruction—including attempting to deprive the court of jurisdiction by fraudulent transfers, filing false and frivolous pleadings, and deploying oppressive tactics to derail the case entirely. *Chambers*, 501 U.S. 32. That level of bad-faith conduct warranted a severe sanction in order to vindicate the court's authority. By sharp contrast, the Eleventh Circuit in *Purchasing Power* reversed an inherent-power sanction where the attorneys' conduct, though negligent and problematic, did not rise to the level of subjective bad faith required for such extreme punishment (indeed, recklessness alone was deemed insufficient). *Purchasing Power*, 851 F.3d 1218. Similarly, in *Hyde*, the Eleventh Circuit reiterated that even recklessness does not justify inherent-power sanctions absent clear evidence of improper purpose or intent to abuse the judicial process. *Hyde*, 962 F.3d 1306.

Plaintiff relies heavily on the fact that some of Mr. Spanos's remarks were offensive or inappropriate. The Court does not condone rude or intemperate behavior by any litigant. But it is well settled that federal courts are not empowered to sanction litigants for expressing frustration or anger by being discourteous or using harsh language. Litigation is often contentious; but personal animosity between parties, standing alone, does not constitute an abuse of the judicial process warranting sanctions. *See Pendlebury*, 2006 U.S. Dist. LEXIS 112210, at *9 ("the type of misconduct alleged here was not so egregious as to be abusive or sanctionable" despite a "lack of courtesy" between counsel). The Eleventh Circuit has cautioned against expanding inherent-power sanctions into a generalized civility code, as doing so risks chilling zealous advocacy and exceeding the proper bounds of judicial authority. *Chambers*, 501 U.S. at 68. In short, the inherent power

"must be exercised with restraint and discretion" and "is not a remedy for protracted [litigation]" or mere incivility, but rather a last resort for *truly* abusive conduct. *Purchasing Power*, 851 F.3d at 1223-25. Consistent with that principle, courts frequently respond to episodes of incivility with warnings or minor remedial measures, not with drastic sanctions. Indeed, even where litigant misconduct has been far more egregious than anything alleged here, courts have opted for admonishment over sanctions. *See, e.g., Germany v. City of Huntsville*, No. 23-10907, 2024 U.S. App. LEXIS 772, at *12-13 (11th Cir. 2024) (after a party failed to abide by the court's order to submit his opening statement and, instead, left a voicemail threatening to defame opposing counsel's firm, the district court held the sanctions motion in abeyance and warned the party to "maintain a high standard of civility" going forward rather than imposing sanctions). If a clear judicial warning suffices in the face of actual threatening conduct, then Plaintiff's bid to sanction Mr. Spanos for angry words is wholly unwarranted.

Equally significant is the absence of any concrete impact on these proceedings from Mr. Spanos's alleged outbursts. Courts typically find bad faith—and thus impose inherent-power sanctions—only where misconduct tangibly impedes the litigation, such as by causing delay, needlessly multiplying proceedings, driving up costs through frivolous filings, or flouting the enforcement of court orders. *See Chambers*, 501 U.S. at 45 (inherent power sanctions justified where a party's misconduct "delays or disrupts the litigation or hampers the enforcement of a court order"). None of those factors are present here. Plaintiff does not (and cannot) claim that she was prevented from obtaining discovery, that any hearing or court conference was derailed, or that the Court's schedule was compromised in any way by Mr. Spanos's behavior. Indeed, as noted, the Court successfully held the December 3, 2025 status conference and thereafter entered its

scheduling orders setting the case for trial and referring it to a settlement conference, all without incident. [ECF No. 94]. In short, while Plaintiff may have been offended or unnerved by Mr. Spanos's harsh words, her ability to prosecute her case was never hindered.

Plaintiff also seeks sanctions based primarily on a written declaration by her own counsel recounting these incidents. Even if the Court were to credit that account in full, it would not satisfy the rigorous clear-and-convincing evidentiary standard applicable to inherent-power sanctions. There has been no evidentiary hearing, and Mr. Spanos has had no opportunity to present testimony or contextual evidence regarding the alleged remarks. Imposing the severe punishment of sanctions on such a paper record would raise serious due-process concerns. *See Chambers*, 501 U.S. at 50 (before imposing inherent-power sanctions, a court "must comply with the mandates of due process"); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (party facing inherent-power sanctions must be given notice and an opportunity to be heard). Fundamental fairness demands no less. Here, rather than entertain sanction proceedings on this underdeveloped record, the Court's prudent course is to deny Plaintiff's overreaching request for inherent-power sanctions.

**B.    Plaintiff's Request for Protective Order Should Be Denied.**

Plaintiff's piggy-back request for a protective order fares no better; it is equally meritless and overbroad. Federal Rule of Civil Procedure 26(c) authorizes protective orders only "for good cause" shown and only upon a particularized demonstration of fact. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356-57 (11th Cir. 1987) (the Rule 26(c) good-cause inquiry is specific and factual, not based on conclusory allegations). The Eleventh Circuit further requires courts to balance several factors when considering such extraordinary relief: the severity and likelihood of the perceived harm, the precision with which the proposed order is drawn, the availability of less onerous alternatives,

and the duration of the requested measures. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985). Plaintiff's Motion fails on every count.

      To begin with, Plaintiff has not demonstrated any concrete, non-speculative harm to justify a protective order. The incidents she describes, while unpleasant, did not result in physical harm, stalking, or any credible threat of violence. They were intermittent flare-ups, separated by months. Throughout this period, Plaintiff and her counsel continued to litigate the case, attend depositions and hearings, and engage in settlement discussions. In other words, Plaintiff's litigation activities were never actually impeded or endangered. At bottom, she is asking the Court to intervene not to prevent some genuine injury, but to spare her from personal discomfort and anxiety – a purpose outside the scope of Rule 26(c). Assertions of subjective fear or embarrassment, without more, do not constitute good cause for a protective order under Rule 26(c). *See Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."). Plaintiff's professed feelings, absent any objective evidence of a real threat or abuse, simply cannot justify the drastic measures she demands.

      Moreover, the Court should carefully assess the weight and reliability of the evidence offered in support of the requested protective relief, particularly where it consists entirely of declarations and characterizations supplied by Plaintiff's counsel. That assessment cannot be divorced from counsel's well-documented disciplinary history involving incivility and confrontational conduct in this District and elsewhere. As the Court is aware, Plaintiff's counsel has previously been required to undergo anger-management counseling, subjected to additional conditions on his ability to practice before this Court, publicly reprimanded, and named in a Formal Complaint for Reciprocal Discipline by

the Florida Bar describing repeated episodes of abusive litigation conduct. These documented incidents—including findings that counsel engaged in "loud, heated, and disruptive" behavior during depositions and conduct so aggressive it reduced an opposing party to tears in open court—provide important context for evaluating claims that contentious interactions in this case were unilateral or unprovoked. Against that backdrop, Plaintiff's request for extraordinary protective measures warrants heightened scrutiny, not deference.

Equally problematic is the breadth of the proposed protective measures. The order Plaintiff seeks would micromanage Mr. Spanos's movement and presence at the courthouse, restrict his communications beyond the already binding obligations of professionalism, suspend procedural requirements imposed by the Federal and Local Rules (such as the duty to meet and confer), and dictate to a federal Magistrate Judge how a settlement conference must be conducted. Such relief is not remotely tailored to any specific identifiable risk; it is a blanket gag-and-separation order that would impose significant burdens on Defendant and the Court at every step. Courts have repeatedly held that protective orders must be narrowly drawn and no more restrictive than necessary to address the particular harm demonstrated. *See In re Alexander Grant*, 820 F.2d at 357. The sweeping restrictions proposed here resemble a punitive restraining order rather than a legitimate discovery protective order—an especially incongruous result given that, prior to the filing of this lawsuit, it was Mr. Spanos who sought and obtained a stalking injunction against Plaintiff based on her own harassing conduct. Rule 26(c) does not authorize such stigmatizing and extraordinary relief absent truly extraordinary circumstances, and no such circumstances exist here.

Moreover, there are obvious, less-restrictive alternatives readily available to ensure professionalism going forward. The Court already possesses inherent authority to control courtroom

decorum and to address any misconduct in real time, should it occur. The attorneys in this case can and should communicate among themselves to minimize unnecessary direct interactions between the parties. Court security personnel are present at all in-person proceedings to maintain order. In short, the existing framework of court supervision and counsel cooperation is more than sufficient to protect all participants and maintain civility without trampling Defendant's rights or derailing the normal conduct of this litigation. If Plaintiff truly has concerns, those concerns can be addressed by these measured means, rather than by the draconian remedy she proposes.

Plaintiff's suggestion that she be excused from the Local Rule 7.1(a)(3) meet-and-confer requirement is particularly unjustified. The very purpose of that rule (and its federal analogue) is to encourage parties to resolve disputes amicably and avoid needless motion practice. Relieving Plaintiff of the duty to confer in good faith would reward the very breakdown in civility that she alleges, and would likely increase—rather than decrease—the burden on the Court. There is no valid basis to suspend this important procedural safeguard on the facts presented.

Finally, Plaintiff's request to preemptively mandate remote participation or staggered courthouse arrivals for future proceedings is both premature and unwarranted. The upcoming settlement conference and trial will take place in a controlled, professional environment under the supervision of a federal judicial officer. There is no reason to assume that extraordinary measures will be needed to maintain basic civility. Preemptively curtailing Defendant's ability to be physically present and participate in a settlement conference—a critical opportunity to resolve the case—would undermine the efficacy of that process without any factual basis. Should any issues arise at the conference or trial, the Court can address them at that time. In the meantime, there is simply no justification for the sweeping, anticipatory restrictions Plaintiff seeks.

## III. CONCLUSION

Plaintiff has not met the demanding standards required for sanctions under the Court's inherent powers, nor has she demonstrated good cause for the extraordinary protective relief she seeks. The conduct alleged, while regrettable in tone, does not amount to a bad-faith abuse of the judicial process. It certainly does not warrant the Court's intervention to issue sweeping restrictions on Defendant's participation in his own defense. Existing statutes, rules, and the Court's inherent authority are more than sufficient to address any legitimate concerns about decorum or safety if they arise; there is no need for the Court to craft ad hoc orders to police civility in this case. For all these reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of January 2026,

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Defendants*
